**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD, *et al.*, | ) Case No. 22-11068 (JTD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC, and ALAMEDA RESEARCH LTD., Cuk | ) ) ) ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 23-50759 (JTD) |
| | ) |
| MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF TIME**
**RESEARCH LTD.'S MOTION TO DISMISS COMPLAINT**

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
Paige N. Topper (DE Bar No. 6470)
**SAUL EWING LLP**
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com
paige.topper@saul.com

Steven C. Reingold (admitted *pro hac vice*)
**SAUL EWING LLP**
131 Dartmouth Street
Suite 501
Boston, MA 02116
Telephone: (617) 912-0940
Facsimile: (617) 723-4151
steven.reingold@saul.com

*Counsel to Time Research Ltd.*

Dated: February 6, 2024

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ...............................................................................3

    A.    The Plaintiffs and their Businesses ..................................................3

    B.    The Business of Time Research ........................................................3

    C.    The Terms of Service .......................................................................5

    D.    The Chapter 11 Filing ......................................................................7

    E.    The Complaint ..................................................................................7

LEGAL STANDARD OF REVIEW ................................................................8

    A.    Rule 12(b)(2) Lack of Personal Jurisdiction ...................................8

    B.    Rule 12(b)(6) Failure to State a Claim .............................................9

ARGUMENT ................................................................................................10

    I.    The Complaint Must be Dismissed Due to a Lack of Personal Jurisdiction by the Court over Time Research ...........................................................10

        A.    Lack of General Jurisdiction over Time Research....................11

        B.    Lack of Specific Jurisdiction over Time Research ...................13

    II.    Counts I, II, III and V Must Be Dismissed against Time Research Because the Presumption against Extraterritoriality Bars Avoidance Claims under Bankruptcy Code Sections 547, 548 and 550 ........................................15

        A.    The Transfers Were Extraterritorial..........................................16

        B.    Congress Did Not Intend for Avoidance Powers to Extend Extraterritorially....................................................................18

    III.    Counts I, II, III and V of the Complaint Fail to State a Claim for Fraudulent and Preferential Transfers Because FTX.com Has Failed to Allege a Property Interest in the Transferred Assets .............................................22

    IV.    Counts I and II Fail to State a Claim for Actual Fraudulent Transfers.................23

i

V.      Counts III and V Must Be Dismissed Because FTX.com Has Failed to
        Adequately Allege that the Transfers were Made on Account of an
        Antecedent Debt or that the Transfers Permitted Time Research to Receive
        More Than It Would Receive in a Chapter 7 Proceeding ...................................... 28

VI.     Counts V and VIII of the Complaint Should Be Dismissed against Time
        Research for Failure to Adequately Allege a Primary Violation in Counts I
        through III ............................................................................................................ 29

CONCLUSION ................................................................................................................................... 30

ii

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alameda Research Ltd. v. Platform Life Sciences Inc.*,
Adv. No. 23-50444 (JTD), 2023 WL 8814216 (Bankr. D. Del. Dec. 20, 2023) .....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................9

*Autobacs Strauss, Inc. v. Autobacs Seven Co., Ltd. (In re Autobacs Strauss, Inc.)*,
473 B.R. 525 (Bankr. D. Del. 2012) ...................................................................................24

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exchange Inc.)*,
347 B.R. 708 (Bankr. C.D. Cal. 2006)................................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................9, 10

*Beskrone v. OpenGate Capital Group, LLC (In re Pennysaver USA Publishing, LLC)*,
602 B.R. 256 (Bankr. D. Del. 2019) ...............................................................................24-25

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...............................................................................................5

*Burtch v. Huston (In re USDigital, Inc.)*,
443 B.R. 22 (Bankr. S.D.N.Y. 2011) ..................................................................................27

*Burtch v. Opus, L.L.C. (In re Opus E., L.L.C.)*,
480 B.R. 561 (Bankr. D. Del. 2012) ...................................................................................10

*Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp. Inc.)*,
479 B.R. 330 (Bankr. D. Del. 2012) .....................................................................................8

*In re Celsius Network LLC*,
647 B.R. 631 (Bankr. S.D.N.Y. Jan. 4, 2023) ......................................................................23

*Chavez v. Dole Food Company, Inc.*,
836 F.3d 205 (3d Cir. 2016)...............................................................................................11

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................................................8-9

*Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*,
650 B.R. 803 (Bankr. D. Del. 2023) ..............................................................................25, 27

iii

*Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*,
    232 F. Supp. 2d 294 (D. Del. 2002)..........................................................................23

*In re Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..................................................................................11, 13

*Daubert v. NRA Grp., LLC*,
    861 F.3d 382 (3d Cir. 2017)..............................................................................21

*In re DBSI, Inc.*,
    467 B.R. 309 (Bankr. D. Del. 2012) ..................................................................11

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
    46 F.4th 226 (5th Cir. 2022) ............................................................................12

*Edwards v. A.H. Cornell & Son, Inc.*,
    610 F.3d 217 (3d Cir. 2010)................................................................................9

*Emerald Capital Advisors Corp. v. Bayerische Motoren Werke Aktiengesellschaft (In re FAH Liquidating Corp.)*,
    572 B.R. 117 (Bankr. D. Del. 2017) ........................................................... passim

*In re Florsheim Group Inc.*,
    336 B.R. 126 (Bankr. N.D. Ill. 2005) ................................................................16

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)................................................................................9

*French v. Liebmann (In re French)*,
    440 F.3d 145 (4th Cir. 2006) ...................................................................... passim

*Hill v. Hill (In re Hill)*,
    342 B.R. 183 (Bankr. D.N.J. 2006) ..................................................................25

*In re Horsehead Holding Corp. Sec. Litig.*,
    No. CV 16-292-LPS-CJB, 2018 WL 4838234 (D. Del. Oct. 4, 2018) .....................5

*Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*,
    Adv. No. 21-50359 (JTD), 2021 WL 5016127 (Bankr. D. Del. Oct. 28, 2021).....................24

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
    Case No. 15-11469 (LSS), 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) .....................27

iv

*In re KB Toys Inc.*,
    736 F.3d 247 (3d. Cir. 2013)...................................................................................30

*King v. Export Dev. Can. (In re Zetta Jet USA, Inc.)*,
    624 B.R. 461 (Bankr. C.D. Cal. 2020)...........................................................6, 18, 19

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)..............................................13, 18, 19, 21

*Lionti v. Dipna, Inc.*,
    No. 17-01678, 2017 WL 2779576 (E.D. Pa. June 27, 2017)...................................9

*Lipscomb v. Clairvest Equity Partners L.P. (In re LMI Legacy Holdings, Inc.)*,
    625 B.R. 268 (D. Del. 2020)...............................................................................10

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*,
    716 F.3d 736 (3d Cir. 2013)...............................................................................29

*Mellon Bank v. Farino*,
    960 F.2d 1217 (3d Cir. 1992)...............................................................................8

*Miller v. SWZ Fin. II, LLC (In re United Tax Grp., LLC)*,
    Case No. 14-10486 (LSS), 2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018)...............10, 27

*In re Nat'l Serv. Indus., Inc.*,
    Case No. 12-12057 (MFW), 2015 WL 3827003 (Bankr. D. Del. June 19, 2015)............. 25-26

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
    496 F.3d 312 (3rd Cir. 2007) ...............................................................................13

*Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*,
    405 B.R. 527 (Bankr. D. Del. 2009) .....................................................................10

*Our Alchemy, LLC v. AnConnect, LLC (In re Our Alchemy), LLC*,
    Case No. 16-11596 (KG), 2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019).....................24

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85, 95 (2d Cir. 2019) ...............................................................................16

*In re Pursuit Cap. Mgmt., LLC*,
    595 B.R. 631 (Bankr. D. Del. 2018) ..................................................................8, 13

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016).......................................................................................15, 16

*Schmidt v. Skolas*,
  770 F.3d 241 (3rd Cir. 2014) ................................................................................6

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Securities, LLC*,
  513 B.R. 222 (S.D.N.Y. 2014) (rev'd on other grounds) ...........................18, 20, 21

*In re Sheehan*,
  48 F.4th 513 (7th Cir. 2022) ..............................................................................14

*Sheridan v. NGK Metals Corp.*,
  609 F.3d 239 (3d Cir. 2010)................................................................................10

*Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re
  Sherwood Investments Overseas Ltd., Inc.)*,
  Case No. 6:10-ap-00158-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ...........17

*Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re
  Sherwood Investments Overseas Ltd., Inc.)*,
  Case No. 6:10-ap-00158-KSJ, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016)................18, 19

*Societe Generale plc v. Maxwell Commc'n Corp. plc (In re Maxwell Commc'n Corp. plc)*,
  186 B.R. 807 (S.D.N.Y. 1995)...........................................................................19. 21

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*,
  562 B.R. 601 (Bankr. S.D.N.Y. 2017).........................................................17, 18, 21

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)..........................................................................11, 13

*Trustee of the NP Creditor Litig. Trust (In re NewPage Corp.)*,
  555 B.R. 444 (D. Del. 2016)...............................................................................29

*In re UD Dissolution Corp.*,
  629 B.R. 11 (Bankr. D. Del. 2021) ................................................................13, 15

*Weisfelner v. Blavatnik (In re Lyondell Chem Co.)*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016)...........................................................17, 20, 21

*In re Zambrano Corp.*,
  478 B.R. 670 (Bankr. W.D. Pa. 2012) ...................................................................26

vi

## FEDERAL STATUTES

11 U.S.C. § 502(d) ..........................................................................................3, 29

11 U.S.C. § 541 ............................................................................................19, 20

11 U.S.C. § 541(a) ..............................................................................................22

11 U.S.C. § 541(a)(3) ..........................................................................................21

11 U.S.C. § 544 ......................................................................................23, 24, 29

11 U.S.C. § 544(a) ..............................................................................................22

11 U.S.C. § 547 ................................................................15, 19, 21, 23, 29

11 U.S.C. § 547(b) ........................................................................................21, 22

11 U.S.C. § 547(b)(2) ..........................................................................................29

11 U.S.C. § 547(b)(3) ..........................................................................................28

11 U.S.C. § 547(b)(5) ..........................................................................................29

11 U.S.C. § 548 ........................................................................................... passim

11 U.S.C. § 548(a)(1) ......................................................................22, 24, 25, 28

11 U.S.C. § 548(a)(1)(A) ..................................................................................2, 24

11 U.S.C. § 550 ......................................................................................15, 19, 21

11 U.S.C. § 550(a)(1) ........................................................................................3, 29

## STATE STATUTES

6 Del. C. § 1304 ..................................................................................................24

6 Del. C. § 1304(a)(1) ......................................................................2, 24, 25, 28

6 Del. C. § 1304(b) ..............................................................................................24

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a)(2) ............................................................9

Federal Rule of Civil Procedure 9(b) ....................................................................................10, 24

Federal Rule of Civil Procedure 12(b)(2) .........................................................................................8

Federal Rule of Civil Procedure 12(b)(6) .........................................................................................9

Federal Rules of Bankruptcy Procedure 7012(b) .........................................................................8, 9

Bruce Zagaris, *ETHICAL ISSUES IN OFFSHORE PLANNING*,
    SN035 A.L.I. A.B.A. 213 (2007) ...............................................................................................4

5 Collier on Bankr. ¶ 548.03 (16th ed. 2023) ...............................................................................22

*What is a Nominee Shareholder and What Are The Benefits of Having One?*,
    Paramount Co. Formations Ltd. https://www.paramountformations.com/blog/nominee-
    shareholder/what-nominee-shareholder-and-what-are-benefits-having-one (last visited
    Jan. 25, 2024) ............................................................................................................................4

51542814.14

Defendant Time Research Ltd. ("**Time Research**") submits this memorandum of law in support of its motion to dismiss (the "**Motion to Dismiss**") the *Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 547, 548 and 550, and Del. Code Ann. Tit. 6, § 1304, Turnover of Assets Pursuant to 11 U.S.C. § 542, Disallowance of Claims Pursuant to 11 U.S.C. § 502, and for Violations of the Automatic Stay Pursuant to 11 U.S.C. § 362* [Adv. D.I. 1] (the "**Complaint**") filed by plaintiffs FTX Trading Ltd. ("**FTX.com**"), West Realm Shire Services, Inc. ("**FTX US**") and Alameda Research Ltd. ("**Alameda**," and together with FTX.com and FTX US, the "**Plaintiffs**").[1]  In support of its Motion to Dismiss, Time Research submits the *Declaration of Fang Haizhou*, CEO of Time Research (the "**Haizhou Declaration**").

## PRELIMINARY STATEMENT

By the Complaint, the Plaintiffs boldly seek to recover close to $48 million from Time Research on theories related to preference and fraudulent conveyance, and close to *$1 billion* from Time Research and its co-defendants, combined.  However, while the conduct and extensive corporate failures leading to FTX's downfall are well documented,[2] the Complaint makes *no* showing of any fraudulent or improper conduct in connection with the transfers to Time Research. On the contrary, the Complaint reflects only that Time Research was a customer of FTX.com that conducted trading activity on the exchange in the ninety days leading up to the Petition Date (as defined below).[3]  Its reaction to the news concerning FTX's stability in seeking to withdraw its assets – an act similarly undertaken by *thousands* of similarly situated customers – was reasonable

---

[1]    The Plaintiffs and their affiliated debtors and debtors in possession (together, the "**Debtors**"), as well as certain non-debtor entities, operated their businesses through four groups of "silos" referred to by the Debtors as the "**FTX Group**."  *See Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], at ¶ 9.

[2]    *See First Interim Report of John J. Ray III to the Independent Directors on Control Failures at the FTX Exchanges* [D.I. 1242]; *Second Interim Report of John J. Ray III to the Independent Directors: the Commingling and Misuse of Customer Deposits at FTX.com* [D.I. 1704] ("**Second Interim Report**").

[3]    Time Research was a customer only of FTX.com, and there are no allegations to the contrary, nor any allegations that Time Research received Transfers from, or had any relationship with, FTX US.

and appropriate, and there is no allegation that FTX.com's recognition of Time Research's withdrawal requests was motivated by any improper intentions on the part of the Debtors (or, for that matter, Time Research).

Furthermore, Time Research's inclusion in the Complaint appears to be an afterthought. The primary focus of the allegations in the Complaint relate to other entities, Mirana Corp. ("**Mirana**") and Bybit Fintech Ltd., with Time Research "lumped" into certain of the allegations based on an alleged close relationship with such entities, namely Mirana. The alleged "facts" supporting FTX.com's claims against Time Research and its alleged relationship with Mirana are thin, at best, and certainly do not rise to the level required to state a claim for relief.

Ultimately, the Complaint fails against Time Research for several reasons:

- *First*, the Court lacks personal jurisdiction over Time Research. The claims against Time Research are claims between non-U.S. entities and involve foreign transactions. Time Research is a foreign entity that is incorporated, headquartered and managed in Singapore, and was a customer only of FTX.com, which is likewise a foreign entity. It is not registered to conduct business in the United States and maintains, at best, *de minimis* connections to the United States that do not reflect continuous and systematic contact with the United States so as to render it "at home" in the United States. Likewise, FTX.com has not alleged (and cannot allege) that its claims arise out of Time Research's forum-related activities for purposes of specific jurisdiction.

- *Second*, the Transfers (as defined below) were extraterritorial transactions, and prevailing case law makes clear that federal avoidance powers conferred under the Bankruptcy Code are not intended to extend extraterritorially.

- *Third*, FTX.com's avoidance claims fail since it has not (and cannot) sufficiently plead an interest in the funds it seeks to recover. The Terms of Service (as defined below) make clear that digital assets remain customer property at all times. As such, FTX.com never acquired an interest in the assets, and transfers of such assets are not subject to avoidance.

- *Fourth*, the Plaintiffs fail to adequately plead "actual fraud" under section 548(a)(1)(A) of the Bankruptcy Code or Delaware Code section 1304(a)(1), nor can they do so. FTX.com's fraud claims against Time Research are premised on the weak and insufficient allegations that Time Research (i) "benefitted" from a "VIP status" that it did not even know it had (assuming it did in fact maintain such status, which it disputes), and (ii) maintained an alleged "close" relationship with Mirana so as to benefit from Mirana's alleged VIP status. Nowhere is it alleged that Time Research in fact maintained "VIP" status, *but even if it did*, the mere fact that one is a "VIP" is not sufficient to infer fraudulent conduct. The

2

allegations against Time Research simply do not reflect any intent by FTX.com to hinder, delay or defraud creditors.

- *Fifth*, FTX.com has failed to plead sufficiently the existence of an antecedent debt or that the Transfers permitted Time Research to receive more than it would in a chapter 7 proceeding if the Transfers had not been made; and

- *Sixth*, FTX.com's claims to recover transferred funds under Bankruptcy Code section 550(a)(1) and to disallow claims pursuant to section 502(d) should be dismissed because, for all the reasons summarized above, FTX.com has failed to adequately allege facts showing that Time Research received any transfers that are recoverable or avoidable.  Also, Time Research did not file a proof of claim and does not have a claim to be disallowed.

For these and all the other reasons herein, Time Research respectfully requests that the Court dismiss the Plaintiffs' Complaint, with prejudice.

## STATEMENT OF FACTS

### A.    The Plaintiffs and their Businesses

Prior to the Petition Date, FTX.com and FTX US operated exchanges offering cryptocurrency trading services, while Alameda engaged in cryptocurrency trading, venture investing and other activities.  Compl. ¶ 3.  As reflected in the Complaint, FTX.com is a foreign corporation registered in Antigua and Barbuda.  FTX US is a Delaware corporation, and Alameda is a British Virgin Islands entity.  Compl. ¶¶ 21-23.

### B.    The Business of Time Research

Time Research is a Seychelles entity that was formed on or about April 14, 2022.  *See* Haizhou Declaration, at ¶ 5.  It is a proprietary trading firm with multiple trading teams that conduct trades on different exchanges, subject to the oversight of portfolio managers. *Id.* It also maintains an investment branch engaged in cryptocurrency investments.  *Id.* Time Research is headquartered, and maintains its principal place of business, in Singapore, from which all high-level decisions are made.  *Id. at* ¶ 7.

Time Research has never registered to conduct business in the United States and does not view itself as conducting business in the United States.  *Id. at ¶* 8.  It has no owned or leased property in the United States, has never filed tax returns in the United States, and has neither filed nor appeared in a lawsuit in a court in the United States (until the present Complaint).  *Id.*

Time Research maintains no investments in U.S.-based companies or funds, nor did it maintain any such investments at the time of the Complaint.  *Id.*  In addition, as of the date of the Complaint, it did not (and presently does not) conduct trading activities on United States-based exchanges.  *Id.*

As detailed below, Time Research's contact with the United States is limited.  Of its 118 employees and 13 independent contractors, one employee—Mr. Shufeng, a Treasury and Trading Operations Specialist—temporarily resided in the United States until September 2023 (prior to the Complaint).  *Id. at ¶* 9.  Despite his title, Mr. Shufeng was not (and is not) involved in daily trading transactions; however, on limited occasions, Mr. Shufeng initiated withdrawal requests at the direction of Time Research management and communicated with FTX.com personnel regarding such requests.  *Id.*  Mr. Shufeng is also the former nominee shareholder for the ultimate beneficial owner of Time Research but held no managerial responsibilities or oversight through such role.[4]

In addition to Mr. Shufeng, one independent contractor—a research team leader who began providing services to Time Research in July 2023 (after the Petition Date)—currently resides in the United States.  *Id. at ¶* 10. Neither Mr. Shufeng nor the independent contractor has authority

---

[4]     A nominee shareholder is an individual who is officially registered as the holder of shares on behalf of the actual shareholder, but has no power over the company.  *See* Bruce Zagaris, *ETHICAL ISSUES IN OFFSHORE PLANNING*, SN035 A.L.I. A.B.A. 213, 264 (2007); *see also What is a Nominee Shareholder and What Are The Benefits of Having One?*, Paramount Co. Formations Ltd. https://www.paramountformations.com/blog/nominee-shareholder/what-nominee-shareholder-and-what-are-benefits-having-one (last visited Jan. 25, 2024) (explaining that nominee shareholder does not own shares in company, or benefit from shares in any way, has no access to bank accounts or other assets, and is not able to make decisions or sign any documentation of shares on behalf of company).

4

to make strategic or managerial decisions, including strategic trading decisions.  Rather, each acts solely at the direction of management in Singapore. *Id. at* ¶ 11.

Time Research has maintained two bank accounts in the United States or its territories, neither of which was used in connection with Time Research's FTX.com account: (i) an account maintained at Signature Bank from August 2022 to April 2023, and (ii) an account maintained at FV Bank in Puerto Rico.  Both accounts were (or, in the case of FV Bank, are) used to facilitate fiat transactions and fund certain operational expenses.  *Id. at* ¶ 12.  Also, since 2023, Time Research has maintained an account with Circle, a U.S.-based manager of stablecoin, which operates as a channel to convert cryptocurrency assets to fiat currency (with the fiat then deposited into bank accounts such as FV Bank).  Time Research uses its Circle account on an infrequent basis.  *Id. at* ¶ 13.

As discussed further below, these *de minimis* connections to the United States are not sufficient to justify an exercise of personal jurisdiction over Time Research.

## C.    The Terms of Service

As an FTX.com customer, Time Research and FTX.com were parties to the agreement reflected in the Terms of Service dated May 13, 2022 (the "**Terms of Service**"), a copy of which is attached to the Haizhou Declaration as Exhibit 1.[5]  Time Research, like other FTX.com

---

[5]    While the Complaint is careful to avoid referencing the Terms of Service given its impact on the Plaintiffs' claims, the Court may nevertheless consider such terms since they governed, and were integral to, the relationship between FTX.com and Time Research.  *See In re Horsehead Holding Corp. Sec. Litig.*, No. CV 16-292-LPS-CJB, 2018 WL 4838234, at *9 (D. Del. Oct. 4, 2018) ("Even if a document is not attached as an exhibit to the complaint, if it is nevertheless 'integral to or explicitly relied upon in the complaint[,]' the court may consider the document without converting the motion to dismiss into a motion for summary judgment."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

The Terms of Service appear on the docket in the Debtors' cases.  *See Declaration of Edgar W. Mosely II in Support of Debtors' Objection to the Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. (I) for Relief from the Automatic Stay and (II) to Compel Turnover of electronic Records under Sections 542, 1519(a)(3), 1521(a)(7) and 1522 of the Bankruptcy Code* [D.I. 337].  The Terms of Service are

customers, was required to accept these terms before its account could be opened.   Haizhou

Declaration at ¶ 14.

The Terms of Service make clear that title to the digital assets on the FTX.com platform

remained at all times with the customer and did not transfer to FTX.com. Specifically, in relevant

part, the Terms of Service provide:

> All Digital Assets are held in your Account on the following basis:
>
> (A) **Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading**. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.
>
> (B) **None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading**.
>
> (C) You control the Digital Assets held in your Account. At any time, subject to outages, downtime, and other applicable policies (including the Terms), you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party.

Terms of Service, at § 8.2.6 (emphasis added).   The Terms of Service also provide that (i) the

terms, and any disputes concerning the terms, shall be governed by English law, (ii) any disputes

referred to arbitration shall be administered by the Singapore International Arbitration Centre, and

(iii) the Courts of England and Wales shall have exclusive jurisdiction over disputes brought to

such courts. *See* Terms of Service, at §§ 38.11, 38.12, 38.13.

---

attached as an exhibit and identified as a true and correct copy of the form user agreement for FTX.com customers.  There can be no dispute that the Court may take judicial notice of its own docket, and that the Terms of Service are a public document that may be considered in connection with this Motion to Dismiss. *See King v. Export Dev. Can. (In re Zetta Jet USA, Inc.)*, 624 B.R. 461, 469 (Bankr. C.D. Cal. 2020) (court may take judicial notice of its own docket); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3rd Cir. 2014) (holding that court can consider, *inter alia*, matters of public record in connection with motion to dismiss).

**D.      The Chapter 11 Filing**

On November 2, 2022, a news report suggested publicly for the first time that Alameda's solvency was dependent on a multibillion-dollar valuation that Alameda had assigned to its holdings of FTT, a cryptocurrency token issued by the FTX Group.  Comp. ¶ 49.  This revelation, combined with a resulting increase in concerns about the FTX Group's stability, spurred a substantial number of withdrawal requests by customers.  *Id.*  Time Research was one of these customers.  Beginning on November 6, 2022, Time Research began withdrawing its digital assets from the FTX.com exchange.  Not long thereafter, on November 11, 2022 and November 14, 2022 (as applicable, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**E.      The Complaint**

One year later, on November 10, 2023, the Plaintiffs filed the Complaint, by which FTX.com seeks to claw back the customer assets withdrawn by Time Research, of a value asserted to be approximately $48 million (the "**Transfers**"), in the 90-day period leading up to the Petition Date (the "**Preference Period**") on grounds that (a) the Transfers were actual fraudulent transfers, Compl. ¶¶ 78-81, 82-86 (Counts I and II), (b) the Transfers are recoverable preferential transfers, Compl. ¶¶ 87-98 (Count III), (c) all avoided payments must be returned, Compl. ¶¶ 111-113 (Count V), and (d) all claims held by Time Research against any Debtor should be disallowed pending the return of any avoided transfers.  Compl. ¶¶ 122-124 (Count VIII).

For the reasons set forth herein, the Complaint must be dismissed in its entirety due to the Court's lack of personal jurisdiction over Time Research.  In addition, for the reasons described more fully below, the Complaint also fails to state a claim for relief.  The Complaint should therefore be dismissed against Time Research, with prejudice.

7

**LEGAL STANDARD OF REVIEW**

**A.      Rule 12(b)(2) Lack of Personal Jurisdiction**

For a plaintiff to bring an action in the United States against a foreign defendant, the United States court must have, among other things, personal jurisdiction over the defendant.  A defendant may challenge the court's personal jurisdiction through a motion to dismiss pursuant to rule 12(b)(2) of the Federal Rules of Civil Procedure (the "**Rules**"), made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  *See* Fed. R. Civ. P. 12(b)(2).  If the court lacks personal jurisdiction over the defendant, then the court must dismiss the action as to that defendant.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence."  *In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 646 (Bankr. D. Del. 2018).  In other words, the plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the court.  *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted).

In reviewing a challenge to personal jurisdiction, "plaintiffs are entitled to have their allegations taken as true and all factual disputes resolved in their favor."  *In re Pursuit*, 595 B.R. at 646.  If the plaintiff pleads a prima facie case of jurisdiction "by establishing with reasonable particularity sufficient contacts between defendant and the [relevant] forum," the defendant may submit an opposing affidavit that contradicts the plaintiff's jurisdictional allegations.  *See id.*; *see also Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp. Inc.)*, 479 B.R. 330, 338 (Bankr. D. Del. 2012).

Once a plaintiff's "allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction."  *In re Chocolate Confectionary*

8

*Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009).  A plaintiff "may not 'rely on the bare pleadings alone in order to withstand a defendant's . . . motion to dismiss' for lack of personal jurisdiction; instead, the plaintiff must present 'competent evidence,' such as sworn affidavits, to support its jurisdictional allegations." *Lionti v. Dipna, Inc.*, No. 17-01678, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017).  To that end, the "plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Id.* (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)).

**B.      Rule 12(b)(6) Failure to State a Claim.**

Time Research also seeks dismissal of the Complaint for failure to state a claim for which relief can be granted under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012(b).  A motion under Rule 12(b)(6) tests the sufficiency of the factual allegations pleaded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 12(b)(6) relates to the notice pleading standards under Rule 8(a)(2), which requires that the Complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

To survive dismissal, after taking the well-pleaded factual allegations as true, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.  For this review, the Third Circuit applies a two-part test. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court accepts the facts and disregards legal conclusions. *Fowler*, 578 F.3d at 210-11. Next, the court determines whether the well-pled facts sufficiently show that the plaintiff "'has a plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual

9

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262, n.27 (3d Cir. 2010).

When applying these pleading standards, courts need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 545. Courts disregard as true allegations that contain conclusory statements, legal conclusions, and unwarranted inferences of fact. *Lipscomb v. Clairvest Equity Partners L.P. (In re LMI Legacy Holdings, Inc.)*, 625 B.R. 268, 278-79 (D. Del. 2020) (citing *Twombly,* 550 U.S. at 555-57).

For claims based on alleged fraud, the court must consider whether the complaint satisfies Rule 9(b)'s more rigorous pleading requirement under which a plaintiff must "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b); *see also Miller v. SWZ Fin. II, LLC (In re United Tax Grp., LLC)*, Case No. 14-10486 (LSS), 2018 WL 1135496, at *11 (Bankr. D. Del. Feb. 28, 2018) (finding allegations related to fraudulent conveyance claims insufficient to satisfy Rule 9(b)); *Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("Federal Rule of Civil Procedure 9(b) requires those asserting fraudulent transfer claims in bankruptcy proceedings to plead them with specificity.").

"[B]oilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Burch v. Opus, L.L.C. (In re Opus E., L.L.C.)*, 480 B.R. 561, 573 (Bankr. D. Del. 2012).

## ARGUMENT

I.    **The Complaint Must be Dismissed Due to a Lack of Personal Jurisdiction by the Court over Time Research**

A federal court must have one of two forms of personal jurisdiction over a foreign defendant: general or specific.  Both forms examine the defendant's contacts with the forum.  In

the context of a bankruptcy case, the relevant forum is the United States at large. *See In re DBSI, Inc.*, 467 B.R. 309, 313 (Bankr. D. Del. 2012) (relevant forum in bankruptcy cases is United States in general, not particular state). In this case, for the reasons set forth below, there is neither general nor specific jurisdiction over Time Research and the Complaint should be dismissed.

A.      **Lack of General Jurisdiction over Time Research**

A court may exercise general jurisdiction when a defendant corporation's "affiliations with the [relevant forum] are so 'continuous and systematic' as to render [it] essentially at home" in the relevant forum. *In re Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal citations omitted). General jurisdiction therefore exists even when the plaintiff's claim has no relation to the defendant's contacts with the forum as long as the contacts constitute "'continuous and systematic general business contacts' with the forum at the time the initial complaint was filed." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, n.9 (1984)). Corporations are typically "at home", and thus subject to general jurisdiction, in the forum where they are incorporated or have their principal place of business. *See Daimler*, 571 U.S. at 138–39 (holding general jurisdiction did not exist where appellant-defendant was neither incorporated nor had principal place of business in the forum state). In *exceptional* cases, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home"; however, "at home" is not synonymous with "doing business." *Id.* at 139, n.19 & 20. Therefore, it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added)).

11

The Fifth Circuit's recent decision in *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226 (5th Cir. 2022), is also informative in evaluating whether general jurisdiction exists here. In *Douglass*, the defendant was a global logistics company that transported cargo by air and sea. *Id.* at 229.  As part of its business, the defendant's cargo vessels would port in the United States, the defendant would occasionally litigate in United States courts, and the defendant employed 25 employees (out of approximately 1,700) in the United States.  *Id.* at 230.  Despite these facts, the Fifth Circuit found general jurisdiction did not exist because the defendant was incorporated and headquartered in Japan, all "high-level decision-making [took] place in Japan", "port calls made to the United States [represented] just six to eight percent of all port calls made by [defendant] worldwide," and defendant's U.S. employees represented 1.5% of defendant's workforce.  *Id.* at 242–43.  The Court held that the defendant's contacts with the United States were not so substantial as to render the defendant at home in the United States for purposes of general jurisdiction.

Here, Time Research has significantly fewer contacts with the United States than the defendant in *Douglass*.  As noted above, Time Research is neither incorporated in, nor has its principal place of business in, the United States.  Rather, Time Research it a Seychelles entity, headquartered in Singapore, and all high-level decision-making takes place in Singapore.  Time Research is not registered to conduct business in the United States, maintains no investments in U.S.-based companies or funds.  At the time of the Transfers, Time Research had a *single* employee (out of a 128-person workforce) located in the United States.  This employee conducted business for operations outside of the United States, acted at the direction of Time Research management, and was no longer living in the United States when the Plaintiffs filed the Complaint.  Such facts, when coupled with the absence of any allegations in the Complaint to the contrary, hardly establish that Time Research was "at home" in the United States.

12

The Signature and FV bank accounts and the Circle account are likewise not sufficient to establish continuous and systematic contacts with the United States. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 680 ("[T]he alleged use of correspondent bank accounts . . . [is] insufficient to support the exercise of general personal jurisdiction"); *LaMonica v. CEVA Group PLC (In re CIL Ltd.)*, 582 B.R. 46, 82 (Bankr. S.D.N.Y. 2018) (dismissing all counts against defendant for lack of personal jurisdiction where, among other things, defendant's contract with Citibank in New York and maintenance of a U.S. bank account were not "so continuous and systematic" as to "render [defendant] essentially at home in the [United States]"). Time Research closed the Signature account prior to the filing of the Complaint, and the FV and Circle accounts are used infrequently. Particularly post-*Daimler*, these limited connections are not sufficient to consider Time Research as "doing business" in the United States, let alone render it "at home" in the United States.

### B.     Lack of Specific Jurisdiction over Time Research.

For similar reasons, there are no grounds (and none are alleged in the Complaint) that would permit this Court to exercise specific jurisdiction over Time Research. Specific jurisdiction exists when a plaintiff's claim "arises out of a defendant's forum-related activities." *In re Pursuit*, 595 B.R. at 647. In deciding a motion to dismiss for lack of specific jurisdiction, a court conducts a three-part inquiry: (1) did the defendant "purposefully direct [its] activities at the forum", (2) does the litigation "arise out of or relate to at least one of those activities", and (3) would exercising personal jurisdiction comport with "traditional notions of fair play and substantial justice". *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3rd Cir. 2007); *see also In re UD Dissolution Corp.*, 629 B.R. 11, 25 (Bankr. D. Del. 2021) (stating similar two-part inquiry).

As an initial matter, Time Research did not purposefully direct any activities at the United States. Time Research is registered in the Seychelles, incorporated, headquartered, and managed

outside of the United States and conducts no business operations in the United States.  Although Time Research had one employee in the United States at the time of the Transfers, this employee's activities were not directed at the United States and, in any event, this employee no longer resided in the United States at the time the Plaintiffs filed the Complaint.

In addition, as the Complaint concedes, FTX.com is a foreign corporation that operated to serve *non-U.S. customers*.  *See* Compl. ¶ 21.  The transactions at issue were thus entirely between non-U.S. entities and were governed by non-U.S. law, and Time Research had no reasonable expectation of being hauled into court in the United States.  *See In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022) (noting that for specific personal jurisdiction, defendants "must have purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum"); *cf. Alameda Research Ltd. v. Platform Life Sciences Inc.*, Adv. No. 23-50444 (JTD), 2023 WL 8814216, at *2 (Bankr. D. Del. Dec. 20, 2023) (denying motion to dismiss where (i) defendant actively solicited U.S. employees, majority of defendant's leadership team and board resided in U.S. and defendant's jurisdictional declarations were inconsistent and not credible).  Also, until the Complaint was filed, Time Research has not been involved in the Chapter 11 Cases, and it did not file a proof of claim.  Thus, it is clear that Time Research has not purposefully directed any activities to the United States.

Second, FTX.com's claims do not arise out of or relate to Time Research's *de minimis* contacts with the United States.  As discussed above and in the Haizhou Declaration, Time Research's limited connections to the United States at the time of the Transfers consisted of having only one employee who was located in the United States.  Time Research also maintained two bank accounts in the United States or its territories at the time the Transfers were made, only one of which was in existence at the time of the Complaint, and *neither* of which was used in

14

connection with Time Research's trading activities with FTX.com. These *de minimis* contacts are insufficient to warrant specific personal jurisdiction because FTX.com's causes of action do not arise out of or relate to such contacts.[6]

Because Time Research does not have continuous and systematic contacts with the United States, and because the causes of action set forth in the Complaint are unrelated to Time Research's *de minimis* connections to the United States, no basis exists for the Court's exercise of personal jurisdiction over Time Research, and the Complaint must be dismissed.

## II.    Counts I, II, III and V Must Be Dismissed against Time Research Because the Presumption against Extraterritoriality Bars Avoidance Claims under Bankruptcy Code Sections 547, 548 and 550

FTX.com's claims under Bankruptcy Code sections 547, 548 and 550 must also be dismissed because those statutes do not extend to extraterritorial transactions such as those that took place between Time Research and FTX.com.

Generally, United States laws govern conduct occurring within its borders and are presumed not to have effect "extraterritorially." Specifically, the United States Supreme Court has ruled that, "absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 335 (2016) (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)).

Courts engage in a two-step inquiry when determining whether to apply the presumption against extraterritoriality. *Emerald Capital Advisors Corp. v. Bayerische Motoren Werke Aktiengesellschaft (In re FAH Liquidating Corp.)*, 572 B.R. 117, 123 (Bankr. D. Del. 2017). First,

---

[6]    Because FTX.com cannot satisfy its burden of demonstrating that Time Research has sufficient contacts with the United States, the Court need not address the third factor of whether its exercise of personal jurisdiction would conflict with "traditional notions of fair play and substantial justice." *In re UD Dissolution Corp.*, 629 B.R. at 25. However, *if* Time Research had sufficient contacts to warrant personal jurisdiction (and it did not), then the Court's exercise of jurisdiction would make it "so gravely difficult and inconvenient that [Time Research would be] at a serious disadvantage in comparison to [its] opponent," *id.* at 28, given that Time Research's management and records are located outside the United States.

a court must determine whether the presumption applies by "identifying the conduct proscribed or regulated by the particular legislation in question" and by considering whether that conduct "occurred outside of the borders of the U.S." *Id. (citing Societe Generale plc v. Maxwell Commc'n Corp. plc (In re Maxwell Commc'n Corp. plc)*, 186 B.R. 807, 816 (S.D.N.Y. 1995).  Second, if the presumption is implicated, a court must examine the lawmakers' intent in order to determine whether Congress "intended to extend the coverage of the relevant statute to such extraterritorial conduct." *In re FAH Liquidating Corp.,* 572 B.R. at 123.[7]  In the present case, a consideration of both factors shows that FTX.com's claims must be dismissed.

### A.    The Transfers Were Extraterritorial

To determine whether conduct regulated by a statute occurred outside the borders of the United States, many courts apply a "center of gravity" test, examining the facts of the case to see whether they have a center of gravity outside the United States. *See, e.g.*, *French v. Liebmann (In re French)*, 440 F.3d 145, 149 (4th Cir. 2006); *In re Florsheim Group Inc.*, 336 B.R. 126, 130 (Bankr. N.D. Ill. 2005) (explaining that if center of gravity is in United States, United States law applies, and if center of gravity is outside United States, court must determine whether Congress intended to apply law extraterritorially). This approach allows courts "to consider all component events of the transfers," including "whether the participants, acts, targets, and effects involved in the transaction at issue are primarily foreign or primarily domestic." *French*, 440 F.3d at 150.

Here, the facts pertaining to the Transfers reflect that the transactions were foreign and that the "center of gravity" was outside the United States.  Both parties involved are foreign entities, with Time Research being a Seychelles entity headquartered in Singapore, and FTX.com being an

---

[7]    Some courts have considered this two-part inquiry in the opposite order. *See RJR Nabisco*, 579 U.S. at 326 (considering first whether statute is extraterritorial); *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 95 (2d Cir. 2019) (same).

Antigua and Barbuda entity operated from Antigua and Barbuda.[8]  Moreover, FTX.com served only non-U.S. customers, and the Terms of Service make clear that the terms, and any disputes concerning them, are governed by English law, that any disputes referred to arbitration shall be administered by the Singapore International Arbitration Centre, and that the Courts of England and Wales have exclusive jurisdiction over disputes brought to such courts.  *See* Terms of Service, at §§ 38.11, 38.12 and 38.13.  Thus, there was no expectation or intention by either party that their transactions would have a connection to the United States.

That certain Transfers may have involved an employee in the United States (at the direction of management outside the United States) is inconsequential.  *See Weisfelner v. Blavatnik (In re Lyondell Chem Co.)*, 543 B.R. 127, 149 (Bankr. S.D.N.Y. 2016) (finding transaction to be extraterritorial where transfer was made from one foreign entity to another, notwithstanding that transfer was allegedly initiated and occurred at direction of party based in United States); *Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Investments Overseas Ltd., Inc.)*, Case No. 6:10-ap-00158-KSJ, 2015 WL 4486470, at *20 (Bankr. M.D. Fla. July 22, 2015) (finding transfer from Swiss bank account to English bank account was extraterritorial even though transfer was initiated from United States).  "Even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 613-614 (Bankr. S.D.N.Y. 2017) (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124-25 (2013)).  As noted, that is not the case here.

Accordingly, there can be little dispute that the transactions between Time Research and FTX.com, including the Transfers, were extraterritorial. *See In re FAH Liquidating Corp.*, 572

---

[8]     *See Schedules of Assets and Liabilities of FTX Trading Ltd.*, at D.I. 966.

B.R. at 124-25 (finding transfers to be extraterritorial where agreements governing transfers were governed by foreign law, transferee was German entity, transfers occurred in Germany, forum for disputes was Germany and payment required in euros); *King v. Export Dev. Canada (In re Zetta Jet USA, Inc.)*, 624 B.R. 461, 491, 495-497 (Bankr. C.D. Cal. 2010) (finding that transactions were extraterritorial where, *inter alia*, all parties were foreign, transfers went from one foreign account to another notwithstanding that they passed through U.S.-based escrow account, and choice of law provisions required application of foreign law); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exchange Inc.)*, 347 B.R. 708, 715 (Bankr. C.D. Cal. 2006) (finding transfers to be extraterritorial where transferor was Barbados corporation, transferee was English corporation, funds originated from bank account in London and, although transferred through bank account in New York, eventually landed in another bank account in England).

### B.    Congress Did Not Intend for Avoidance Powers to Extend Extraterritorially

Once the presumption against extraterritoriality is implicated, the Court must examine the lawmakers' intent to determine whether Congress intended the avoidance provisions of the Bankruptcy Code to reach such foreign transfers. *In re FAH Liquidating Corp.*, 572 B.R. at 125.

A split in authority exists on this issue. The *majority* of courts considering this issue have held that the Bankruptcy Code's avoidance provisions may not be applied extraterritorially. *See Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Investments Overseas Ltd., Inc.)*, Case No. 6:10-ap-158-KSJ, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016) (declining to apply section 548 extraterritorially); *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Securities, LLC*, 513 B.R. 222, 231 (S.D.N.Y. 2014) (same) (rev'd on other grounds); *In re Zetta Jet USA*, 624 B.R. at 479 (same); *In re CIL Ltd.*, 582 B.R. at 92 (same); *In re Ampal-Am. Israel Corp.*, 562 B.R. at 612 (same); *In re Midland Euro Exchange*, 347 B.R. at 717-18 (same).

18

These courts reason that the Bankruptcy Code provides jurisdiction over foreign property owned by the debtor on the date of the bankruptcy filing, and that bankruptcy courts only *gain* jurisdiction over property that was transferred pre-petition *after* a successful avoidance action. *See, e.g.*, *In re CIL Ltd.*, 582 B.R. at 92 ("The law in this circuit is clear—property that is the subject of an avoidance action is not considered property of the estate until it is recovered."); *see also In re Sherwood Investments Overseas Ltd., Inc.*, 2016 WL 5719450, at *11 (reasoning that because allegedly fraudulent transfers had not already been avoided, funds were not property of estate under section 541, and could not be subject of extraterritorial avoidance action); *Maxwell*, 186 B.R. at 820 (explaining that because preferential transfers do not become property of estate until recovered, section 541 does not demonstrate Congressional intent for section 547 to govern extraterritorial transfers).  Therefore, such courts reason that because foreign assets transferred prepetition were not property of the estate as of the petition date, such assets are not subject to a bankruptcy court's jurisdiction unless and until they are returned to the estate.

These courts also note that if Congress intended for sections 547 and 548 to apply extraterritorially, it would have made its intent clear and unmistakable, and no such clear and unmistakable intent is reflected in the statutory language. *See In re Zetta Jet USA*, 624 B.R. at 478 ("If Congress 'clearly,' 'affirmatively,' and 'unmistakably' intended §§ 547 and 548 to apply extraterritorially, it would not have expressed its intent in such an unclear way as the court in *French* thought, which has led to such disagreement among the courts."); *In re CIL Ltd.*, 582 B.R. at 92 (finding that Congress did not intend for sections 548 and 550 to be applied extraterritorially because it has not expressed affirmative intent, and nothing in text indicates such intent).

Likewise, these courts reason that policy considerations weigh against the extension of the avoidance powers to extraterritorial transfers.  In particular, concerns about loopholes in the law

"must be balanced against the presumption against extraterritoriality, which serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Madoff Inv. Securities*, 513 B.R. at 231 (*citing In re Midland Euro Exchange*, 347 B.R. at 718.)   As reasoned in *Madoff*, even in instances where intentional fraud may have occurred, debtors may be able to utilize the laws of the countries where the transfers occurred to avoid such an evasion while at the same time avoiding international discord.  *See id*.

A minority of courts maintain a different view of section 541. Cases approving extraterritorial application find evidence of Congressional intent for such application by similarly looking to section 541 of the Bankruptcy Code, which grants a bankruptcy court *in rem* jurisdiction of all property of a debtor, whether foreign or domestic.  *In re French*, 440 F.3d at 149; *In re Lyondell Chem. Co.*, 543 B.R. at 155; *In re FAH Liquidating Corp.*, 572 B.R. at 125.  These courts reason that because the Bankruptcy Code's avoidance provisions permit the recovery of property that, *but for a transfer*, would have been property of the estate, debtors may avoid transactions taking place outside the United States.  *See French*, 440 F.3d at 152; s*ee also In re Lyondell Chem. Co.*, 543 B.R. at 154 ("It would be inconsistent . . . that property located anywhere in the world could be property of the estate once recovered under section 550, but that a trustee could not avoid a fraudulent transfer and recover that property if the center of gravity of the fraudulent transfer was outside of the United States."); *In re FAH Liquidating Corp.*, 572 B.R. at 125-26 (adopting reasoning of *French* and *Lyondell* decisions).

Time Research recognizes that one of the decisions in this latter camp comes from this Court.  Specifically, in *FAH Liquidating*, Judge Gross ruled that Congress intended for section 548 to apply extraterritorially.  In so holding, the Court provided limited reasoning other than to explain that it found the reasoning employed in *Lyondell* (and *French*) to be more persuasive on the issue.

20

In particular, the Court quoted the reasoning in *French*, that section 548 "plainly allows a trustee to avoid any transfer of property that *would have been* 'property of the estate' prior to the transfer in question as defined by [section] 541 even if that property is not 'property of the estate' *now*." *FAH Liquidating Corp.*, 572 B.R. at 125 (citing *French*, 440 F.3d at 152) (emphasis in original).

Respectfully, Time Research believes that this Court is not bound by the *FAH Liquidating* decision and should adopt the reasoning employed by the majority of courts and find the Congress did <u>not</u> intend for the avoidance statutes to extend extraterritorially. *See Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (citing *Camreta v. Greene*, 563 U.S. 692, 709, n.17 (2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case."). Indeed, as recognized by the majority of courts considering this issue, an intent to extend sections 547 and 548 to extraterritorial transfers is not clear and unmistakable based on the language of the statutes. On the contrary, section 541(a)(3) is clear that property of the estate extends to property that the trustee recovers under 550, meaning that it is only when the property is *recovered* that it becomes property of the estate. *See* 11 U.S.C. § 541(a)(3).

Furthermore, following *Lyondell*, other decisions of the United States Bankruptcy Court for the Southern District of New York came to opposite conclusions from *Lyondell*. *See In re CIL Ltd.*, 582 B.R. at 91-92 (analyzing, but declining to follow ruling of, *Lyondell*); *In re Ampal-Am. Israel Corp.*, 562 B.R. at 612 (considering *Lyondell* but agreeing with reasoning of *Madoff* and *Maxwell* that avoidance provisions of section 547(b) do not apply extraterritorially). Thus, the *Lyondell* decision is within the minority within its own district.

Finally, the reasoning employed in the *French*, *Lyondell* and *FAH Liquidating* decisions – that the property at issue *would have* been property of the estate but for the fraudulent conveyance

– is even less compelling in the present case, where the digital assets were *never* property of the estate based on the clear language of the Terms of Service providing that such assets are customer property. It is highly unlikely that Congress intended for the avoidance powers to extend to extraterritorial transfers of property that would not (and could not) have been property of the estate under section 541(a), even if the assets remained on the Debtors' exchange as of the Petition Date.

For these reasons, Time Research respectfully submits that the Court should decline to extend the avoidance powers of the Bankruptcy Code to the Transfers.

### III.   Counts I, II, III and V of the Complaint Fail to State a Claim for Fraudulent and Preferential Transfers Because FTX.com Has Failed to Allege a Property Interest in the Transferred Assets

FTX.com's actual fraudulent transfer claims (Counts I and II) and preference claims (Counts III and V) fail to state a claim for relief against Time Research because FTX.com has not plead sufficiently that it maintained an enforceable interest in the transferred property.  The Complaint states only, and in conclusory fashion, that "[e]ach of these transfers was a transfer of property of FTX.com."  Compl. ¶ 79.  Such a conclusory allegation, however, is insufficient since "not all transfers are within section 548's scope; only those that affect property that would have been property of the estate but for the transfer."  5 Collier on Bankr. ¶ 548.03 (16th ed. 2023). A predicate to avoiding any transfer is that the debtor first establish that the debtor had an enforceable, and not merely transient, interest in the transferred property. *See* 11 U.S.C. §§ 547(b), 548(a)(1) (referring to transfers of "an interest of the debtor" in property); 11 U.S.C. § 544(a) ("The trustee . . . may avoid any transfer of *property of the debtor*[.]") (emphasis added).

Here, Time Research, as an FTX.com customer, and FTX.com were parties to the agreement reflected in the Terms of Service, which made clear that a customer's digital assets belonged *to the customer*, and that FTX.com acquired no ownership rights or control with respect

to such assets.  *See* Terms of Service, p. 1 (stating that terms of service "constitute an agreement" between the undersigned user and FTX.com);[9] *see also* Terms of Service § 8.26.

This language cannot reasonably be disputed.  The Terms of Service are governed by English law, which provides that contracts are to be interpreted in accordance with their plain meaning.  *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*, 232 F. Supp. 2d 294, 298 (D. Del. 2002) ("Under English law, the words of a contract are interpreted in accordance with their plain and ordinary meaning.").  The plain meaning of the Terms of Service is unambiguous: "[n]one of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading."  *See* Terms of Service, § 8.2.6(b).[10]

Because the Terms of Service are clear in providing that the digital assets maintained by Time Research on the FTX.com exchange *remained property of Time Research* and never belonged to the Debtors, the return of such assets to Time Research was not a transfer of an interest of the Debtors for purposes of Bankruptcy Code sections 544, 547 or 548.  Accordingly, for these reasons, Counts I, II, III and V of the Complaint should be dismissed in their entirety.

## IV.   Counts I and II Fail to State a Claim for Actual Fraudulent Transfers

Setting aside the fact that, for the reasons set forth above, the Transfers were *not* property of the Debtors' estates, FTX.com fails to plead (let alone plead with particularity) any facts

---

[9]     This is consistent with FTX's public commentary as well, in which it repeatedly represented that digital assets maintained on its exchanges remained the property of its customers. *See* Second Interim Report, at § II (describing FTX's Group's representations regarding "strict separation of customer and corporate funds").

[10]    The clarity of the Terms of Service in confirming that digital assets remain customer property differentiates this case from a case in which the United States Bankruptcy Court for the Southern District of New York held that cryptocurrency assets deposited into "earn accounts" became property of the estate.  *See In re Celsius Network LLC,* 647 B.R. 631, 636 (Bankr. S.D.N.Y. Jan. 4, 2023) (finding digital assets were property of estate where terms of service constituted enforceable agreement that Celsius maintained ownership rights over digital assets in accounts).  Unlike those in *Celsius*, the Terms of Service clearly state that the digital assets do *not* belong to FTX.com but rather to the customer. *See* Terms of Service, § 8.2.6.

showing that the Transfers were made to Time Research with the requisite intent to hinder, delay or defraud creditors.  As such, Counts I and II of the Complaint must be dismissed.

To avoid a transfer under section 548(a)(1)(A), a plaintiff must show that the transaction was made "with actual intent to hinder, delay or defraud" creditors. 11 U.S.C. § 548(a)(1). Moreover, under section 544, a lien creditor may bring analogous companion claims under Chapter 13 of the Delaware Code, which likewise provides for the avoidance of transfers made "with actual intent to hinder, delay or defraud any creditor of the debtor." *See* 6 Del. C. § 1304(a)(1); *see also Autobacs Strauss, Inc. v. Autobacs Seven Co., Ltd. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 567 (Bankr. D. Del. 2012) ("It is undisputed that the Delaware … Fraudulent Transfer Acts track section 548 of the Bankruptcy Code (or vice versa).").  As noted above, Rule 9(b) requires a plaintiff to "plead with particularity the 'circumstances' of the alleged fraud." *Our Alchemy, LLC v. AnConnect, LLC (In re Our Alchemy), LLC*, Case No. 16-11596 (KG), 2019 WL 4447545, at *5 (Bankr. D. Del. Sept. 16, 2019).  Conclusory allegations are not sufficient, and a plaintiff must do more than simply recite the statutory elements. *Insys Liquidation  Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*, Adv. No. 21-50359 (JTD), 2021 WL 5016127, at *5 (Bankr. D. Del. Oct. 28, 2021) (dismissing fraudulent transfer claim where "the complaint merely recites the language of [Section 548]").

In evaluating fraudulent intent for purposes of section 548(a)(1), courts consider several "badges of fraud": "(i) the relationship between the debtor and the transferee; (ii) consideration for the conveyance; (iii) insolvency or indebtedness of the debtors; (iv) how much of the debtor's estate was transferred; (v) reservation of benefits, control or dominion by the debtor over the property transferred; and (vi) secrecy or concealment of the transaction."[11] *Beskrone v. OpenGate*

---

[11]     Similar and additional badges of fraud are enumerated under Delaware Code § 1304. *See* 6 Del. C. § 1304(b).

*Capital Group, LLC (In re Pennysaver USA Publishing, LLC)*, 602 B.R. 256, 271 (Bankr. D. Del. 2019).  "The presence or absence of any single badge of fraud is not conclusive" and "[a]lthough the presence of a single . . . badge of fraud may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of any actual intent to defraud."  *Id.* (citing *In re AgFeed USA, LLC*, 546 B.R. 318, 337 (Bankr. D. Del. 2016)).

Here, FTX.com's claims are limited to conclusory assertions that (i) the Transfers were property of the estate of FTX.com, and (ii) each of the Transfers was made with the intent to hinder, delay and defraud FTX.com's present or future creditors.  *See* Compl. ¶¶ 79-80, 84-85.  An application of the badges of fraud to those claims shows that FTX.com fails to allege sufficiently an actual intent to hinder, delay or defraud the Debtors' creditors so as to state a claim against Time Research under section 548(a)(1) or Delaware Code section 1304(a)(1).

**Relationship between FTX.com and Time Research.**  In evaluating this badge of fraud, courts consider whether the transferee was an "insider" and evaluate "'the degree to which the transferee is able to exert control or influence over the debtor.'"  *Hill v. Hill (In re Hill)*, 342 B.R. 183, 199 (Bankr. D.N.J. 2006) (citation omitted).  Here, the Complaint does not allege that Time Research was an insider or that it exerted control or influence over FTX.com.  The relationship between the parties was a typical customer relationship.  There was no common control, no officers of Time Research were also officers or members of the Debtors' board, and FTX.com was not otherwise controlled by Time Research, nor is there any allegation to the contrary.  *See Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 834 (Bankr. D. Del. 2023) (finding no "close relationship" where no facts were alleged to support conclusion that CEO negotiated on both sides of a transaction" and mere fact that CEO held position at companies on both sides of transaction was not enough); *In re Nat'l Serv. Indus., Inc.*, Case No. 12-12057

(MFW), 2015 WL 3827003, at *5 (Bankr. D. Del. June 19, 2015) (close relationship existed where transfers were made to "officers and members of the Debtor's board"); *In re Zambrano Corp.*, 478 B.R. 670, 692 (Bankr. W.D. Pa. 2012) (finding "close relationship" where both entities were controlled by members of same family).

In a weak effort to insinuate fraud, FTX.com alleges, in conclusory fashion, that the Transfers were "facilitated by the close relationship" amongst the Plaintiffs, Mirana and Time Research, which alleged relationship in turn caused FTX.com to prioritize Time Research's withdrawal requests over others. *See* Compl. ¶ 56. The Complaint also vaguely alleges that Time Research "benefitted from" VIP treatment that was allegedly also afforded to Mirana, by virtue of its alleged "close" relationship with Mirana and FTX.com. *See id.* at ¶ 53.

FTX.com's careful wording in describing this alleged close relationship is telling. Nowhere does the Complaint allege that (i) Time Research was in fact a VIP, (ii) that Time Research *knew* it was receiving VIP treatment, or (iii) that Time Research's alleged VIP treatment caused it to exert control over FTX.com. Also, even if all of the allegations in the Complaint regarding Time Research were true – i.e. that FTX.com allegedly tracked Time Research's withdrawal requests on a "VIP spreadsheet" and prioritized Time Research's withdrawal requests, that Mirana and Time Research maintained a "close" relationship, and that Time Research "benefitted from" VIP treatment as a result of such relationship – *none* of these allegations indicate an intent *by the Debtors* to hinder, delay or defraud other creditors. Such allegations *may* suggest preferential treatment (which Time Research disputes) but they certainly do not suggest fraud. As such, the relationship between the parties does not weigh in favor of fraudulent intent.

**Consideration for the Transfers.** There is no allegation in the Complaint that FTX.com failed to receive adequate consideration in exchange for the Transfers, which again were not transfers of property belonging to FTX.com but rather a return of Time Research's property.

**Insolvency or Indebtedness of the Debtors.** FTX.com alleges, in conclusory fashion, that each of the Transfers was made while FTX.com was insolvent and that "Plaintiffs were insolvent when, or became insolvent shortly after, the transfers were made." Compl. ¶¶ 56, 94. These conclusory allegations are insufficient and cannot serve as a basis to infer fraudulent intent. *See In re United Tax Grp.*, Case No. 14-10486 (LSS), 2018 WL 1135496, at *10 (rejecting "conclusory statement of insolvency"). "Insolvency is determined at the time of conveyance." *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC),* Case No. 15-11469 (LSS), 2019 WL 4261168, at *11 (Bankr. D. Del. Sept. 6, 2019).

Here, the Transfers occurred at various times prior to the Petition Date. Other than stating generally that the Plaintiffs were insolvent at the time of the Transfers (or were rendered insolvent thereby), the Complaint does not specify whether FTX.com was in fact insolvent at the time of, or were rendered insolvent by, each of the Transfers at the times that the withdrawals occurred. Case law is clear that conclusory allegations that merely track the words of the statute or simply state that the debtor was insolvent, without more, are insufficient to state a claim. *See, e.g.*, *In re Cred Inc.*, 650 B.R. at 814, 834-35 (dismissing actual fraudulent transfer claims because badges of fraud were supported by "sparse" factual allegations and "conclusory statements"); *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *11 (finding insufficient "conclusory statement" and mere "recitation of the word 'insolvency'" without "any specific allegations" supporting alleged insolvency); *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 39 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claim because plaintiff "failed to provide any support for

allegations that [the debtor] was insolvent or was rendered insolvent" at time of transfer). Because the Plaintiffs have failed to state more than a conclusory allegation of insolvency, this badge does not provide sufficient indicia of fraudulent intent so as to state a claim for relief.[12]

**Portion of Estate Transferred**. This factor is likewise not indicative of fraudulent intent. FTX.com alleges only that Time Research received approximately $48 million in value as a result of the withdrawal of its digital assets during the Preference Period, of which $23 million was allegedly made with an intent to defraud creditors under section 548(a)(1).[13] FTX.com does *not* allege what this amount represents in relation to the total value of its estate, much less that the funds transferred represented "substantially all" of FTX.com's assets.

**Secrecy.** FTX.com does not allege that the Transfers were concealed. On the contrary, the Complaint alleges that FTX.com employees tracked all withdrawal requests. *See* Compl. ¶ 53.

In sum, there is no confluence of "badges of fraud" demonstrating fraudulent intent so as to sufficiently state a claim for relief under Bankruptcy Code section 548(a)(1) or Delaware Code section 1304(a)(1). Counts I and II of the Complaint must therefore be dismissed.

**V.    Counts III and V Must Be Dismissed Because FTX.com Has Failed to Adequately Allege that the Transfers were Made on Account of an Antecedent Debt or that the Transfers Permitted Time Research to Receive More Than It Would Receive in a Chapter 7 Proceeding.**

Next, Counts III and V of the Complaint must be dismissed because FTX.com has failed to adequately allege that the Transfers were "for or on account of an antecedent debt owed by the debtor before such transfer was made," or that the Transfers enabled Time Research to receive

---

[12]    The failure to sufficiently allege insolvency at the time of each Transfer is also fatal to the preference claim in Count III, which requires a showing of insolvency at the time of the Transfers. *See* 11 U.S.C. § 547(b)(3).

[13]    Time Research reserves all rights to challenge the value ascribed to the Transfers in the Complaint.

more than it would receive in a chapter 7 case where the Transfers had not been made, as otherwise required by sections 547(b)(2) and 547(b)(5).  *See* 11 U.S.C. § 547(b)(2), (5).

"A transfer is deemed 'on account of an antecedent debt' if the debtor incurs the liability prior to the alleged preferential transfer." *Trustee of the NP Creditor Litig. Trust (In re NewPage Corp.)*, 555 B.R. 444, 450 (D. Del. 2016).  As discussed above, the Transfers consisted of property belonging to Time Research.  Because FTX.com was merely a custodian of such property pursuant to the Terms of Service, no form of antecedent debt was created for purposes of section 547(b)(2).  Similarly, because the Transfers constituted a return to Time Research of its own property, and the estate maintained no interest in such property, FTX.com cannot sufficiently allege that Time Research received more than it would in a chapter 7 proceeding where the Transfers had not been made.  Even in the context of a chapter 7 proceeding, Time Research would be entitled to the full return of its digital assets since, by the clear language of the Terms of Service, such assets belonged only to Time Research.  Thus, FTX.com fails to state a claim for relief in Counts III and V.

**VI.  Counts V and VIII of the Complaint Should Be Dismissed against Time Research for Failure to Adequately Allege a Primary Violation in Counts I through III**

Count V of the Complaint, which seeks to recover transferred funds under Bankruptcy Code section 550(a)(1) , should be dismissed because, as discussed above, FTX.com has failed to adequately allege facts showing that the Transfers are avoidable under sections 544, 547, and 548 of the Bankruptcy Code.  *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 750 (3d Cir. 2013) (explaining that section 550(a)(1) only allows recovery of "property whose transfer has been avoided").

Similarly, Count VIII of the Complaint, which seeks to disallow claims pursuant to Bankruptcy Code section 502(d), should be dismissed because, again, FTX.com has failed to adequately allege facts showing that Time Research received transfers that are recoverable or

avoidable.  *See In re KB Toys Inc.*, 736 F.3d 247, 249 (3d. Cir. 2013) ("Under § 502(d), a bankruptcy claim can be disallowed if the claimant receives property that is avoidable or recoverable by the bankruptcy estate").  In addition, Time Research did not file a proof of claim in the Chapter 11 Cases nor does it appear that FTX.com scheduled any claim for Time Research.  Therefore, even if FTX.com did sufficiently state claim for avoidance in the Complaint (which it did not), there is no claim for which they could seek disallowance.

## CONCLUSION

For the foregoing reasons, Time Research respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: February 6, 2024

**SAUL EWING LLP**

By:*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
Paige N. Topper (DE Bar No. 6470)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com
paige.topper@saul.com

Steven C. Reingold (admitted *pro hac vice*)
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone: (617) 912-0940
Facsimile: (617) 723-4151
steven.reingold@saul.com

*Counsel to Time Research Ltd.*