## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al., | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC., and ALAMEDA RESEARCH LTD., | |
| Plaintiffs, | |
| - against - | |
| MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG, | Adv. Proc. No. 23-50759 |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANT BYBIT FINTECH LTD.'S  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

**CONNOLLY GALLAGHER LLP**
Karen C. Bifferato (DE No. 3279)
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
Tel: (302) 888-6221
Email:
kbifferato@connollygallagher.com

**O'MELVENY & MYERS LLP**
Peter Friedman
pfriedman@omm.com
Daniel S. Shamah
dshamah@omm.com
Caitlyn Holuta
choluta@omm.com
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

**O'MELVENY & MYERS LLP**
William K. Pao
wpao@omm.com
Jonathan B. Waxman
jwaxman@omm.com
Katie Farrell
kfarrell@omm.com
400 South Hope Street
18th Floor
Los Angeles, California 90071
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

*Counsel for Defendant Bybit Fintech Ltd.*

Dated: February 6, 2024

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING ........................................ 1

SUMMARY OF ARGUMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 3

    I.   BYBIT'S BUSINESS ............................................................... 3

        A.  Bybit's Terms and Conditions ............................................... 3

        B.  The Bybit Accounts in this Adversary Proceeding ......................... 4

    II.  BITDAO ........................................................................ 5

        A.  The BitDAO Community ...................................................... 5

        B.  The BitDAO-Mantle Rebrand Proposals and Votes ...................... 5

ARGUMENT ....................................................................................... 5

    I.   THE CLAIMS AGAINST BYBIT MUST BE DISMISSED FOR LACK OF *IN PERSONAM* JURISDICTION ................................................ 5

        A.  Debtors must adequately allege that the Court has *in personam* jurisdiction over Bybit; *in rem* jurisdiction over the subject property is insufficient. ............................ 6

        B.  Debtors fail to demonstrate that this Court has general *in personam* jurisdiction over Bybit.............................................................................. 9

        C.  Debtors fail to demonstrate that this Court has specific *in personam* jurisdiction over Bybit.............................................................................. 10

    II.  DEBTORS CANNOT SATISFY ADDITIONAL THRESHOLD ISSUES FOR THEIR CLAIMS OVER ASSETS HELD IN FIVE NON-DEBTOR ACCOUNTS................... 12

        A.  The Court does not have *in rem* jurisdiction over the property in the five Non-Debtor Accounts. ........................................................................... 12

        B.  Debtors lack standing to bring claims related to the assets in the five Non-Debtor Accounts. ........................................................................... 13

        C.  Debtors fail to join all necessary parties. .............................. 14

    III. EVEN IF THE COURT HAS PERSONAL JURISDICTION, THE COURT SHOULD DISMISS THE TURNOVER CLAIM BECAUSE IT IS SUBJECT TO BINDING ARBITRATION IN SINGAPORE................................................... 15

        A.  Federal policy favors arbitration of this dispute. ...................... 16

        B.  Bybit's Terms and Conditions require arbitration of the turnover claim.................. 17

        C.  This Court lacks discretion to deny enforcement of the arbitration clause................ 18

    IV. DEBTORS FAIL TO PLEAD ANY ACTIONABLE CLAIM AGAINST BYBIT......... 20

        A.  Motion to dismiss standard. .............................................. 20

        B.  The turnover claim must be dismissed..................................... 20

        C.  The automatic stay claim must be dismissed. ............................ 25

**TABLE OF CONTENTS**

**(continued)**

Page

    1.   Debtors' disguised turnover action is not a cognizable stay violation..................25

    2.   Debtors fail to plead that Bybit took any action related to the BitDAO allegations that violate the automatic stay.............................................................................27

    3.   Debtors fail to allege damages related to their BitDAO allegations.....................29

  D.  The count for disallowance of proofs of claims must be dismissed. ...........................30

CONCLUSION.................................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alameda Research Ltd. v. Platform Life Sciences Inc.*,
    2023 WL 8814216 (Bankr. D. Del. Dec. 20, 2023)................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 20

*B.D.W. Assocs. Inc. v. Busy Beaver Bldg. Centers, Inc.*,
    865 F.2d 65 (3d Cir. 1989)........................................................................................ 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................... 20

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017)............................................................................................. 9, 10

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000) ...................................................................................... 11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................................... 11

*City of Chicago, Illinois v. Fulton*,
    592 U.S. 154 (2021)................................................................................................... 26

*Cross Timbers Oil Co. v. Rosel Energy, Inc.*,
    167 F.R.D. 457 (D. Kan. 1996) ................................................................................. 15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................. 9, 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)............................................................................................... 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................... 9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)..................................................................................................... 17

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) .................................................................................... 19

*In re 1031 Tax Grp., LLC*,
    420 B.R. 178 (Bankr. S.D.N.Y. 2009)....................................................................... 14

*In re 45 John Lofts, LLC*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019)....................................................................... 30

*In re Aegean Marine Petroleum Network Inc.*,
    599 B.R. 717 (Bankr. S.D.N.Y. 2019)....................................................................... 12

*In re Alcantara*,
    389 B.R. 270 (Bankr. M.D. Fla. 2008) ............................................................... 13, 29

**Page(s)**

*In re Alto Maipo Del.*, LLC,
No. 21-11507 (KBO) (Bankr. D. Del. Apr. 27, 2022) ............................................................. 7, 8

*In re Amdura Corp.*,
167 B.R. 640 (D. Co. 1994) ................................................................................................ 21

*In re APF Co.*,
2001 WL 1820788 (D. Del. Aug. 31, 2001) ...................................................................... 27

*In re Astropower Liquidating Tr.*,
2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ...................................................... 6, 8, 12

*In re Busick*,
831 F.2d 745 (7th Cir. 1987) ............................................................................................ 21

*In re Concepts Am., Inc.*,
2018 WL 2085615 (Bankr. N.D. Ill. May 3, 2018) ............................................................ 23

*In re Conex Holdings, LLC*,
518 B.R. 792 (Bankr. D. Del. 2014) .............................................................................. 20, 21

*In re Denby-Peterson*,
941 F.3d 115 (3d Cir. 2019) .............................................................................................. 27

*In re DHP Holdings II Corp.*,
435 B.R. 264 (Bankr. D. Del. 2010) ................................................................................. 30

*In re Feldman*,
309 B.R. 422 (Bankr. E.D.N.Y. 2004) ............................................................................... 12

*In re Flintkote*,
486 B.R. 99 (Bankr. D. Del. 2012) .................................................................................... 13

*In re GCX Ltd.*,
634 B.R. 441 (Bankr. D. Del. 2021) .................................................................................. 13

*In re Haynie Grain Servs., Inc.*,
126 B.R. 208 (Bankr. D. Md. 1991) ................................................................................... 14

*In re HH Liquidation, LLC*,
590 B.R. 211 (Bankr. D. Del. 2018) .................................................................................. 24

*In re Howland*,
674 F. App'x. 482 (6th Cir. 2017) ...................................................................................... 24

*In re Levitz Furniture Inc.*,
267 B.R. 516 (Bankr. D. Del. 2000) ................................................................................... 28

*In re Lexington Healthcare Grp., Inc.*,
363 B.R. 713 (Bankr. D. Del. 2007) ......................................................................... 21, 22, 23

*In re Mihranian*,
2017 WL 6003345 (B.A.P. 9th Cir. Dec. 4, 2017) ............................................................ 24

*In re Mintze*,
434 F.3d 222 (3d Cir. 2006) ......................................................................................... 18, 19

**Page(s)**

*In re NSC Wholesale Holdings LLC*,
637 B.R. 71 (Bankr. D. Del. 2022) ........................................................................ 20

*In re Olympus Healthcare Grp., Inc.*,
352 B.R. 603 (Bankr. D. Del. 2006) ............................................................ 19, 20

*In re Owens Corning*,
419 F.3d 195 (3d Cir. 2005) ................................................................................. 23

*In re Price*,
173 B.R. 434 (Bankr. N.D. Ga. 1994) .................................................................. 14

*In re Rotondo Weirich Enterprises, Inc.*,
583 B.R. 860 (E.D. Pa. 2018) ............................................................................... 20

*In re Rouge Indus., Inc.*,
326 B.R. 55 (Bankr. D. Del. 2005) ....................................................................... 15

*In re Scrub Island Development Grp. Ltd.*,
523 B.R. 862 (Bankr. M.D. Fla. 2015) ................................................................ 12

*In re Valley Media, Inc.*,
289 B.R. 27 (Bankr. D. Del. 2003) ....................................................................... 19

*In re Welded Constr., L.P.*,
609 B.R. 101 (Bankr. D. Del. 2019) ..................................................................... 27

*In re Wheeler*,
444 B.R. 598 (Bankr. D. Idaho 2011) .................................................................. 24

*In re Windstream Holdings, Inc.*,
634 F. Supp. 3d 99 (S.D.N.Y. 2022) .................................................................... 29

*Int'l Shoe Co. v. Wash. Off. of Unemp't Comp. & Placement*,
326 U.S. 310 (1945) ................................................................................................ 8

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .................................................................................................. 17

*Malik v. Cabot Oil & Gas Corp.*,
710 F. App'x 561 (3d Cir. 2017) ............................................................................ 9

*Mar. Elec. Co. v. United Jersey Bank*,
959 F.2d 1194 (3d Cir. 1991) .............................................................................. 26

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................................................ 16, 17

*Mor–Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co., Ltd. (In re Mor–Ben Ins. Mkts. Corp.)*,
73 B.R. 644 (B.A.P. 9th Cir. 1987) ...................................................................... 16

*Papasan v. Allain*,
478 U.S. 265 (1986) .............................................................................................. 20

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ................................................................................. 3

**Page(s)**

*Raslavich v. Ira S. Davis Storage Co.*,
    1993 WL 384501 (E.D. Pa. Sep. 22, 1993) ............................................................. 23

*Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*,
    263 F. Supp. 3d 491 (D. Del. 2017) ..................................................................... 15

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ................................................................. 16, 17, 18, 19

*Sheehan v. Breccia Unlimited Co. (In re Sheehan)*,
    48 F.4th 513 (7th Cir. 2022) ....................................................... 5, 6, 7, 8, 10, 11

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ....................................................................................... 12

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................... 13

*Yaw v. Delaware River Basin Comm'n*,
    49 F.4th 302 (3d Cir. 2022) ............................................................................ 13

**Statutes**

11 U.S.C. § 362(a)(3) ......................................................................... 3, 25, 27

28 U.S.C. § 1334(e) .................................................................................. 12

9 U.S.C. § 2 ............................................................................................ 16

**Rules**

Fed. R. Bankr. P. 7012(b) ............................................................................. 1

Fed. R. Bankr. P. 7019 ............................................................................... 14

Fed. R. Civ. P. 12(b)(2) ......................................................................... 1, 5, 6

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 20

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

Bybit respectfully submits this brief in support of its motion to dismiss the Debtors' Complaint for: (i) lack of *in personam* jurisdiction under Federal Rule of Civil Procedure 12(b)(2); and (ii) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 12(b) is made applicable to this Court by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7012(b) ("Rule 12(b)-(i) F.R.Civ.P. applies in adversary proceedings.").

## SUMMARY OF ARGUMENT[1]

This case has no connection to the United States and only the barest connection to the underlying chapter 11 cases.  Bybit is a Seychelles-based crypto platform that Debtors do not allege has any connection to the U.S.  Bybit's Singapore-law Terms and Conditions expressly state that the Bybit platform is not available for use by U.S.-based customers and that any disputes over withdrawals from the platform must be resolved in binding arbitration in Singapore.  This lawsuit concerns digital assets held in six accounts on the Bybit platform.  All six of those accounts belong to non-U.S. entities.  Five of those six entities are not even debtors in these chapter 11 cases or parties to this action.  These undisputed facts—apparent on the face of the Complaint and in Bybit's Terms and Conditions (which the Court can consider on a motion to dismiss)—doom the Complaint.  It is Debtors' burden to show *in personam* jurisdiction over Bybit exists; due process under the United States Constitution requires no less.  Because Debtors cannot make this showing, their claims against Bybit must be dismissed.

Even if Debtors could overcome the Complaint's fatal jurisdictional problem, Debtors' three claims against Bybit—claims for turnover (Count Six), violation of the automatic stay

---

[1] Capitalized terms not defined in this Memorandum of Law have the meanings used in the Complaint.

(Count Seven), and disallowance of proofs of claims (Count Eight)—all fail.

*The turnover claim.* Debtors' turnover claim is a disguised claim for breach of Bybit's Terms and Conditions to allow six foreign entities—five of which are not even debtors or parties to this lawsuit—to withdraw funds from the Bybit platform. Withdrawal of funds is governed by Bybit's Terms and Conditions, which require such disputes to be submitted to binding arbitration in Singapore. The Court cannot ignore the binding arbitration clauses between the five foreign non-debtor entities and Bybit. And, even for the one Debtor entity with an account with Bybit, the broad scope and far reach of the Federal Arbitration Act requires arbitration and overrides any bankruptcy policy considerations.

Even if not subject to mandatory arbitration, the turnover claim fails because there is a bona fide dispute over whether the assets the Debtors seek turnover for are the undisputed property of the estate, as required by Bankruptcy Code section 542(a). As noted, five of the six subject accounts are held by foreign entities that are not debtors or even parties to this action. Although Debtors attempt to plead that all of these accounts belong to Alameda, Debtors' allegations show that the accounts are not the undisputed property of the estate. This defect also requires dismissal because: (i) the Court does not have *in rem* jurisdiction over non-debtor assets; (ii) Debtors do not have Article III standing to assert claims over non-debtor assets; and (iii) the five non-debtor entities are indispensable parties here.

*The automatic stay claim.* Debtors fail to plead that Bybit took any actions that violated the automatic stay. As a threshold matter, the claim that Bybit is unlawfully retaining Debtors' (and non-debtors') assets is merely a repackaging of the turnover claim and suffers from the same defects described above. In addition, passively retaining possession of assets is not a violation of the automatic stay under recent Supreme Court precedent. And Bybit's unspecified

ties to the BitDAO community in 2021 are insufficient to establish that Bybit played a role in the 2023 vote at issue, let alone a role that could amount to an "exercise [of] control over property of the estate" in violation of 11 U.S.C. § 362(a)(3).

**Claim disallowance.**  Debtors' disallowance claim (Count Eight) fails because they have not identified a claim to disallow—and because the Court has not ordered turnover (and cannot order turnover), disallowance is unavailable to Debtors.  For these reasons and others discussed below, the claims against Bybit should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.   BYBIT'S BUSINESS

Bybit is one of the world's largest cryptocurrency exchanges, with significant trading on its platform each day.  *See* Compl. ¶ 4.[2]  Bybit is incorporated under the laws of the Seychelles. *See id*. ¶ 24.

#### A.   Bybit's Terms and Conditions

As a cryptocurrency exchange, Bybit enables users to purchase and trade various digital assets.  *See* Ex. 1 (Bybit Terms and Conditions) at Section 8.1.  These digital assets include Bitcoin, Ether, and other crypto or digital assets or currencies.  *See id*.  Bybit's relationships with all its customers, including Alameda and the non-debtor affiliates, are governed by Bybit's Terms and Conditions.  Bybit's Terms and Conditions, which "form a binding agreement between the Company and [users]," govern the following (among other areas):

- "Account[s]," including terms that govern account set-up, the manner in which digital

---

[2] The facts in this motion are drawn from (i) the Complaint's factual allegations, accepted as true for purposes of this motion; (ii) materials cited in the Complaint or referenced by materials cited in the Complaint; and (iii) Bybit's Terms and Conditions, attached as Exhibit 1 to the declaration of Daniel S. Shamah.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider a document that "defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document . . . .").  References to "Exhibits" or "Ex." are to the exhibits to the declaration of Daniel S. Shamah.

assets are held, account access, and withdrawals from accounts (*see id.* at Section 7);

- "Trading," including terms that govern the manner in which customers place orders on the platform (*see id.* at Section 8);

- "User Access Obligations," including terms that make clear that the United States is an "excluded jurisdiction" and U.S.-based users are barred from utilizing the Bybit platform (*see id.* at Sections 11.2; 12.3 ("Bybit does not offer services or products to Users in a few excluded jurisdictions including the United States . . . ."));

- "Suspicion or Termination in Whole or in Part," including terms that allow Bybit to suspend or terminate user access to the platform or certain functions on the platform, including the ability to withdraw digital assets (*see id.* at Section 23);

- "Governing Law and Dispute Resolution," including terms that require any disputes in connection with the terms or the platform to be finally resolved by arbitration in Singapore (*see id.* at Section 26).

Consistent with the Terms and Conditions, the one U.S.-based debtor-plaintiff—FTX US—did not have an account with Bybit.  *See* Compl. ¶¶ 22, 68.[3]

**B.    The Bybit Accounts in this Adversary Proceeding**

There are six Bybit accounts at issue in this litigation.  *See* Compl. ¶ 68.  All six accounts are held by British Virgin Islands entities.  *See id*. ¶¶ 23, 68.  All six accounts, like all other user accounts on Bybit's platform, are governed by Bybit's Terms and Conditions.  Only one of the six accounts is held by a debtor, Alameda.  *See id*.  The other five accounts are held by entities that are neither debtors nor parties to this litigation.  *See id*.  While the Complaint lumps them together under the misleading heading of the "FTX Group" (Compl. ¶ 67), those five accounts are held by five different foreign, non-debtor entities: (i) Ninja Epoch Ltd.; (ii) Finfinity Apex Ltd.; (iii) King Sirius Ltd.; (iv) Fir Grove Enterprises Ltd.; and (v) Whirl Casa Ltd. (collectively, the "Non-Debtor Accounts").  *See id*. ¶ 68.  The assets in the five Non-Debtor Accounts

---

[3] FTX US does not have any connection to the claims against Bybit.

constitute a majority of the assets in the Bybit accounts at issue—approximately $103 million of

$122 million, or 84%.  *See id.*

## II.    BITDAO

### A.    The BitDAO Community

BitDAO is "a third entity," distinct from Bybit and Mirana, that operates as a

"Decentralized Autonomous Organization" (DAO).   Compl. ¶ 75.  BitDAO is governed by

anonymous $BIT token holders—each token holder takes part in governance decisions by

participating in "community votes."  *See id.* ¶ 77 n. 20.  Community votes, in turn, are weighted

by token holdings.  *See id.*  $BIT token holders with larger holdings have more votes.  *See id.*

### B.    The BitDAO-Mantle Rebrand Proposals and Votes

In May 2023, the BitDAO community voted—nearly unanimously—to rebrand BitDAO

as Mantle and convert $BIT tokens to MNT tokens at a 1:1 ratio.  *See* Compl. ¶ 76.[4]  In

September 2023, the community subsequently voted to prevent the automatic migration of FTX

owned $BIT tokens to MNT tokens.[5]  Over 7,700 community members cast votes, with

approximately 175,000,000 "yes" votes against approximately 4,200 "no" votes.  *See id.*

## <u>ARGUMENT</u>

## I.    THE CLAIMS AGAINST BYBIT MUST BE DISMISSED FOR LACK OF *IN PERSONAM* JURISDICTION

Debtors' claims against Bybit must be dismissed under Federal Rule of Civil Procedure

12(b)(2) because Debtors fail to allege that this Court has *in personam* jurisdiction over Bybit.

*See Sheehan v. Breccia Unlimited Co. (In re Sheehan)*, 48 F.4th 513, 526 (7th Cir. 2022)

(affirming dismissal of adversary proceeding alleging an automatic stay violation based on lack

---

[4] *See also* Ex. 3 (Mantle Token Conversion Proposal) at 5.
[5] *See* Ex. 2 (Clarification of Token Conversion Proposal).

of *in personam* jurisdiction over defendant).  "[A]s the Federal Rules of Bankruptcy Procedure remind us, all jurisdiction is ultimately subject to constitutional constraints." *Id*. at 520.  The Debtors' obligation to establish *in personam* jurisdiction over Bybit flows from the "Due Process Clause of the Fifth Amendment." *Id*. at 520 n.5.

"When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists." *Id*. at 520; *see also In re Astropower Liquidating Tr.*, 2006 WL 2850110, at *2 (Bankr. D. Del. Oct. 2, 2006) ("The overwhelming authority in the Third Circuit establishes that the Plaintiff has a burden of proving, by concrete evidence and not merely the allegations in its complaint, that the [] Defendants have the minimum contacts necessary to establish personal jurisdiction [on a motion to dismiss].").  The Complaint does not even attempt to establish that *in personam* jurisdiction exists over Bybit.

### A.   Debtors must adequately allege that the Court has *in personam* jurisdiction over Bybit; *in rem* jurisdiction over the subject property is insufficient.

A plaintiff in an adversary proceeding claiming interference with debtor property must demonstrate both *in personam* jurisdiction over a defendant *and in rem* jurisdiction over the subject property. *See Sheehan*, 48 F.4th at 526.  The Seventh Circuit recently addressed this issue in *Sheehan*.  There, the debtor-plaintiff asserted a claim for violation of the automatic stay against several Irish companies (the "Irish Defendants") that sought to sell the debtor-plaintiff's Irish property to recoup losses on defaulted loans. *See id*. at 517.  The Irish Defendants moved to dismiss plaintiff's automatic stay claim for lack of *in personam* jurisdiction. *See id*.  The bankruptcy court granted the Irish Defendants' motion to dismiss, and the district court affirmed. *See id*.  On appeal to the Seventh Circuit, plaintiff "attempt[ed] to link personal jurisdiction over the defendants to the bankruptcy court's *in rem* jurisdiction" over debtor property located

anywhere in the world, arguing that "because the Irish property was subject to the legal fiction of being in Illinois, all of the defendants' actions to seize and sell that property must also have occurred (fictionally) in Illinois." *Id*. at 521–22.  The Seventh Circuit rejected this argument, explaining that a debtor-plaintiff "cannot bootstrap the personal jurisdiction claim in this circular manner." *Id*. at 522.  The court held that, in addition to a bankruptcy court's *in rem* jurisdiction, the bankruptcy court must separately have "either general or specific personal jurisdiction over a party" under the Due Process Clause of the Fifth Amendment to proceed.  *Id*.

 *Sheehan* reflects well-settled jurisprudence, as multiple lower courts in Delaware have adopted the same jurisdictional framework.  For example, in *Alto Maipo*, the Delaware Bankruptcy Court held that a bankruptcy court must have both *in rem* jurisdiction and *in personam* jurisdiction over a contract counterparty in a contested matter regarding contract assumption under Bankruptcy Code Section 365.  The debtors argued that the court had jurisdiction over the dispute because the "contract [] is unquestionably property of the estate and property over which the Court, unquestionably, has *in rem* jurisdiction."  Tr. of Zoom Hr'g Before Hon. Karen B. Owens ("*Alto Maipo*") at 20, *In re Alto Maipo Del.*, LLC, No. 21-11507 (KBO) (Bankr. D. Del. Apr. 27, 2022), ECF No. 548.  The court rejected this argument, explaining that making findings "regarding default and cure"—findings required under Bankruptcy Code Section 365(b) when a debtor exercises its business judgment to assume a contract—"requires a determination of the party's contractual rights and responsibilities." *Id*. at 59.  The court held that the "due process clause precludes [it] from adjudicating those issues and

making the debtors['] requested findings in the absence of personal jurisdiction over" the debtor's counter-party.  *Id.* at 60.[6]

Likewise, in both *Platform Life Sciences* and *Astropower*, this Court recognized that a federal bankruptcy court must have *in personam* jurisdiction over a defendant where plaintiffs assert statutory bankruptcy claims.  *See Alameda Research Ltd. v. Platform Life Sciences Inc.*, 2023 WL 8814216, at *2 (Bankr. D. Del. Dec. 20, 2023) (holding that court must have personal jurisdiction over defendant in fraudulent transfer bankruptcy action); *Astropower*, 2006 WL 2850110, at *1 (dismissing bankruptcy claim for fraudulent transfer for lack of personal jurisdiction).

The same is true here.  Even if the Court has *in rem* jurisdiction over alleged debtor property (which, as discussed below, Debtors have failed to establish at least as to the five Non-Debtor Accounts at issue, *see infra* at 12–13), the Constitution requires Debtors to separately allege that the Court has *in personam* jurisdiction over Bybit.  *See Sheehan*, 48 F.4th at 520 ("[D]ue process requires that out-of-forum defendants must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'") (quoting *Int'l Shoe Co. v. Wash. Off. of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945)).  Therefore, the Court cannot adjudicate the claims asserted against Bybit "without [Debtors] first establishing personal jurisdiction over [Bybit]."  *Alto Maipo* at 58.  As discussed below, the Complaint fails this test.

---

[6] Debtors' counsel here represented the creditor in *Alto Maipo* and successfully argued that "any statutory authority that this Court has to grant the requested relief is in all respects subject to the constitutional limitations on this Court's exercise of its jurisdiction.  A statutory grant of authority to this Court does not trump the Constitution . . . . The approach advocated by the Debtors would effectively abolish any distinction between *in rem* and *in personam* relief in the bankruptcy context . . . ."  Br. of Specially-Appearing Minera Los Pelambres Debtors' at 8, *In re Alto Maipo Del.*, LLC, No. 21-11507 (KBO) (Bank. D. Del. Apr. 13, 2022), ECF No. 489.

**B.      Debtors fail to demonstrate that this Court has general *in personam* jurisdiction over Bybit.**

The Constitution permits the exercise of general *in personam* jurisdiction over a nonresident defendant only where the defendant's activities within the United States are of such a "continuous and systematic" nature that its contacts with the United States render it "essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017). "[I]t is 'incredibly difficult to establish general jurisdiction over a corporation in a forum *other* than the place of incorporation or principal place of business." *Id*. at 564 (italics in original). "A corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014).  It is only in an "exceptional case" where a corporation is "at home" in a forum other than its place of incorporation or principal place of business.  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (providing example of an "exceptional" case where war forced a company to relocate).

Here, as in *Sheehan* and *Astropower*, Bybit is a foreign entity that conducts its business abroad.  *See* Compl. ¶ 24 (conceding that Bybit is a Seychelles entity).  And there is no allegation in the Complaint that the U.S. is Bybit's principal place of business.  This makes sense:  Bybit's Terms and Conditions prohibit U.S. customers from accessing the Bybit platform:

> **We also do not offer services or products to Users in a few excluded jurisdictions including the United States** . . . . You should inform us immediately if you become a resident in any of the Excluded Jurisdictions or are aware of any Users based in any of the Excluded Jurisdictions. You understand and acknowledge that if it is determined that you have given false representations of your location or place of residence, the Company reserves the right to take any

> appropriate actions in compliance with this restriction or in compliance with the
> law of a relevant jurisdiction, including termination of any Account immediately
> and liquidating any open positions.

Ex. 1 (Bybit Terms and Conditions) at Section 11.2 (emphasis added); *id.* at Section 12.3 ("Bybit

does not offer services or products to Users in a few excluded jurisdictions including the United

States . . . ."). Moreover, Bybit requires disputes with customers to be arbitrated in Singapore

under Singapore law, further evidencing Bybit's efforts to avoid being hailed into U.S. courts.

*See id.* at Section 26.

There is not one allegation in the Complaint that describes any connection between Bybit

and the United States, let alone a "continuous and systematic" connection that renders this an

"exceptional" case where Bybit is "at home" in the United States. *BNSF*, 581 U.S. at 413; *see*

*also Daimler AG*, 571 U.S. at 139 (holding that corporation with global reach and regional

corporate headquarters in forum was not effectively "at home" in forum for purposes of general

*in personam* jurisdiction). Accordingly, Debtors fail to allege the Court has general *in personam*

jurisdiction over Bybit. *See Sheehan*, 48 F.4th at 522 ("Neither party asserts that the court has

general jurisdiction over the defendant-appellees, as none are 'at home' in the jurisdiction either

by being incorporated in Illinois or having a principal place of business there.").

## C. Debtors fail to demonstrate that this Court has specific *in personam* jurisdiction over Bybit.

Debtors also fail to allege the Court has specific *in personam* jurisdiction over Bybit. As

the Supreme Court held in 2021, the exercise of specific personal jurisdiction over a nonresident

defendant requires that the defendant have taken "some act by which [it] purposefully avails

itself of the privilege of conducting activities within the forum," and that plaintiffs' claims "arise

out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth*

*Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021); *see also BP Chemicals Ltd. v. Formosa*

*Chemical & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts[.]") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Debtors' failure to allege specific *in personam* jurisdiction is unsurprising.  As discussed above, Bybit is a Seychelles entity that conducts its business abroad.  And, Debtors allege that all of the assets in the Bybit accounts at issue are in the name of British Virgin Islands—not U.S.— entities.  *See* Compl. ¶ 69.  As to Bybit's alleged involvement in preventing the Debtors from converting BIT tokens to MNT tokens, there is also no alleged connection to the United States. *See* Compl. ¶¶ 75–77.

*Sheehan* confirms that this Court lacks specific *in personam* jurisdiction over Bybit.  In *Sheehan*, the court held that it lacked specific *in personam* jurisdiction over the Irish Defendants because none of the defendants "expressly aimed" the alleged wrongdoing at the United States. *Sheehan*, 48 F.4th at 525.  The court explained that the "only connection between the defendant's suit-related conduct and the United States is Sheehan's residence in Illinois."  *Id*.  The facts are even more stark here than they were in *Sheehan*.  While there was at least some connection to the United States in *Sheehan* based on the plaintiff's Illinois residence—albeit a connection insufficient to establish specific *in personam* jurisdiction—even that connection does not exist here.  None of the accounts in question or Bybit's alleged activities related to the BIT and MNT tokens have any connection to the United States, as the only Debtor with a Bybit account is Alameda, a BVI entity.  *See* Compl. ¶¶ 23, 67–68, 75–77; Alameda's November 11, 2022 Voluntary Petition for Bankruptcy, Case 22-11067, Dkt. 1 (showing only basis for jurisdiction over Alameda is affiliate jurisdiction).  Indeed, the only U.S. party in this case is plaintiff FTX

US, and, consistent with Bybit's Terms and Conditions, it did not have an account on the Bybit platform.[7]  Debtors thus cannot show that this Court has specific *in personam* jurisdiction over Bybit and the Complaint must be dismissed.  *See Astropower*, 2006 WL 2850110, at *7.

## II.  DEBTORS CANNOT SATISFY ADDITIONAL THRESHOLD ISSUES FOR THEIR CLAIMS OVER ASSETS HELD IN FIVE NON-DEBTOR ACCOUNTS.

### A.  The Court does not have *in rem* jurisdiction over the property in the five Non-Debtor Accounts.

The turnover (Count Seven) and automatic stay (Count Eight) claims as to the property in the five Non-Debtor Accounts must be dismissed because this Court cannot exercise *in rem* jurisdiction over that property.  Bankruptcy courts only have exclusive *in rem* jurisdiction over a debtor's property and the debtor's estate.  *See* 28 U.S.C. § 1334(e); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).  But bankruptcy courts have "no power to say what happens to property that belongs to a third party, even if that third party is a creditor or otherwise is a party in interest."  *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019); *see also In re Scrub Island Development Grp. Ltd.*, 523 B.R. 862, 873 (Bankr. M.D. Fla. 2015) ("It is true that this Court does not have jurisdiction over non-debtor property located outside of the United States.").

Debtors' turnover and automatic stay claims relate primarily to the five foreign Non-Debtor Accounts.  *See* Compl. ¶¶ 68, 74.  But this Court lacks *in rem* jurisdiction over the property in those accounts because that property does not belong to the Debtors.  *See e.g., In re Feldman*, 309 B.R. 422, 428 (Bankr. E.D.N.Y. 2004) (finding no *in rem* jurisdiction over property because debtor did not own the property at issue); *In re GCX Ltd.*, 634 B.R. 441, 447

---

[7] Debtors do not allege that FTX US has any connection to the claims against Bybit.  FTX US is relevant only to the preferential transfer claims against other defendants, not Bybit.  *See* Compl. ¶ 57.

n.34 (Bankr. D. Del. 2021) ("[W]hether the Court has *in rem* jurisdiction turns on whether [defendant's] seizure of the [f]unds was unlawful (and thus void), thereby possibly rend[er]ing the [f]unds property of the estate over which the Court would have *in rem* jurisdiction."). Thus, the Court should dismiss Debtors' turnover and automatic stay claims as they relate to the five Non-Debtor Accounts.

> **B.      Debtors lack standing to bring claims related to the assets in the five Non-Debtor Accounts.**

Debtors' turnover and automatic stay claims as to the five Non-Debtor Accounts must separately be dismissed because Debtors lack standing to assert claims over assets that belong to *other* entities. Litigants in bankruptcy court must "meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution." *In re Flintkote*, 486 B.R. 99, 110 (Bankr. D. Del. 2012); *see also In re Alcantara*, 389 B.R. 270, 275 (Bankr. M.D. Fla. 2008) ("The Debtors in this case must meet the[] requirements for constitutional standing."). Article III standing requires the party bringing suit to establish (1) an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent;" (2) "a causal connection between the injury and the conduct complained of;" and (3) "a likelihood that a favorable decision will redress the injury." *Flintkote*, 486 B.R. at 110–11. "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 315 (3d Cir. 2022) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

As explained above, five of the six Bybit accounts in this action belong to non-debtor entities. Debtors do not have standing to assert claims related to those accounts because the property in those accounts does not belong to the Debtors. *See In re Haynie Grain Servs., Inc.*, 126 B.R. 208, 212 (Bankr. D. Md. 1991) (holding that trustee lacked standing to bring turnover claim to recover funds "which are not property of the bankruptcy estate"); *In re Price*, 173 B.R. 434, 442 (Bankr. N.D. Ga. 1994) ("To show an actual or threatened injury sufficient to support standing to bring a turnover action, a debtor must have a pecuniary interest that would be damaged by the failure of the estate to recover the debtor's property from a third party.").

In *In re 1031 Tax Grp., LLC*, 420 B.R. 178 (Bankr. S.D.N.Y. 2009), a trustee attempted to recover damages for injuries particular to certain creditors. On a motion to dismiss, the court held that the trustee lacked constitutional standing because it did not have a "personal stake in the outcome of the matter." *Id*. at 195. The court reasoned that "[n]o matter how the Trustee's suit is resolved, the injured [third-parties] would in all likelihood still have claims for their injuries." *Id*. The same is true here. To the extent Bybit improperly withheld any funds in the Non-Debtor Accounts (it did not), those non-debtors could have claims against Bybit for breach of Bybit's Terms and Conditions. Because those claims belong to the non-debtor entities, Debtors lack standing to assert those claims here.

### C.      Debtors fail to join all necessary parties.

The five foreign non-debtor entities are also necessary parties to this action under Federal Rule of Civil Procedure 19(a)[8] because they have an interest in the subject of those claims. *See In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005) (finding that third-party who had potential ownership interest in underlying property was necessary party to suit).

---

[8] "Rule 19 F.R.Civ.P. applies in adversary proceedings . . . ." Fed. R. Bankr. P. 7019.

In *Rouge Industries*, a creditor brought an adversary proceeding against a debtor seeking declaratory relief related to the ownership of certain accounts receivable that had allegedly been transferred from the debtor to a non-party. *See* 326 B.R. at 57–58. The court held that the third-party was necessary to the action because "[a] determination of ownership to assets allegedly transferred between a buyer and a seller should not be attempted without both parties to the transaction being before the court." *Id.* at 59. Here, Debtors acknowledge that the five foreign non-party entities hold $103 million of $122 million of assets in the Bybit accounts. *See* Compl. ¶ 68. As in *Rogue Industries*, these non-party foreign entities have an interest in any determination of ownership of the assets in their respective accounts. And Debtors' claims over the assets in these accounts necessarily involve a determination of ownership. Accordingly, this Court cannot adjudicate Debtors' claims that implicate the rights of the five foreign non-parties without their presence in the litigation. *See also Cross Timbers Oil Co. v. Rosel Energy, Inc.*, 167 F.R.D. 457, 460 (D. Kan. 1996) ("Generally, when multiple parties claim ownership interests in the same property . . . all potential claimants must be joined to provide complete relief and protect the interests of the absent parties.").

## III.   EVEN IF THE COURT HAS PERSONAL JURISDICTION, THE COURT SHOULD DISMISS THE TURNOVER CLAIM BECAUSE IT IS SUBJECT TO BINDING ARBITRATION IN SINGAPORE.

In substance, the turnover claim is subject to binding arbitration in Singapore under Bybit's Terms and Conditions. *See* Ex. 1 (Bybit Terms and Conditions) at Section 26.2. Thus, the Court should independently dismiss Count Six. *See Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 494 (D. Del. 2017) ("A defendant may move to dismiss in favor of arbitration pursuant to Rule 12(b)(6) if it is apparent on the face of the complaint and the documents relied upon therein that the plaintiff's claims are subject to an enforceable arbitration clause."). The thrust of the turnover claim is that Bybit "restrict[ed] the FTX Group's ability to

withdraw assets from its Bybit accounts." Compl. ¶ 67.  As a preliminary matter, the

Complaint's use of "FTX Group" includes both debtor and non-debtor entities that are not parties

to this litigation.  *See id.* ¶¶ 5 n.4, 68.  Each of these entities has a valid, binding arbitration

clause in their agreement with Bybit.  A bankruptcy court cannot apply the Bankruptcy Code's

turnover powers to override a non-debtor's agreement to arbitrate, especially when those non-

debtors are not even parties to the litigation.[9]

Thus, the Court should dismiss the turnover claim as to the five Non-Debtor Accounts

and the Alameda account because these claims are subject to binding arbitration in Singapore.

### A.    Federal policy favors arbitration of this dispute.

The Federal Arbitration Act ("FAA") establishes a liberal "federal policy favoring

arbitration."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Section 2 of

the FAA is clear that arbitration agreements "shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The federal policy favoring arbitration "applies with special force in the field of

international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

614, 631 (1985)); *see also Mor–Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co., Ltd. (In re Mor–*

*Ben Ins. Mkts. Corp.)*, 73 B.R. 644, 649 (B.A.P. 9th Cir. 1987) ("Absent a congressional

mandate to preclude arbitration in the bankruptcy context, or a compelling situation seriously

affecting the rights of creditors in a bankruptcy, a valid clause in an international trade agreement

to arbitrate a dispute must be enforced.").  The promotion of American business, a concern for

---

[9] The sole remaining account at issue belongs to Debtor Alameda.  As discussed below, the
arbitration clause in Bybit's Terms and Conditions overrides any bankruptcy policy that might
favor proceeding in this forum.  Further, if the Court determines that the assets in the Non-
Debtor Accounts belong to Alameda (it should not, *see infra* at 20–24), the Court must compel
arbitration of the turnover claim under the Federal Arbitration Act because all parties necessary
to arbitrate—Alameda and Bybit—are before this Court.

international comity, recognition of the capacities of foreign courts, tribunals, adjudicators, and a sensitivity to the need for predictability in the resolution of disputes arising in international commerce all militate toward the enforcement of arbitration clauses in the international context. *See Mitsubishi*, 473 U.S. at 631; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."). Only international commerce is implicated here: Bybit and each account holder, including Alameda, is a foreign entity.

As a consequence of the strong federal policy in favor of arbitration, any doubts raised as to the application or scope of an arbitration agreement should be resolved in favor of arbitration. *See McMahon*, 482 U.S. at 227; *see also Mitsubishi*, 473 U.S. at 626 ("[T]he parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

**B.      Bybit's Terms and Conditions require arbitration of the turnover claim.**

The first inquiry in determining whether claims must be arbitrated is "whether the parties agreed to submit their claims to arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). The turnover claim is based on Bybit's alleged refusal to allow Alameda and five non-debtor, non-party entities to withdraw funds from their respective Bybit accounts. Each of these six entities, including the five non-debtor, non-party entities, agreed to arbitrate disputes concerning their use of the Bybit platform and withdrawals from the platform. Bybit's Terms and Conditions "govern the use of the electronic trading platform, including any website or mobile application . . . for accessing the platform, and any services provided through the platform. . .  provided by Bybit Fintech Limited." Ex. 1. Bybit's Terms and Conditions further dictate the process for customer withdrawals. *See id.* at Section 7.4 ("You may withdraw all or some of the Digital Assets under your name recorded on the Platform's ledger . . . . [L]arger

withdrawals may take up to thirty (30) days to complete and [] any withdrawal may be delayed as necessary to comply with Applicable Law . . . .").  And Bybit's Terms and Conditions provide that Bybit may, in its "sole discretion, limit, suspend or terminate, or issue a warning to you regarding, the Platform or the Account, including terminating the Account (or certain functionalities thereof such as . . . withdrawing Digital Assets)."  *Id*. at Section 23.2.

In alleging that Bybit has failed to "honor[] the FTX Group's withdrawal requests" and is "hold[ing] these assets hostage," Compl. ¶¶ 67, 73, Debtors are essentially alleging that Bybit has violated its Terms and Conditions with respect to five Non-Debtor Accounts and one Alameda account.  Put differently, Debtors' turnover claim is rooted in Debtors' theory that Bybit improperly failed to fulfill withdrawal requests from Alameda and five non-debtor, non-party entities in accordance with Bybit's Terms and Conditions.  But each one of these entities agreed with Bybit that "[a]ny dispute arising out of or in connection with these Terms or the Platform . . . shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre . . . ."  Ex. 1 at Section 26.2.  Accordingly, Debtors' turnover claim must be arbitrated in Singapore.

### C.   This Court lacks discretion to deny enforcement of the arbitration clause.

"Where an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, unless the party opposing arbitration can establish congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory rights at issue."  *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006).  Under *McMahon*, to overcome arbitration, Debtors must show that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of the arbitration clause here.  *See id*. at 229 (quoting *McMahon*, 482 U.S. at 227).  Further, the "core/non-core distinction [in bankruptcy claims] does not [] affect whether a bankruptcy court has the discretion to deny

enforcement of an arbitration agreement." *Mintze*, 434 F.3d at 229.  Put differently, the

*McMahon* standard "applies equally to core and non-core proceedings." *Id*. at 231.[10]  Debtors

cannot establish a congressional intent to preclude arbitration over their turnover claim.

The Third Circuit has definitively held that nothing in the text or the legislative history of

the Bankruptcy Code renders arbitration clauses unenforceable in a bankruptcy case.  *See Hays*

*& Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3d Cir. 1989)

(holding that there is "no provision[] in the text of the bankruptcy laws" and "no legislative

history" suggesting that arbitration clauses are unenforceable "to enforce a claim of the estate");

*see also In re Olympus Healthcare Grp., Inc.*, 352 B.R. 603, 612 (Bankr. D. Del. 2006)

(explaining that "the Bankruptcy Code and its legislative history does not evidence an indication

that Congress intended to preclude" arbitration over a turnover claim).  And here, five of the six

accounts are not even held by the estate, let alone parties to this action.  The relevant inquiry is

thus whether the purpose of the Bankruptcy Code conflicts with enforcement of the arbitration

clause here.  It does not.

In *Olympus Healthcare*, this Court addressed a nearly identical question—whether the

Bankruptcy Code conflicts with enforcement of an arbitration provision in the context of a

breach of contract claim disguised as a turnover claim.  *See Olympus Healthcare*, 352 B.R. at

611.  The *Olympus Healthcare* court held that there was no conflict that could prevent the Court

from compelling arbitration.  The Court reached its conclusion, at least in part, because the

"disputes are merely claims arising from the contract and the alleged breach thereof, and are not

---

[10] Even if the core/non-core distinction were relevant to the inquiry, Debtors' turnover claim is
not a core bankruptcy claim in substance.  *See In re Valley Media, Inc.*, 289 B.R. 27, 31 (Bankr.
D. Del. 2003) (focusing on "[s]ubstance over form of an asserted 'core' proceeding" and finding
that the "substance of the claim at issue in Plaintiff's turnover count is a pre-petition state law
contract claim [that] could arise under any context, not just in bankruptcy").

properly addressed in the form of a 'turnover' action." *Id.* The same is true here—Debtors' turnover claim is essentially a claim that Bybit breached its Terms and Conditions. *See also In re Rotondo Weirich Enterprises, Inc.*, 583 B.R. 860, 871–72 (E.D. Pa. 2018) (compelling arbitration and rejecting debtor's attempt to "depict its claims as turnover claims" where claims were "not bona fide § 542 turnover claims" and were instead "disputed contract claims").

## IV.   DEBTORS FAIL TO PLEAD ANY ACTIONABLE CLAIM AGAINST BYBIT.

### A.   Motion to dismiss standard.

A complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While the Court must accept well-pleaded factual allegations as true, it should not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Accordingly, only well-plead facts are considered in ruling on a motion to dismiss, and conclusory statements may be disregarded." *In re NSC Wholesale Holdings LLC*, 637 B.R. 71, 80 (Bankr. D. Del. 2022).

### B.   The turnover claim must be dismissed.

"A properly pleaded complaint asserting a claim for turnover [under Section 542] must allege an undisputed right to recover the claimed debt." *In re Conex Holdings, LLC*, 518 B.R. 792, 801 (Bankr. D. Del. 2014) (dismissing turnover claim where plaintiff failed to allege undisputed right to property). "Turnover is not appropriate where there is a legitimate dispute over ownership of the property." *Id.* A bona fide dispute exists "when there is a genuine issue

of material fact that bears upon the . . . liability, or a meritorious contention as to the application

of law to undisputed facts." *In re Lexington Healthcare Grp., Inc.*, 363 B.R. 713, 716 (Bankr. D.

Del. 2007) (ellipses in original) (quoting *B.D.W. Assocs. Inc. v. Busy Beaver Bldg. Centers, Inc.*,

865 F.2d 65, 66 (3d Cir. 1989)).  In determining whether there is a bona fide dispute, "the

bankruptcy court must determine whether there is an objective basis for either a factual or a legal

dispute as to the validity of the debt." *Id.* (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir.

1987).  Here, there is a legitimate dispute over the ownership of the assets in the Bybit accounts,

thereby warranting dismissal of Debtors' turnover claim.

      The Complaint identifies six Bybit accounts that are the subject of the turnover claim.

Debtors concede that five of the six accounts are "registered in the name of entities other than

Alameda."  Compl. ¶ 69.  Debtors are therefore not entitled to turnover of the funds in the Non-

Debtor Accounts as a matter of law because: (i) Bybit disputes ownership of the assets in these

accounts; and (ii) Debtors' own allegations show that the Non-Debtor Accounts are not the

undisputed property of Alameda.  *See Lexington Healthcare*, 363 B.R. at 717 (granting motion to

dismiss turnover claim because there was a bona fide dispute over whether asset at issue—

security deposit—was property of the estate); *In re Amdura Corp.*, 167 B.R. 640, 644 (D. Co.

1994) ("Funds deposited into a bank account are presumed to belong to the entity in whose name

the account is established.").

      Debtors attempt to plead around the deficiencies in their claim by alleging that the five

Non-Debtor Accounts were: (i) funded, controlled, and used "solely for the benefit of, the

Debtors and their subsidiaries"; (ii) held by companies formed at the direction of FTX

employees; and (iii) affiliated with Alameda email accounts, and that debtors can log into these

accounts.  *See* Compl. ¶ 69.  But these allegations, all of which presumably derive from

information in Debtors' possession, demonstrate that there *may* be a legitimate claim by the Debtors that they own these accounts held in their affiliates' names, because those assets could also be the property of: (i) Alameda; (ii) the five non-Alameda entities whose names are on the accounts; (iii) unnamed subsidiaries of Alameda that allegedly funded the accounts; or (iv) certain FTX employees who allegedly formed the non-Alameda entities.[11]  Definitionally, the lack of clarity regarding who owns the assets in the Non-Debtor Accounts defeats a turnover claim.  *See Lexington Healthcare*, 363 B.R. at 716–17.

*Lexington Healthcare* is instructive.  There, a bankruptcy trustee filed a complaint seeking the turnover of a security deposit that the debtor's predecessor had paid to the defendants upon signing a lease.  *See Lexington Healthcare*, 363 B.R. at 715.  The defendants moved to dismiss the turnover claim on the grounds that there was a bona fide dispute over whether the security deposit was property of the estate.  *See id*.  The defendants argued that the debtor's predecessor intended the security deposit to be rent under the lease.  *See id*.  The trustee argued in response that disputed evidentiary matters could not satisfy the standard for dismissal on the pleadings.  *See id*. at 716.  The court disagreed, holding that "because title to the security deposit is in dispute, the Trustee cannot even seek a turnover of those funds."  *Id*.  The court further reasoned that the lease document itself "is not so plain and unambiguous as to provide a clear, objective basis for concluding that the security deposit is property of the estate."  *Id*. at 717.  Debtors face the same fundamental problem—there is no "clear, objective basis" to conclude that the non-Alameda accounts belong to Alameda.  Indeed, Debtors fare worse than the trustee in *Lexington Healthcare* because there, at least, there was no dispute that the trustee had a claim to

---

[11] As discussed below, Bybit also has a claim to the digital assets held on its platform, including the assets in the Alameda account.  *See infra* at 25 n.12.

the assets even though defendant disputed that claim.  Here, by contrast, Debtors' allegations demonstrate that "a dispute exists about whether the [Non-Debtor Accounts are] property of the estate," *id.* at 717—i.e., there is a predicate dispute about whether Alameda has a claim to the assets.

Putting aside that Bybit disputes that Debtors own the Non-Debtor Accounts, Debtors' ability to even assert a claim as to those assets rests on an effort to substantively consolidate the non-party, non-debtor foreign entities with Debtors.  Under the Third Circuit's test for substantive consolidation, Debtors have the burden to demonstrate that (i) pre-petition the Debtors and the non-party, non-debtor entities "disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity," or (ii) post-petition the Debtors and the non-party, non-debtor entities' "assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors."  *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  "[B]ecause substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies."  *Id*. Moreover, "due to the nature of substantive consolidation of debtor and non-debtor entities, notice must be provided," including to the non-debtor entities' creditors, such that there is "an opportunity to be heard."  *In re Concepts Am., Inc.*, 2018 WL 2085615, at *7 (Bankr. N.D. Ill. May 3, 2018); *see Raslavich v. Ira S. Davis Storage Co.*, 1993 WL 384501, at *4 (E.D. Pa. Sep. 22, 1993) ("The first difficulty which we have with the Trustee's request for substantive consolidation at this juncture is that such relief can be granted only after notice and an opportunity to be heard is provided to all creditors of both the [d]ebtor and [non-debtor].").

Debtors' allegations regarding their alleged ownership of the Non-Debtor Accounts are

insufficient for the Court to substantively consolidate these entities with Debtors.  Critically, the

Complaint is "devoid of any factual allegations that [i] any creditor relied on the debtors'

disregard of corporate formalities"; or (ii) the assets and liabilities of Alameda and the non-

debtor entities "are so scrambled that separating them is prohibitive and hurts all creditors."  *In*

*re Howland*, 674 F. App'x. 482, 489–90 (6th Cir. 2017) (affirming denial of motion for leave to

file amended complaint for substantive consolidation); *see also In re HH Liquidation, LLC*, 590

B.R. 211, 259–60 (Bankr. D. Del. 2018) (denying claim for substantive consolidation where

plaintiff "[did] not even attempt[] to meet [its] burden" and "failed to prove any actual or

reasonable creditor reliance" and where creditors would be "adversely affected").

      Finally, the five foreign entities owning the Non-Debtor Accounts are not even parties to

this litigation.  Debtors have thus failed to give these entities or their respective creditors notice

and an opportunity to be heard.  *See In re Mihranian*, 2017 WL 6003345, at *1 (B.A.P. 9th Cir.

Dec. 4, 2017) (affirming denial of motion for substantive consolidation where there was "no

evidence in the record showing that the creditors of the Non-Debtor Parties were served with

notice…[and it was] impossible to tell whether substantive consolidation would be equitable or

fair to the absent and unidentified creditors of the Non-Debtor Parties.").  Consolidating the

assets of foreign entities that are not even before this Court with the assets of the estate would be

inconsistent with the "heightened degree of due process and due consideration for the harm or

economic prejudice that such a remedy would occasion."  *In re Wheeler*, 444 B.R. 598, 609

(Bankr. D. Idaho 2011) (denying claim to substantively consolidate assets into bankruptcy

estate).  At bottom, Debtors provide no reason why the simplest approach to this issue is not the

right one:  the non-debtors should bring claims for the assets in their own name and in the right

forum.  If the non-debtors prevail, they can turn the assets over to Debtors.  The Court should dismiss Debtors' turnover claim as to the five Non-Debtor Accounts.[12]

### C.     The automatic stay claim must be dismissed.

Debtors allege Bybit violated the automatic stay (Count Seven) in two distinct ways: (i) Bybit allegedly did not allow Alameda and five non-debtors to withdraw funds from their respective Bybit accounts; i.e., the same Bybit accounts that are the subject of Debtors' turnover claim and include assets that are not property of the estate, *see* Compl. ¶ 74; and (ii) Bybit allegedly attempted to prevent the debtors from migrating BIT tokens to MNT tokens.  *See* Compl. ¶¶ 75–77.  Because neither theory involves "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), the claim must be dismissed.

### 1.     Debtors' disguised turnover action is not a cognizable stay violation.

Because the automatic stay applies only to "property of the estate," 11 U.S.C. § 362(a)(3), to the extent the automatic stay claim relates to property not in Debtor accounts, it fails.  *See supra* at 20–24.  "In this regard, formal distinctions between debtor-affiliated entities are maintained when applying the stay.  A proceeding against a non-bankrupt corporation is not automatically stayed by the bankruptcy of its principal . . . and, section 362 does not bar an action against the principal of a debtor-corporation."  *Mar. Elec. Co. v. United Jersey Bank*, 959

---

[12] Debtors also fail to allege that the sole Bybit account held in Alameda's name is property of the estate.  Debtors do not allege that Alameda owns the assets in the Bybit account.  Rather, Debtors allege only that those assets are "held in the name of [Debtor] Alameda."  Compl. ¶ 68.  This allegation, coupled with Bybit's Terms and Conditions, make clear that the Alameda account is not the undisputed property of the estate.  In particular, Bybit's Terms and Conditions provide: (i) Bybit has "full custody" of the assets and Bybit may turn over the assets to governmental authorities under certain circumstances, *see* Ex. 1 at Section 23.7; (ii) Bybit has the right to unilaterally "limit, suspend, or terminate" access to the Alameda account, *see id*. at Section 23; and (iii) the assets in the Alameda account are held in an "omnibus user account" that does not belong to Alameda.  *Id*. at Section 7.3.

F.2d 1194, 1205–06 (3d Cir. 1991) (citations omitted), *reh'g granted and opinion vacated* (Jan.

10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992).

Even if Debtors could show that the funds in all of the Bybit accounts are property of the

estate, Bybit's alleged refusal to allow the withdrawal of those funds cannot support a claim for

violation of the automatic stay.  As the Supreme Court has held, "merely retaining possession of

estate property does not violate the automatic stay."  *City of Chicago, Illinois v. Fulton*, 592 U.S.

154, 158 (2021).  Instead, the automatic stay "prohibits affirmative acts that would disturb the

status quo of estate property as of the time when the bankruptcy petition was filed."  *Id*.

In *Fulton*, the City of Chicago had impounded various debtors' vehicles.  *See id*. at 157.

The debtors each requested that the City of Chicago return their impounded vehicles.  *See id*.

The City of Chicago refused to do so, and in each case, a bankruptcy court held that the City's

refusal violated the automatic stay.  *See id*.  The Court of Appeals affirmed all judgments in a

consolidated opinion, holding that the retention of the debtors' vehicles constituted an act to

"exercise control over" debtors' property in violation of Section 362(a)(3).  *See id*.  The Supreme

Court reversed, holding that "mere retention of estate property after the filing of a bankruptcy

petition does not violate §362(a)(3) of the Bankruptcy Code."  *Id*. at 161–62.  Otherwise, the

Court explained: (i) turnover claims under Section 542 would largely be rendered superfluous;

and (ii) exceptions to Section 542's turnover command would contradict Section 362(a)(3)

because there are no similar exceptions under Section 362(a)(3).  *See id*. at 159–60.

*Fulton* is on all fours.  The Complaint shows that Bybit has done nothing more than

allegedly refuse to return certain assets.  *See* Compl. ¶ 74 ("By refusing to return the assets in the

Bybit Accounts to the Debtors, Bybit is depriving the Debtors of the value of their property and

has caused the Debtors to incur significant costs in seeking to secure those assets.").  Under

*Fulton*, Bybit's mere retention of assets in Bybit accounts is not a violation of the automatic stay. *See also In re Denby-Peterson*, 941 F.3d 115, 126 (3d Cir. 2019) ("Congress did not intend passive retention to qualify as 'an act to . . . exercise control over property of the estate.'").

> **2.      Debtors fail to plead that Bybit took any action related to the BitDAO allegations that violate the automatic stay.**

Debtors' second stay violation claim—that Bybit somehow attempted to prevent the Debtors from migrating BIT tokens to MNT tokens—fails as a matter of law because Debtors do not allege that Bybit took actions that interfered with the Debtors' alleged inability to convert BIT tokens to MNT tokens. *See In re Welded Constr., L.P.*, 609 B.R. 101, 127 (Bankr. D. Del. 2019) ("The Plaintiff 'must show that [Defendants] engaged in conduct which was an affirmative post-petition act manifesting either an exercise of control over property of the estate, or collecting, assessing or recovering such property in order to demonstrate a stay violation.'"). Debtors allege only that an unnamed Bybit executive supposedly "explained" to an unnamed person in "private[]" that BitDAO "was controlled by Bybit" in 2021.  Compl. ¶ 75.  This conclusory allegation falls well short of demonstrating that Bybit took actions "to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Does the allegation mean that Bybit had strong relationships with other community members?  Does it mean that Bybit could unilaterally take actions without input from other community members?  Debtors fail to provide any meaningful context for this allegation, rendering their claim against Bybit insufficient as a matter of law.  *See In re APF Co.*, 2001 WL 1820788, at *4 (D. Del. Aug. 31, 2001) (dismissing claim for violation of automatic stay where plaintiffs failed to allege an "affirmative post-petition act manifesting" exercise of control over property of the estate).

In any event, even assuming Bybit exercised some degree of control over the BitDAO community in 2021 (before the Debtors' Chapter 11 petitions), there are no allegations that Bybit

retained that control in 2023—i.e., the time when the BitDAO community vote occurred and the automatic stay applied.  Because there are no allegations regarding Bybit's role in the 2023 vote that allegedly prevented debtors from migrating BIT tokens to MNT tokens, the automatic stay claim fails.  In fact, Debtors concede that the 2023 vote was a "community" vote.  Compl. ¶ 77. Debtors do not include any allegations as to Bybit's voting power, nor could they given the anonymous nature of the BitDAO community.  *See* Compl. ¶ 77 n.20.  What is known, however, is that *nearly 100%* of the BitDAO community members voted in favor of the proposal.  *See supra* at 5.  Thus, any alleged connection between Bybit and the vote—a connection that is tangential at best—is insufficient to state a claim for violation of the automatic stay.

This Court's opinion in *In re Levitz Furniture Inc.*, 267 B.R. 516 (Bankr. D. Del. 2000), confirms as much.  In *Levitz*, the debtor-plaintiffs brought an adversary proceeding for violation of the automatic stay against minority shareholders of a company ("Seaman") that had executed an agreement (the "Seaman Agreement") with the debtor as part of its plan of reorganization. *See id*. at 519.  The debtor-plaintiffs alleged that the minority shareholders of Seaman violated the automatic stay when they brought a separate suit against Seaman's officers and directors for breach of fiduciary duty in connection with the Seaman Agreement.  *See id*.  This Court disagreed, holding that the minority shareholders' actions were too tangential to the estate's property to violate the automatic stay.  The court explained that the minority shareholders were simply "seeking to enforce their own rights vis a vis those with a fiduciary duty to them, all non-debtors."  *Id*. at 521.  "While the result of [the minority shareholders'] suit may indirectly affect the estate, it is not an action against property of the estate or to exercise control of property of the estate."  *Id*.

Here, as in *Levitz*, Bybit did not take any action against property of the estate. At most, based on Debtors' allegations, Bybit was part of a "community" that voted to restrict Debtors' conversion of BIT tokens to MNT tokens. *See* Compl. ¶ 77. Notably, Debtors do not even allege that Bybit participated in the vote. Instead, Debtors focus on actual voters' exercise of those rights. *See* Compl ¶ 77 n.20. And in any event, even if Bybit voted with the overwhelming majority of the community, such a vote is too far removed from exercising control of the estate property under *Levitz* to constitute a violation of the automatic stay. *Cf. In re Windstream Holdings, Inc.*, 634 F. Supp. 3d 99, 110 (S.D.N.Y. 2022) (holding that "influencing or manipulating a customer to opt for a competitor's service over a debtor's through advertisements, false or otherwise, is [not] an act of control over estate property" that violates the automatic stay).

### 3. Debtors fail to allege damages related to their BitDAO allegations.

Debtors' automatic stay claim against Bybit as to Debtors' BitDAO allegations also fails because Debtors do not plead any cognizable injury. Debtors allege only that their inability to migrate their BIT tokens to MNT tokens exposes them to "potential losses." Compl. ¶ 77. But "potential losses" are insufficient to support a claim for violation of the automatic stay. *See Alcantara*, 389 B.R. at 278 (dismissing claim for violation of the automatic stay where debtors "have not pled sufficient injury").

In *Alcantara*, the debtors brought an adversary proceeding against a mortgagee for violations of the automatic stay. The court held that the debtors both lacked standing and failed to state a claim for violation of the automatic stay where the debtors alleged that, "As a result of Defendants [sic] violations of the automatic stay, Plaintiffs have suffered damages and incurred attorneys' fees and costs." *Id*. at 276. The court reasoned that there were "no allegations regarding how the Plaintiffs 'suffered damages' or were injured by the violation of the automatic

- 29 -

stay by the Defendant."  *Id*.  Debtors' Complaint is even weaker than the complaint in *Alcantara* because Debtors allege only that there are "potential losses."  *See* Compl. ¶ 77.  And as in *Alcantara*, Debtors fail to allege how they suffered any harm.

> **D.    The count for disallowance of proofs of claims must be dismissed.**

Section 502(d) disallows the claim of a creditor that retains property that is subject to turnover under chapter 5 of the Bankruptcy Code unless the creditor returns the property to the estate.  *See In re 45 John Lofts, LLC*, 599 B.R. 730, 750 (Bankr. S.D.N.Y. 2019).  "[S]ection 502(d) is triggered only after a judgment has been entered requiring the turnover of property to the estate."  *In re DHP Holdings II Corp.*, 435 B.R. 264, 272 (Bankr. D. Del. 2010).  Here, Debtors do not identify in the Complaint any claim they seek to disallow.  Compl. ¶ 124.  And while Bybit is scheduled as holding a contingent, disputed, unliquidated claim, it has not filed any proof of claim in the chapter 11 cases.  Because "the Debtors have not obtained an order requiring the turnover of [assets], . . . section 502(d) is not available."  *DHP Holdings*, 435 B.R. at 272–73.

<u>**CONCLUSION**</u>

There is no reason for the case against Bybit to proceed in this Court.  Five of the six accounts at issue are held by foreign non-debtors with no connection to the United States or these chapter 11 cases.  The other threadbare connections to the United States are nowhere near sufficient to satisfy *in personam* jurisdiction.  And the bulk of the claims are subject to binding arbitration in Singapore.  For the reasons stated above, all claims against Bybit should be dismissed with prejudice.

Dated:  February 6, 2024

Respectfully Submitted,

*/s/ Karen C. Bifferato* _____

Karen C. Bifferato (DE No. 3279)
CONNOLLY GALLAGHER LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
Tel: (302) 888-6221
Email: kbifferato@connollygallagher.com

Peter Friedman
O'MELVENY & MYERS LLP
pfriedman@omm.com
Daniel S. Shamah
dshamah@omm.com
Caitlyn Holuta
choluta@omm.com
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

William K. Pao
O'MELVENY & MYERS LLP
wpao@omm.com
Jonathan B. Waxman
jwaxman@omm.com
Katie Farrell
kfarrell@omm.com
400 South Hope Street
18th Floor
Los Angeles, California  90071
Telephone:    +1 213 430 6000
Facsimile:    +1 213 430 6407

*Attorneys for Bybit Fintech Ltd.*

#05788145