## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| FTX TRADING LTD, *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| Debtors. | ) Jointly Administered |
| | ) |
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC, and ALAMEDA RESEARCH LTD., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Adv. No. 23-50759 (JTD) |
| MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## REPLY BRIEF IN FURTHER SUPPORT OF TIME RESEARCH LTD.'S MOTION TO DISMISS COMPLAINT

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
Paige N. Topper (DE Bar No. 6470)
**SAUL EWING LLP**
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com
paige.topper@saul.com

Steven C. Reingold (admitted *pro hac vice*)
**SAUL EWING LLP**
131 Dartmouth Street
Suite 501
Boston, MA 02116
Telephone: (617) 912-0940
Facsimile: (617) 723-4151
steven.reingold@saul.com

*Counsel to Time Research Ltd.*

Dated:  May 8, 2024

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

REPLY .............................................................................................................................. 4

    I.    THERE REMAINS NO BASIS FOR THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER TIME RESEARCH ................................ 4

        A.    The Plaintiffs Have Failed to Establish that Time Research Has the Requisite Contacts with the United States to Confer Personal Jurisdiction ............................................................................................ 4

        B.    Jurisdictional Discovery is Unnecessary and Inappropriate .................... 7

    II.    THE COURT SHOULD RULE THAT AVOIDANCE POWERS DO NOT EXTEND EXTRATERRITORIALLY ........................................................ 7

    III.    THE COURT MAY CONSIDER THE TERMS OF SERVICE, WHICH DEMONSTRATE THAT THE DIGITAL ASSETS TRANSFERRED WERE NOT PROPERTY OF THE ESTATE ..................................................... 10

        A.    The Terms of Service Can Be Considered in Connection with the Motion to Dismiss ................................................................................. 10

        B.    The Court Should Not be Distracted by the Plaintiffs' Efforts to Complicate a Straightforward Issue ...................................................... 11

    IV.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TIME RESEARCH FOR ACTUAL FRAUDULENT CONVEYANCE .................... 13

        A.    The Plaintiffs' Newly-Alleged Theory to Support Their Actual Fraudulent Conveyance Claim is Insufficient ........................................ 13

        B.    The Badges of Fraud Do Not Support an Inference of Fraudulent Intent ...................................................................................................... 14

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*,
    480 U.S. 102 (1987).........................................................................................................6

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exchange Inc.)*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006)...........................................................................9

*Daly v. Kennedy (In re Kennedy)*,
    279 B.R. 455 (Bankr. D. Conn. 2002) .........................................................................12

*Daubert v. NRA Grp., LLC*,
    861 F.3d 382 (3d Cir. 2017)...........................................................................................9

*Emerald Capital Advisors Corp. v. Bayerische Motoren Werke Aktiengesellschaft
    (In re FAH Liquidating Corp.)*,
    572 B.R. 117 (Bankr. D. Del. 2017) ...........................................................................8, 9

*Global Network Communications, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006).........................................................................................10

*King v. Export Dev. Canada (In re Zetta Jet USA, Inc.)*,
    624 B.R. 461 (Bankr. C.D. Cal. 2010)...........................................................................9

*Kirschner v. J.P. Morgan Chase Bank, N.A. (In re Millennium Lab Holdings II, LLC)*,
    Adv. No. 17-51840 (LSS), 2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ....................15

*Kitchen v. Boyd (In re Newpower)*,
    233 F.3d 922 (6th Cir. 2000) ................................................................................. 12-13

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)...........................................................................8, 9

*In re LTL Management, LLC*,
    645 B.R. 59 (Bankr. D.N.J. 2022) ...............................................................................11

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
    641 B.R. 467 (Bankr. D. Del. 2022) ...........................................................................8, 9

*Nat'l Community Reinvestment Coalition v. NovaStar Fin., Inc.*,
    631 F. Supp. 2d 1 (D.D.C. 2009)...................................................................................5

*Official Comm. of Unsecured Creditors of Fedders N. Am, Inc. v. Goldman Sachs
    Credit Partners LP (In re Fedders N. Am., Inc.)*,
    405 B.R. 527 (Bankr. D. Del. 2009) ...........................................................................15

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,*
917 F.3d 85 (2d Cir. 2019)...........................................................................................9

*Rush v. Savchuk,*
444 U.S. 320 (1980)........................................................................................................5

*Sands v. McCormick,*
502 F.3d 263 (3d Cir. 2007).......................................................................................11

*Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.,*
376 F. Supp. 2d 571 (D. Del. 2005)............................................................................4

*SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.),*
Adv. No. 10-51389 (BLS), 2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) .......14

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
654 B.R. 59 (Bankr. S.D.N.Y. 2023)........................................................................10

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Securities, LLC,*
513 B.R. 222 (S.D.N.Y. 2014) (rev'd on other grounds) ...........................................9

*In re Sheehan,*
48 F.4th 513 (7th Cir. 2022) .......................................................................................6

*Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Investments Overseas Ltd., Inc.),*
Case No. 6:10-ap-158-KSJ, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016)............9

*Societe Generale plc v. Maxwell Commc'n Corp. plc (In re Maxwell Commc'n Corp. plc),*
186 B.R. 807 (S.D.N.Y. 1995)....................................................................................8

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.),*
562 B.R. 601 (Bankr. S.D.N.Y. 2017)......................................................................8, 9

*Weisfelner v. Blavatnik (In re Lyondell Chem Co.),*
543 B.R. 127 (Bankr. S.D.N.Y. 2016)........................................................................8

**Federal Statutes**

11 U.S.C. § 547...........................................................................................................3

11 U.S.C. § 548...........................................................................................................3

11 U.S.C. § 548(a)(1)(A) ...............................................................................2, 13, 14

**State Statutes**

6 Del. C. § 1304(a)(1) ..................................................................................2, 13, 14

52112094.6

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................................14

Defendant Time Research Ltd. ("**Time Research**") submits this reply in further support of its motion to dismiss (the "**Motion to Dismiss**")[2] the Complaint filed by FTX.com, FTX US and Alameda (together, the "**Plaintiffs**"), and in response to the *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint* (the "**Opposition**"). In support of this reply, Time Research respectfully states as follows:

## PRELIMINARY STATEMENT

To divert the Court's focus from the Complaint's weak allegations against Time Research, the Plaintiffs in their Opposition attempt to lump Time Research with the other defendants and blur the alleged facts applicable to each defendant. The Complaint, however, asserts claims against four different groups: Mirana, Bybit, Time Research and certain individuals. Each are separate entities, and the facts surrounding the various claims, and the defendants' available defenses, are unique. The Court must view the Complaint and the Opposition with this in mind and, when evaluating whether the Plaintiffs have sufficiently stated a claim against Time Research, ***must consider only the facts alleged against Time Research.***

There is no doubt that the Plaintiffs' attempt to lump the allegations against all defendants together is an intentional effort to downplay the shortcomings in the Plaintiffs' allegations, particularly with respect to Time Research. This tactic is on clear display in the Opposition. On numerous occasions, the Plaintiffs improperly use the term "Defendants" broadly in an ill-conceived effort to conflate the allegations against the different defendant groups. One need only look to the Preliminary Statement to find several examples of this (but to be clear, the Opposition is littered with such improper uses):

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

- "The Defendants" took steps to shut down Plaintiffs' ability to withdraw assets from their accounts at Defendant Bybit's exchange."  Opposition at 1.

- "Defendants continue to affirmatively prevent Plaintiffs from retrieving estate property[.]" *Id.*

- "Defendants also argue that neither Mirana nor Bybit violated the automatic stay…" *Id.* at 5.

None of these allegations in fact apply to Time Research, and the Court should not be distracted by this blatant attempt to blur the alleged facts.  Simply put, the Plaintiffs' claims against Time Research must rise or fall on their own, without regard to what the Plaintiffs allege that Bybit, Mirana or the individual defendants did or did not do.

In this regard, Time Research was and remains a throw-in in this adversary proceeding, with Bybit and Mirana the true target of the Plaintiffs' alleged claims.  When separated from the Plaintiffs' claims against the other Defendants, and disregarding the insinuations about Time Research's relationship with Mirana (which are ultimately inconsequential), the shortcomings in the claims against Time Research are readily apparent.   Nothing in the Complaint or in the Opposition (or its supporting declarations) establishes a basis for this Court's exercise of personal jurisdiction over Time Research, and the Complaint should be dismissed as to Time Research on this ground alone.

Similarly, the Complaint fails to state a claim against Time Research for actual fraudulent conveyance under Bankruptcy Code section 548(a)(1)(A) and Delaware Code section 1304(a)(1). Time Research had a typical relationship with FTX.com and requested withdrawals like any other customer.   The fact that the FTX Insiders were engaged in a global scheme of fraud and misappropriation at the time of the Transfers does not mean that the ***transfers made to Time Research*** were made with the intent to delay or defraud other creditors, or that such transfers were somehow fraudulent.  Using the Plaintiffs' reasoning, ***every*** transfer occurring during the relevant

time period would be fraudulent since such transfers would have occurred in the context of this "larger scheme." This is nonsensical and contrary to applicable law.

The Plaintiffs' efforts to muddy the waters on facts that are otherwise clear extend to their arguments regarding the Terms of Service, which expressly provide that digital assets remained customer property at all times. Based on the Plaintiffs' repeated efforts to dodge a Court ruling concerning the clarity and applicability of these terms, both in this and other adversary proceedings in these chapter 11 cases, it is clear that the Plaintiffs are loath to have the Court address this issue. Such reluctance is further evidenced by the Plaintiffs' intentional exclusion of the Terms of Service from the Complaint. The Terms of Service, however, are integral to the claims against Time Research, and the Plaintiffs' scant arguments to the contrary show that there is little disagreement on this point.

The Plaintiffs should not be permitted to initiate litigation seeking to recover tens of millions of dollars from customers already harmed by their pre-bankruptcy conduct and, at the same time, punt on case-dispositive issues that could circumvent the need for such parties to incur further costs. Not only is it appropriate for the Court to consider the Terms of Service in the context of the Motion to Dismiss but, for the reasons set forth below, Time Research believes it is appropriate for the Court to find that the Debtors did not have a property interest in the assets so as to state a claim under sections 547 or 548 of the Bankruptcy Code.

For the foregoing reasons, and focusing solely on the allegations and factual circumstances concerning Time Research, the Court cannot exercise personal jurisdiction over Time Research and the Complaint fails to state a claim against Time Research. None of the arguments in the Opposition change these results. As such, the Motion to Dismiss should be granted.

## REPLY

I.    **THERE REMAINS NO BASIS FOR THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER TIME RESEARCH**

### A.    The Plaintiffs Have Failed to Establish that Time Research Has the Requisite Contacts with the United States to Confer Personal Jurisdiction

The Plaintiffs have not satisfied their burden of proof that Time Research has sufficient contacts with the United States to confer personal jurisdiction.  The Plaintiffs acknowledge that once a defendant raises a jurisdictional defense, the "[p]laintiff 'must sustain [its] burden of proof . . . through sworn affidavits or other competent evidence.' *Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 573 (D. Del. 2005)."  Opposition Br. at 9.  Yet, they have offered no such evidence as to Time Research.  *See* McGuire Decl. (Adv. D.I. 63) (attorney declaration attaching purported evidence of other defendants' U.S. contacts); Marshall Decl. (Adv. D.I. 64) (financial advisor declaration attaching transfer records of other Defendants' FTX.com accounts).  On the contrary, the only evidence of record concerning Time Research's limited connections to the United States ***is that provided by Time Research***, which demonstrates that Time Research's connections were *de minimis* at best*.  See* Opposition Br. at 17; *see also* Opening Br. at 3-5 (Adv. D.I. 32); Haizhou Declaration, at ¶¶ 5-13 (Adv. D.I. 33).

Time Research's contacts with the United States—to which the Opposition devotes only three sentences—are irrelevant for specific personal jurisdiction purposes[3] because (i) Time Research's single U.S.-based non-management employee directed activities to a non-U.S. entity, (ii) Time Research had no reasonable expectation of being hauled into court in the United States, and (iii) the Plaintiffs' claims do not arise out of Time Research's employment of its former U.S.-based employee, its account with Circle, or its two U.S. bank accounts.

---

[3]    The Plaintiffs do not address general personal jurisdiction in the Opposition.  Thus, there appears to be no dispute that general jurisdiction does not exist here.

4

Not only do the Plaintiffs reiterate in the Opposition the same facts provided by Time Research regarding its limited connections to the United States, but they attempt to bolster such facts by repeating—without supporting evidence—contentions similar to those raised in the Complaint about Time Research and Mirana sharing a registered agent address[4] and a similar address appearing on Time Research's and Mirana's account opening forms. The Plaintiffs not fail to offer evidence for these contentions but, even if the contentions were true (which Time Research does not concede), they are of no consequence. The Plaintiffs bear the burden of establishing personal jurisdiction as to *each* defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) (rejecting aggregation of co-defendants' forum contacts because "the requirements of *International Shoe* must be met as to each defendant over whom a . . . court exercises jurisdiction"); *Nat'l Community Reinvestment Coalition v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 3 (D.D.C. 2009) ("The plaintiff may not aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant."). As such, the Plaintiffs' insinuations that Mirana's contacts with the United States could somehow be imputed to Time Research are devoid of any legal basis and should be rejected.

The Plaintiffs' conclusory claim that "the Court's exercise of jurisdiction over Defendants—some of whose directors or employees reside in the United States—would not make it 'so gravely inconvenient that [Defendants] [are] at a severe disadvantage in comparison to [Plaintiffs]'" ignores the facts of this proceeding. Opposition Br. at 19. Time Research is a Seychelles entity headquartered in Singapore. *See* Haizhou Declaration, at ¶¶ 5, 7 (Adv. D.I. 33).

---

[4] Time Research is baffled by the Plaintiffs' repeated references to the allegation that Mirana and Time Research share a registered agent in the Seychelles and the insinuation that this connection somehow matters. Even if true, a shared registered agent address in the Seychelles is no different than a shared registered agent address in Delaware. As the Plaintiffs do or should know, the minimum contacts to the United States of one entity are not imputed to another just because they have the same (overseas) registered agent.

5

Its management, its records, and any individuals who would be called as witnesses in this matter are located in Singapore or elsewhere outside the United States.  As a company that does not conduct business in the United States and otherwise maintained *de minimis* connections to the United States, it is an ***immense*** hardship for Time Research to be hauled into court in Delaware given, among other things, the substantial distance, the language barrier, and the lack of familiarity with the Bankruptcy Code and the court system.  *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987) (finding burden on defendant severe where defendant would have "to traverse the distance between Asahi's headquarters in Japan and the Superior Court of California" and defend itself in foreign legal system).

The Plaintiffs' purported interest in litigating in the United States likewise does not support an exercise of personal jurisdiction over Time Research.  In particular, they claim that the "substantial core of the activities at issue in this complaint indisputably involve actions taken in the U.S., or directed toward the assets of the Debtors in these Chapter 11 cases."  Opposition Br. at 20.  This contention (in addition to being factually incorrect) wrongly implies that action taken in the United States is sufficient to confer personal jurisdiction.  A proper exercise of personal jurisdiction requires more—a defendant must "have purposefully directed [its] activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum."  *In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022).  Time Research has done neither—its actions were entirely directed at a foreign corporation, and it never took any action directed toward estate assets.  The Plaintiffs' preference for avoiding potentially duplicative litigation should not be afforded any weight since, given the weakness of the claims against it, Time Research doubts that the Plaintiffs would even pursue those claims if they were required to assert such claims in an action separate from one involving the other Defendants, and in the proper foreign jurisdiction.

6

As the Plaintiffs have failed to establish a *prima facie* case for personal jurisdiction, this adversary proceeding must be dismissed as to Time Research.

### B.    Jurisdictional Discovery is Unnecessary and Inappropriate

The Plaintiffs argue that even if the Court were to find that they have not met their burden in making a *prima facie* showing of personal jurisdiction, the Court should permit them to conduct jurisdictional discovery.  *See* Opposition Br. at 21.  There is no basis to permit jurisdictional discovery against Time Research.

The Plaintiffs properly state that, in determining whether jurisdictional discovery is warranted, factual disputes are to be resolved in the Plaintiffs' favor.  *See* Opposition Br. at 22. Yet, the record of Time Research's contacts with the United States (and thus, the entire purported basis for personal jurisdiction) is ***undisputed***.  There is nothing in the Plaintiffs' declarations that contravenes the facts that Time Research disclosed in connection with the Motion to Dismiss.

The Plaintiffs' suggestion that discovery is appropriate because of discrepancies among the Defendants' declarations is baseless.  In fact, no explanation is provided for the supposed "factual discrepancies" that exist as to Time Research.  Time Research should not be forced to incur further costs in connection with this matter when, as a result of the information it has provided (and which has not been disputed), the record is unambiguous that Time Research has not purposefully availed itself of this forum and lacks the minimum contacts sufficient to warrant this Court's exercise of personal jurisdiction over it.  The Plaintiffs' request for jurisdictional discovery should therefore be denied.

## II.    THE COURT SHOULD RULE THAT AVOIDANCE POWERS DO NOT EXTEND EXTRATERRITORIALLY

On the question of whether the presumption against extraterritoriality bars the Plaintiffs' avoidance claims, Time Research will not rehash the detailed analysis included in the

52112094.6

Memorandum of Law in support of its Motion to Dismiss (the "**Opening Brief**"); however, the Plaintiffs' contention that "*every* case in this Circuit" has "uniformly rejected Defendants' arguments" is simply hyperbole.  *See* Opposition Br. at 31.

By "every case in this Circuit," the Plaintiffs are referring to two decisions.  The first, *FAH Liquidating*, was directly addressed and distinguished in the Opening Brief.  As explained, that case contained limited reasoning as to why the Court followed the minority view in holding that section 548 could be applied extraterritorially; the Court simply indicated that it found *Lyondell* more persuasive.[5]  *See Emerald Capital Advisors Corp. v. Bayerische Motoren Werke Aktiengesellschaft (In re FAH Liquidating Corp.)*, 572 B.R. 117, 123 (Bankr. D. Del. 2017); *Weisfelner v. Blavatnik (In re Lyondell Chem Co.)*, 543 B.R. 127, 154 (Bankr. S.D.N.Y. 2016).

The reasoning employed in the *FAH Liquidating* and *Lyondell* decisions–that the property at issue would have been property of the estate but for the fraudulent conveyance–is even less compelling in the present case since, per the Terms of Service, the digital assets subject to the Transfers remained customer property and thus would ***not*** have been property of the Debtors' estates even if the Transfers had not occurred.

The second decision, *Maxus*, cannot fairly be construed as "uniformly rejecting" Time Research's arguments.  There, while the Court ultimately found that section 548 could be applied extraterritorially to recover an allegedly fraudulent transfer, the Court did not engage in any analysis of the question whether Congress intended to extend the statute's coverage to such

---

[5]     As noted in the Opening Brief, following *Lyondell*, other decisions of the United States Bankruptcy Court for the Southern District of New York came to opposite conclusions.  *See LaMonica v. CEVA Group PLC (In re CIL Ltd.)*, 582 B.R. 46, 91-92 (Bankr. S.D.N.Y. 2018)  (analyzing, but declining to follow ruling of, *Lyondell*); *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017) (considering *Lyondell* but agreeing with reasoning of *Madoff* and *Maxwell* that avoidance provisions of section 547(b) do not apply extraterritorially); *see also Societe Generale plc v. Maxwell Commc'n Corp. plc (In re Maxwell Commc'n Corp. plc)*, 186 B.R. 807, 820 (S.D.N.Y. 1995) (explaining that because preferential transfers do not become property of estate until recovered, section 541 does not demonstrate Congressional intent for section 547 to govern extraterritorial transfers).  Thus, *Lyondell* is within the minority in its own district.

extraterritorial conduct, which is a key part of the analysis. *See Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 561-62 (Bankr. D. Del. 2022); *FAH Liquidating*, 572 B.R. at 123 (describing two-step analysis for extraterritorial jurisdiction); *see also In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 95 (2d Cir. 2019) (same). Rather, the Court's finding that section 548 could be applied extraterritorially was based solely on the fact that the "relevant conduct occurred in the United States" because the transfers at issue were initiated by Maxus, which was a ***domestic*** entity—a fact unlike the present case, where both FTX.com and Time Research are foreign entities. *See Maxus*, 641 B.R. at 561-62.

This Court is not bound by the *FAH Liquidating* or *Maxus* decisions. *See Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (citing *Camreta v. Greene*, 563 U.S. 692, 709, n.17 (2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case."). As such, for the reasons set forth above and in the Opening Brief, the Court should join the majority of courts considering this issue in holding that the Bankruptcy Code's avoidance provisions may not be applied extraterritorially. *See Sherwood Investments Overseas Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Investments Overseas Ltd., Inc.)*, Case No. 6:10-ap-158-KSJ, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016) (declining to apply section 548 extraterritorially); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 513 B.R. 222, 231 (S.D.N.Y. 2014) (same) (rev'd on other grounds); *King v. Export Dev. Canada (In re Zetta Jet USA, Inc.)*, 624 B.R. 461, 479 (Bankr. C.D. Cal. 2010) (same); *CIL Ltd.*, 582 B.R. at 92 (same); *Ampal-Am. Israel Corp.*, 562 B.R. at 612 (same); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exchange Inc.)*, 347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006) (same).

## III.   THE COURT MAY CONSIDER THE TERMS OF SERVICE, WHICH DEMONSTRATE THAT THE DIGITAL ASSETS TRANSFERRED WERE NOT PROPERTY OF THE ESTATE

The Plaintiffs' actual fraudulent transfer claims and preference claims fail to state a claim for relief against Time Research because the Plaintiffs have not plead sufficiently that FTX.com maintained an enforceable interest in the transferred property.  The Plaintiffs' contentions in the Opposition do not change this.

### A.    The Terms of Service Can Be Considered in Connection with the Motion to Dismiss

There can be no serious dispute that the Terms of Service are integral to the resolution of the claims at issue in the Complaint, as reflected by the Plaintiffs' limited pushback on this contention in the Opposition.  The fact that the Complaint "does not even *reference* any 'terms of service'"[6] is of no consequence and is being used to try to dodge the case-dispositive question of whether, per the Terms of the Service, the Debtors had a property interest in the transferred assets. The Plaintiffs should not be rewarded for deliberately failing to plead the existence of a document that forms the basis of their claims against Time Research.  *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 157 (2d Cir. 2006) (explaining that in "most instances" where extrinsic evidence may be considered in respect of motion to dismiss, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason–usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claims–was not attached to the complaint").

Moreover, a document is "integral to" a complaint "when the plaintiff has 'actual notice' of the extraneous information and relied on it in framing the complaint."  *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 B.R. 59, 66 (Bankr. S.D.N.Y. 2023) (internal

---

[6]       *See* Opposition Br. at p. 26 (emphasis in original).

10

citations omitted).  Here, there can be no dispute that FTX.com, as a party to the Terms of Service, had actual notice of the document and relied on its terms in drafting the Complaint.

This Court may also consider the Terms of Service in deciding the Motion to Dismiss because the Plaintiffs filed them in the main bankruptcy case and identified them as the form user agreement for FTX.com customers.  *See Declaration of Edgar W. Mosely II in Support of Debtors' Objection to the Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd.* [D.I. 337].  A court may take judicial notice of documents filed in the underlying bankruptcy case.  *See, e.g.*, *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (finding district court properly took judicial notice of documents appearing on court's docket in ruling on motion to dismiss); *In re LTL Mgmt., LLC*, 645 B.R. 59, 64 (Bankr. D.N.J. 2022) (taking judicial notice of "prior rulings and documents filed in the underlying bankruptcy case . . . and the related adversary proceedings, including sworn statements and exhibits attached thereto, and prior testimony").  Thus, the Court can and should take judicial notice of and consider the Terms of Service.

**B.**    **The Court Should Not be Distracted by the Plaintiffs' Efforts to Complicate a Straightforward Issue**

The Opposition argues that even if the Court may consider the Terms of Service in connection with the Motion to Dismiss, they cannot serve as a basis to dismiss the claims against Time Research because "factual questions" exist with respect to such terms.  *See* Opposition Br. at 27.  There is no question that in so contending, the Plaintiffs are trying to manufacture a controversy about the terms in an effort to prevent Time Research from prevailing on its Motion to Dismiss.  The Court should see this effort for what it is.  Indeed, notwithstanding the Plaintiffs' efforts to muddy the waters, ***there is no ambiguity when it comes to the relevant provisions of the Terms of Service***.  Time Research is not asking the Court to accept a disputed interpretation of the Terms of Service because, other than this manufactured controversy, no such dispute exists.

11

The so-called "factual questions" that the Plaintiffs identify do not alter the clarity of the Terms of Service as they pertain to the Transfers to Time Research.  For example, the Plaintiffs question "whether and to what extent either document was operative with respect to each of Defendants' many FTX Exchange accounts."  Opposition Br. at 27.  This question is easily answered with respect to Time Research, which maintained only *one* FTX.com account and which has provided evidence confirming that its account, which was opened in May 2022, was subject to the Terms of Service.  *See* Haizhou Declaration, at ¶ 14.  The Plaintiffs also argue that the Terms of Service provide customers with title only to "digital assets," not to fiat currency.  *See* Opposition Br. at 27. This distinction is of no consequence for Time Research, however, because, as reflected in Exhibit C-2 to the Complaint, the Transfers consisted only of digital assets.

Recognizing the weaknesses in their position, the Plaintiffs point to the alleged "complete failure of corporate controls" that characterized FTX's downfall and the fraudulent conduct undertaken by the FTX Insiders, including their widespread misappropriation of customer funds. *See* Opposition Br. at 29.  The Plaintiffs argue that as a result of this widespread fraud, the assets returned to Time Research by virtue of the Transfers were not Time Research's property due to such commingling and misappropriation.

To permit the Plaintiffs to rely on this contention as a basis for disputing the clear provisions of the Terms of Service would be to permit them to treat stolen property as their own, and to otherwise benefit from their own wrongdoing, an outcome inconsistent with relevant case law.  *See, e.g.*, *Daly v. Kennedy (In re Kennedy)*, 279 B.R. 455, 460 (Bankr. D. Conn. 2002) (holding that trustee could not avoid, as fraudulent transfers, payments made from funds in trust account because invasion of trust was "act of fraud," thieves cannot acquire good title to stolen property, and, as such, transfers did not consist of property of the estate); *see also Kitchen v. Boyd*

*(In re Newpower)*, 233 F.3d 922, 929-31 (6th Cir. 2000) (explaining that "[t]here is no basis for a constructive trust as to the stolen property in the hands of the thief because of his lack of property interest").

For these reasons, the Court should conclude that based upon the clear language of the Terms of Service, the assets subject to the Transfers were not estate property and, as such, the Complaint must be dismissed in its entirety as against Time Research.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TIME RESEARCH FOR ACTUAL FRAUDULENT CONVEYANCE

### A. The Plaintiffs' Newly-Alleged Theory to Support Their Actual Fraudulent Conveyance Claim is Insufficient

The Complaint fails to state a claim for relief under Bankruptcy Code section 548(a)(1)(A) and section 1304(a)(1) of the Delaware Code, notwithstanding the new arguments made in the Opposition to try to do so. Indeed, recognizing the Complaint's deficiencies in these counts against Time Research, the Plaintiffs have formulated a new argument–not reflected in the Complaint– which is that the global fraud perpetrated by Sam Bankman-Fried and his associates, ***by itself***, is sufficient to show actual fraudulent intent with respect to the Transfers to Time Research. Specifically, the Plaintiffs argue that Time Research was "part and parcel" of this fraudulent scheme because the Transfers were "executed with the intent to further and prolong that scheme" and "maintain the public perception of legitimacy and solvency." Opposition Br. at 34, 48.

Setting aside that this new theory was not included in the Complaint, it is difficult to envision how Time Research could be treated differently from FTX.com's other customers that withdrew funds in the lead up to the Petition Date given that those transactions would have likewise been undertaken at the time of FTX's "larger fraudulent scheme." *See id.* at 35, 39. Under this

13

theory, *any* of the transfers made to *any* customers during that time could be characterized as an effort to prolong FTX's business and preserve its reputation.

Even if the bar for alleging actual fraudulent intent under Federal Rule 9(b) could be this low, there is no basis under these alleged facts to single out the Transfers made to Time Research as having been made by the Plaintiffs with a particular intent to hinder, delay, or defraud other creditors. As such, these allegations are insufficient to state a claim against Time Research under section 548(a)(1)(A) of the Code and Delaware Code section 1304(a)(1).

### B.   The Badges of Fraud Do Not Support an Inference of Fraudulent Intent

The Plaintiffs' focus on what happened at FTX writ large is not surprising considering that the badges of fraud typically considered in evaluating actual fraudulent intent are not alleged in the Complaint against Time Research. "Badges of fraud are circumstances so commonly associated 'with fraudulent transfers that their presence gives rise to an inference of fraudulent intent.'" *SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*, Adv. No. 10-51389 (BLS), 2016 WL 1165634, at *4 (Bankr. D. Del. Feb. 8, 2016). Here, the badges permit no such inference.

The Opposition confirms that there are only three potentially applicable badges of fraud here, and focuses in particular on an alleged closeness of relationship between Mirana, Time Research and, by extension, FTX.com. On these points, the Opposition repeats the same contentions as the Complaint—that by virtue of its relationship with Mirana, Time Research was treated as a "VIP" such that FTX.com prioritized its withdrawal requests over others. *See* Opposition at 6, 36-37.

The Opposition is careful in its wording about Time Research's alleged VIP status, referring to Time Research as a "crypto industry VIP" and indicating that Time Research leveraged

VIP connections, without addressing the heart of the matter, which is that the Complaint fails to allege that (i) Time Research actually maintained such VIP status, (ii) Time Research even knew of any alleged VIP status, and (iii) as a result of such status, Time Research exerted some improper level of control over the Debtors.  It is telling that in discussing this alleged VIP treatment, the Plaintiffs provide only one example, of *Mirana's* VIP status.  *See id.* at 39.

Time Research is, once again, a "throw in" for these actual fraudulent conveyance counts in an effort to avoid scrutiny of the actual allegations against Time Research.  The Court must look at the claims against each Defendant separately.  In doing so, it is clear that, without the insinuations about its relationship with Mirana, there is no close relationship between FTX.com and Time Research so as to have this badge weigh in favor of an inference of fraudulent intent.[7]

---

[7]    The Plaintiffs also identify the badges of fraud relating to insolvency and the incurrence of substantial debts around the time of the Transfers as suggesting an intent to hinder, delay or defraud creditors.  *See* Opposition Br. at 39-40.   While the Plaintiffs suggest that these badges weigh in favor of inferring of actual fraud, the Court should not be so deferential, and case law requires more than conclusory statements.  *See Kirschner v. J.P. Morgan Chase Bank, N.A. (In re Millennium Lab Holdings II, LLC)*, Adv. No. 17-51840 (LSS), 2019 WL 1005657, at *2 (Bankr. D. Del. Feb. 28, 2019) ("It is not sufficient to plead '[t]hreadbare recitals of the elements of a cause of action . . . supported by mere conclusory statements[.]" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Official Comm. of Unsecured Creditors of Fedders N. Am, Inc. v. Goldman Sachs Credit Partners LP (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 546 (Bankr. D. Del. 2009) (dismissing claims for actual fraudulent conveyance under section 548(a)(1)(A) where plaintiff plead only single badge of fraud of insolvency at time of transfers).

## CONCLUSION

For the foregoing reasons, Time Research respectfully requests that the Court dismiss the

Complaint against Time Research, with prejudice.

Dated: May 8, 2024                            **SAUL EWING LLP**

             By:*/s/ Monique B. DiSabatino*
              Mark Minuti (DE Bar No. 2659)
              Monique B. DiSabatino (DE Bar No. 6027)
              Paige N. Topper (DE Bar No. 6470)
              1201 North Market Street, Suite 2300
              P.O. Box 1266
              Wilmington, DE 19899
              Telephone: (302) 421-6800
              Facsimile: (302) 421-6813
              mark.minuti@saul.com
              monique.disabatino@saul.com
              paige.topper@saul.com

                -and-

              Steven C. Reingold
              131 Dartmouth Street, Suite 501
              Boston, MA 02116
              Telephone: (617) 912-0940
              Facsimile: (617) 723-4151
              Steven.reingold@saul.com

              *Counsel to Time Research Ltd.*

16