## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al., | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC., and ALAMEDA RESEARCH LTD., | Adv. Proc. No. 23-50759 |
| Plaintiffs, | |
| - against - | |
| MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG, | |
| Defendants. | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT BYBIT FINTECH LTD.'S  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

**CONNOLLY GALLAGHER LLP**
Karen C. Bifferato (DE No. 3279)
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
Tel: (302) 888-6221
Email:
kbifferato@connollygallagher.com

**O'MELVENY & MYERS LLP**
Peter Friedman
pfriedman@omm.com
Caitlyn Holuta
choluta@omm.com
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

**O'MELVENY & MYERS LLP**
William K. Pao
wpao@omm.com
Jonathan B. Waxman
jwaxman@omm.com
Katie Farrell
kfarrell@omm.com
400 South Hope Street
18th Floor
Los Angeles, California 90071
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

*Counsel for Defendant Bybit Fintech Ltd.*

Dated: May 8, 2024

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT ................................................................................................................ 4

    I.      THE CLAIMS AGAINST BYBIT MUST BE DISMISSED FOR LACK OF *IN PERSONAM* JURISDICTION ...................................................... 4

    II.    DEBTORS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY OVER BYBIT .............................................................. 10

    III.   DEBTORS CANNOT SATISFY ADDITIONAL THRESHOLD ISSUES FOR THEIR CLAIMS OVER ASSETS HELD IN FIVE NON-DEBTOR ACCOUNTS. ............................................................................ 13

    IV.   EVEN IF THE COURT HAS PERSONAL JURISDICTION, THE COURT SHOULD DISMISS THE TURNOVER CLAIM BECAUSE IT IS SUBJECT TO BINDING ARBITRATION IN SINGAPORE ....................... 15

    V.    DEBTORS FAIL TO PLEAD ANY ACTIONABLE CLAIM AGAINST BYBIT .......................................................................................... 20

CONCLUSION .......................................................................................................... 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allegaert v. Perot*,
   548 F.2d 432 (2d Cir.1977) ................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................... 14

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017)........................................................................ 7, 10

*Calder v. Jones*,
   465 U.S. 783 (1984)............................................................................. 5

*City of Chicago, Illinois v. Fulton*,
   592 U.S. 154 (2021)........................................................................... 22

*Commonwealth of Pa. v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988) ............................................................... 11

*Curtiss-Wright Corp. v. CNA Fin. Corp.*,
   2012 WL 1044493 (D.N.J. Jan. 26, 2012) ......................................... 13

*Cyril v. Pereira*,
   2022 WL 2806712 (D.V.I. Jul. 14, 2022)....................................... 1, 13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................... 7, 9, 10

*Derbin v. Biocompatibles Intl. PLC.*,
   1998 WL 551976 (E.D. Pa. Aug. 11, 1998) ......................................... 5

*Doyle v. Ad Astra Recovery Services, Inc.*,
   2018 WL 1169121 (D.N.J. Mar. 6, 2018)........................................... 19

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
   2008 WL 4057745 (Del. Ch. Sep. 2, 2008) ......................................... 8

*Farmers Ins. Ech. V. Portage La Prairie Mut. Ins. Co.*,
   907 F.2d 911 (9th Cir. 1990) ............................................................... 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021).......................................................................... 6

*Hamill v. Twin Cedars Senior Living LLC*,
   2022 WL 16840356 (M.D. Pa. Aug. 5, 2022) .................................... 13

*Hanoverian, Inc. v. Pa. Dept. of Environmental Protection*,
   2008 WL 906545 (M.D. Pa. Mar. 31, 2008) ........................................ 4

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   885 F.2d 1149 (3d Cir. 1989) ............................................................. 16

*Horton v. FedChoice Fed. Credit Union*,
   688 F. App'x 153 (3d Cir. 2017) ........................................................ 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hunt Irrevocable Tr. v. Air Med. Grp. Holdings, LLC,*
2022 WL 607016 (D. Del. Feb. 4, 2022) ................................................................ 20

*Hunt v. Global Incentive & Meeting Management,*
2010 WL 3740808 (D.N.J. Sep. 20, 2010) ................................................................. 9

*In re 1031 Tax Grp., LLC,*
420 B.R. 178 (Bankr. S.D.N.Y. 2009) ..................................................................... 14

*In re Alcantara,*
389 B.R. 270 (Bankr. M.D. Fla. 2008) .................................................................... 24

*In re APF Co.,*
264 B.R. 344 (Bankr. D. Del. 2001) ................................................................... 17, 18

*In re Astropower Liquidating Tr.,*
2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ............................................... 10, 12

*In re Celsius Network LLC, et al. v. Mawson Infrastructure Group,*
2024 WL 1719633 (S.D.N.Y. Apr. 22, 2024) ...................................................... 3, 17

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.,*
7 F.3d 357 (3d Cir. 1993) ....................................................................................... 19

*In re Dordevic,*
67 F. 4th 372 (7th Cir. 2023) .................................................................................. 21

*In re E & G Waterworks, LLC,*
571 B.R. 500 (Bankr. D. Mass. 2017) ..................................................................... 18

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation,*
735 F. Supp. 2d 277 (W.D. Pa. 2010) ..................................................................... 10

*In re Heller Ehrman LLP,*
461 B.R. 606 (Bankr. N.D. Cal. 2011) .................................................................... 17

*In re Mintze,*
434 F.3d 222 (3d Cir. 2006) .................................................................................... 18

*In re Olympus Healthcare Grp., Inc.,*
352 B.R. 603 (Bankr. D. Del. 2006) ........................................................................ 17

*In re Prudential Lines Inc.,*
928 F.2d 565 (2d Cir. 1991) .................................................................................... 24

*In re Pursuit Capital Mgmt., LLC,*
595 B.R. 631 (Bankr. D. Del. 2018) ........................................................................ 19

*In re Rotondo Weirich Enterprises, Inc.,*
583 B.R. 860 (E.D. Pa. 2018) .................................................................................. 17

*In re Schwartz,*
2014 WL 2621114 (Bankr. D.N.J. June 12, 2014) ................................................... 21

*In re Thgh Liquidating LLC,*
2020 WL 5409002 (D. Del., 2020) ..................................................................... 22, 23

### TABLE OF AUTHORITIES
#### (continued)

**Page(s)**

*In re Trans World Airlines*,
 2003 WL 21087970 (Bankr. D. Del. May 6, 2003) ................................................... 11

*In re Veluchamy*,
 879 F.3d 808 (7th Cir. 2018) ........................................................................................ 21

*In re Wilmington Trust Sec. Litig.*,
 2017 WL 2467059 (D. Del. June 7, 2017) ...................................................................... 7

*Malik v. Cabot Oil & Gas Corp.*,
 710 Fed. App'x 561 (3d Cir. 2017) ................................................................................. 7

*Morse v. Lower Merion Sch. Dist.*,
 132 F.3d 902 (3d Cir. 1997) ......................................................................................... 14

*National Precast Crypt Co. v. Dy-Core of Pa., Inc.*,
 785 F. Supp. 1186 (W.D. Pa. 1992) ................................................................................ 8

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993) ....................................................................................... 19

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) ......................................................................................... 18

*Sheehan v. Breccia Unlimited Co. (In re Sheehan)*,
 48 F.4th 513 (7th Cir. 2022) ......................................................................... 1, 6, 11, 12

*Toys "R" Us, Inc. v. Sstep Two, S.A.*,
 318 F.3d 446 (3d Cir. 2003) ......................................................................................... 12

*Va. College, LLC v. Martin*,
 2012 U.S. Dist. LEXIS 96425 (S.D. Miss. Jul. 12, 2012) ........................................... 15

*Walden v. Fiore*,
 571 U.S. 277 (2014) ......................................................................................................... 5

*Williams v. Savage*,
 538 F. Supp. 2d 34 (D.D.C. 2008) .................................................................................. 4

**Statutes**

11 U.S.C. § 362(a)(3) .......................................................................................... 22, 23

## <u>SUMMARY OF ARGUMENT</u>[1]

Debtors' opposition confirms that this Court should dismiss the claims against Bybit. Brimming with rhetoric but lacking in specificity as to Bybit, the opposition does nothing to salvage Debtors' implausible theory that the Court has personal jurisdiction over Bybit—a foreign entity that took no actions directed toward the United States that are related to Debtors' allegations. The thrust of Debtors' jurisdictional argument is that the Court has jurisdiction over Bybit because creditors in the United States bankruptcy case might have suffered harm. But the claims against Bybit largely relate to assets that are *not* part of the Debtors' estates—the assets in question belong to five foreign non-debtor entities that are not parties to this litigation or involved in the bankruptcy proceeding. And even if the assets in question were part of the bankruptcy estate, Debtors' jurisdictional argument that a court has personal jurisdiction over a defendant simply because that court might have jurisdiction over a debtor's assets in a bankruptcy proceeding was conclusively rejected in *Sheehan v. Breccia Unlimited Co. (In re Sheehan)*, 48 F.4th 513, 526 (7th Cir. 2022). Put simply, even if the Court accepted Debtors' jurisdictional theory, the Court would still lack *in personam* jurisdiction over Bybit.

While Debtors argue in the alternative that the Court should allow jurisdictional discovery over Bybit, they do so simply by blurring the lines between Bybit and other Defendants. Debtors do not advance a single argument about why the Court should allow jurisdictional discovery specific to Bybit. Under such circumstances, the Court cannot allow Debtors to go on a fishing expedition. And in any event, the Court should not allow jurisdictional discovery where, as here, the claims against Bybit otherwise fail for myriad reasons. *See, e.g.*, *Cyril v. Pereira*, 2022 WL 2806712, at *8 (D.V.I. Jul. 14, 2022)

---

[1] Capitalized terms in this Reply Brief have the meanings used in Bybit's opening brief in support of its motion to dismiss, cited as "Motion" or "Mot."

(jurisdictional discovery "rendered moot" where complaint failed to state a claim).

Debtors implicitly recognize that their claims against Bybit fail as a matter of law or cannot proceed in this forum, devoting the majority of their 58-page opposition to claims against *other* Defendants. In fact, Debtors largely gloss over additional threshold issues that they cannot meet with respect to claims against Bybit over assets held in the five Non-Debtor Accounts—i.e., that Debtors lack standing to assert those claims and the Court does not even have *in rem* jurisdiction over the assets in the Non-Debtor Accounts. Debtors' potential claims against *other* Defendants (all of which are responded to in separate briefing), however, cannot prevent dismissal of claims against *Bybit*. For the following reasons, each of Debtors' claims against Bybit fails as a matter of law:

***The turnover claim***. Bybit established in its Motion that the turnover claim fails because it is not a turnover claim at all; there is a bona fide dispute over the ownership of assets in the Non-Debtor Accounts. In response, Debtors go all in on a very weak hand by continually eliding the distinction between parties to this action and the five non-debtor foreign entities that hold approximately $103 million of the $122 million assets in the Bybit accounts at issue. But Debtors cannot overcome the deficiencies in their turnover claim by lumping non-debtor foreign entities together with the Debtors where Debtors have not met the Third Circuit's test for substantive consolidation. Unsurprisingly, Debtors do not cite a single case that supports their claim that assets in five distinct foreign Non-Debtor Accounts are subject to Debtors' turnover action.

Even if Debtors could sue on the five foreign Non-Debtor Accounts, the turnover claim as to all Bybit accounts in question—i.e., the Alameda account and the five Non-Debtor Accounts—must be dismissed because it is covered by the arbitration clause in Bybit's Terms

and Conditions.  Debtors do not dispute that Bybit's Terms and Conditions contain an arbitration clause.  Nor do Debtors dispute the authenticity of Bybit's Terms and Conditions.  Instead, Debtors ask the Court to ignore Bybit's Terms and Conditions, failing to make a single mention of the Terms and Conditions in their Complaint.  But Debtors' attempt to deflect and plead around the arbitration agreement does not change the fact that Bybit's Terms and Conditions are integral to Debtors' asserted claims against Bybit and can be properly considered on a motion to dismiss.  Among other things, the Terms and Conditions that Alameda and the five non-debtor foreign entities agreed to, expressly cover the circumstances in which Alameda and the non-debtor entities may withdraw assets from their respective accounts.  Debtors also argue that their turnover claim is not subject to arbitration because it is a claim that arises under the Bankruptcy Code.  But this Court and others, including as recently as April 2024, have "had no difficulty concluding that [] 'turnover' claim[s] did not need to remain in the bankruptcy court." *In re Celsius Network LLC*, 2024 WL 1719633, at *9 (S.D.N.Y. Apr. 22, 2024) (compelling arbitration of turnover claims).

  ***The automatic stay claim***.  Debtors' opposition confirms that their automatic stay claim against Bybit as to the alleged devaluation of Debtors' BIT tokens rests solely on an allegation that an unnamed Bybit executive stated that Bybit controlled the community in 2021.  But even if Bybit controlled the community in 2021, there are no allegations that Bybit retained control in 2023 at the time of the vote or did anything post-petition to interfere with Debtor property.

  ***Claim disallowance***.  Debtors do not dispute that their disallowance claim against Bybit fails, thereby conceding the issue.  "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Hanoverian, Inc. v. Pa. Dept. of Env't Prot.*, 2008 WL 906545, at *16 (M.D. Pa.

Mar. 31, 2008) (quoting *Williams v. Savage*, 538 F. Supp. 2d 34, 41 (D.D.C. 2008).

The Court should dismiss all claims against Bybit with prejudice.

## <u>ARGUMENT</u>

I.   **THE CLAIMS AGAINST BYBIT MUST BE DISMISSED FOR LACK OF *IN PERSONAM* JURISDICTION**

Bybit's opening brief showed that the claims against Bybit must be dismissed because Debtors fail to carry their burden of demonstrating that the Court has *in personam* jurisdiction over Bybit, a Seychelles corporation.  *See* Mot. at 5–12.  Debtors' two arguments in response fail.

First, Debtors argue that the Court has specific *in personam* jurisdiction over Bybit because Bybit allegedly took actions that "affected estate property in the United States."  *See* Opp. at 13–15.  Debtors do not dispute, however, that (i) Bybit is a foreign entity, (ii) the six Bybit accounts at issue are all held by foreign entities, five of which are not even Debtors or parties to this action, and (iii) Bybit's alleged activities related to the BIT and MNT tokens were not directed toward the United States.  *See* Mot. at 11–12.  Rather, Debtors' argument is based on the notion that, despite knowledge of the Chapter 11 cases, Bybit still took actions that devalued assets allegedly in Debtors' estates in the United States.  *See* Opp. at 13.  But the claims against Bybit largely turn on assets in five Bybit accounts that *do not* belong to Debtors and are thus not part of the bankruptcy estate (nor are they held by U.S.-based entities).  *See* Mot. at 12–13, 21–24; *see also infra* at 13–14, 20–21.

Moreover, even if the assets in question are part of Debtors' estate (Bybit does not dispute that Alameda is a Debtor and has an account with Bybit), Debtors' argument that the Court has *in personam* jurisdiction over Bybit based on some devaluation of estate property in the United States has no merit.  "The proper question is not where the plaintiff experienced a

- 4 -

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 289–90 (2014) ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.  Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis.").

Debtors' cases simply confirm that the relevant inquiry for specific personal jurisdiction turns on the "contacts that the '*defendant himself*' creates with the forum." *Id*. at 277.  *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 788–91 (1984) (purposeful availment in California where Florida defendants wrote libelous story about California resident based on information they obtained in phone calls to California sources, and defendants were aware that magazine in which story was published had its largest circulation in California); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (purposeful availment in Montana where Canadian insurer's policies provided coverage for accidents in Montana); *Derbin v. Biocompatibles Int'l PLC.*, 1998 WL 551976, at *3 (E.D. Pa. Aug. 11, 1998) (purposeful availment where defendants sent letters into forum to negotiate a contract with resident of the forum).  Here, Debtors cannot point to a single act related to Debtors' claims in which Bybit "expressly aim[ed]" the alleged wrong at the United States.  *Walden*, 571 U.S. at 288 n.7.  That is because the only alleged wrongs by Bybit—allegedly not allowing withdrawals from six Bybit accounts held by foreign entities (five of which are also non-debtors) and allegedly interfering with the transfer of BIT to MNT tokens—have no connection to the United States other than that

Alameda filed a chapter 11 case in the United States based on affiliate jurisdiction. *See* Mot. at 11–12.

To the extent Debtors' argument is that the Court has *in personam* jurisdiction over Bybit by virtue of the Court's jurisdiction over assets in a bankruptcy proceeding in the United States, the Seventh Circuit expressly rejected that argument in *Sheehan v. Breccia Unlimited Co. (In re Sheehan)*, 48 F.4th 513, 526 (7th Cir. 2022). *See* Mot. at 6–7; *Sheehan* at 521–22. Debtors do not even attempt to distinguish *Sheehan*. And the fact that Bybit allegedly had knowledge of the bankruptcy proceedings, *see* Opp. at 14, is of no consequence. A debtor's "unilateral act of sending notice to the defendants of the bankruptcy proceedings in Illinois and the effect of the automatic stay, did not create minimum contacts" sufficient to create *in personam* jurisdiction. *Sheehan*, 48 F.4th at 525.

Second, Debtors argue that the Court has *in personam* jurisdiction over Bybit based on the following: (i) Bybit is allegedly affiliated with Mirana and is "deeply intertwined" with other unspecified Defendants; (ii) United States-based customers may access and trade on Bybit's cryptocurrency exchange platform through a VPN; (iii) Bybit used a California-based bank as its end-point processing partner for U.S. dollar transactions; and (iv) Bybit registered various business and trade names throughout the United States. *See* Opp. at 16–17. But none of these theories are relevant to the specific *in personam* jurisdiction analysis here because Debtors' claims do not "arise out of or relate to [such] contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021). To the extent Debtors are arguing that these facts (assuming, *arguendo*, that they are true even though they are not even part of

Debtors' Complaint) establish general *in personam* jurisdiction over Bybit, Debtors are wrong.[2]
Debtors do not cite a single case where a similar scattering of facts was sufficient to establish
general *in personam* jurisdiction over a foreign company, nor could they.

As Bybit explained in its Motion, general *in personam* jurisdiction does not exist over a
multinational corporation except in the "exceptional case" where that corporation is "at home" in
the United States. *See* Mot. at 9; *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014); *BNSF
Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (describing "exceptional" case where war forced a
company to relocate). None of Debtors' scattershot facts, even if true, make this the
"exceptional case where, although [Bybit] is neither incorporated in nor has its principal place of
business in [the United States], that [Bybit] has operations in [the United States] so substantial
and of such a nature as to render [it] at home in [the United States]." *Malik v. Cabot Oil & Gas
Corp.*, 710 Fed. App'x 561, 564 (3d Cir. 2017) (internal quotation marks omitted).

**Bybit's alleged affiliation with Mirana and connections to unspecified Defendants.**

Debtors argue that this Court has *in personam* jurisdiction over Bybit because Mirana allegedly
serves as Bybit's "investment arm" and "manage[s] some [B]ybit company asset[s]." *See* Opp.
at 16.[3] Even if this were true, it would be insufficient to establish jurisdiction over Bybit. As a

---

[2] Debtors do not expressly argue that the Court has general *in personam* jurisdiction over Bybit,
thereby waiving any claim that the Court has such jurisdiction over Bybit. *See In re Wilmington
Trust Sec. Litig.*, 2017 WL 2467059, at *2 (D. Del. June 7, 2017) ("When a responding party
fails to defend against an issue which is the subject of a motion, courts consistently construe the
failure to respond as an abandonment of the issue . . . .")

[3] Debtors selectively quote a statement from Bybit's CEO. The full statement, attached as Ex. 7
to the McGuire Decl., reads: "Mirana only manage some bybit company asset. Client fund is
separated [a]nd bybit earn product doesn't use mirana."

preliminary matter, Debtors have not even established jurisdiction over Mirana.  For the reasons articulated in Mirana's Motion, Debtors cannot do so.  *See* Mirana Mot. at 15–21.

But even if Debtors could establish general *in personam* jurisdiction over Mirana, that would not create jurisdiction over Bybit; a court may only exercise jurisdiction over a nonresident corporation like Bybit based upon the activities of a "sufficiently intertwined" resident corporation if the plaintiff can produce "sufficient evidence" that the corporations are "alter ego[s]."  *Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc.*, 785 F. Supp. 1186, 1194 (W.D. Pa. 1992).  Debtors' allegations that Bybit is "affiliated" with Mirana (Comp. ¶ 25) do not come close to establishing that Bybit and Mirana are alter egos.

In determining whether corporations are alter egos, courts consider the following factors: "common officers and directors; one corporation's ownership of the stock of the other; one corporation's supervision of the other; consolidation of tax returns and financial records, common use of employees; common use of business equipment and office facilities; common business purposes, and finally, the failure to observe corporate formalities."  *Nat'l Precast*, 785 F. Supp. at 1194.  Debtors do not cite a single case, and Bybit is aware of none, suggesting that Bybit's alleged "affiliate[ion]" with Mirana is sufficient to establish that the corporations are alter egos, let alone that the Court may exercise jurisdiction over Bybit through Mirana.[4] Recognizing as much, Debtors do not allege in their complaint that Bybit and Mirana are alter egos.  Nor do Debtors address whether the alter ego doctrine even exists under Seychelles law— the place of Bybit's incorporation.  *See* Compl. ¶ 24; *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *11 (Del. Ch. Sep. 2, 2008) (courts "look[] to the

---

[4] While Debtors argue that Bybit is "deeply intertwined with the other corporate and individual defendants," *see* Opp. at 16, the Complaint does not have any allegations that tie Bybit to any defendant except Mirana.

law of the entity in determining whether the entity's separate existence is to be disregarded").
Bybit's alleged affiliation with Mirana is thus inadequate to establish *in personam* jurisdiction
over Bybit.

**US-based customers circumventing Bybit's restrictions**.  Debtors argue that this Court
has *in personam* jurisdiction over Bybit because it is possible for U.S.-based users to bypass
Bybit's restrictions on U.S.-based users by disguising their location through a virtual private
network.  *See* Opp. at 17; Declaration of Matthew B. McQuire, Ex. 8 (Cybernews.com article
stating that "with a reliable VPN, [United States users] can bypass [Bybit's] restrictions [on
United States users] by changing [their] IP address" through a VPN).  But the fact that U.S.-
based users can possibly circumvent Bybit's restrictions is insufficient to establish *in personam*
jurisdiction over Bybit.  *See Daimler*, 571 U.S. at 139 (holding that multinational corporation's
"sizeable" customer base in forum cannot establish jurisdiction over that corporation that is
neither incorporated in forum nor has its principal place of business there).  Put simply, if the
*intentional* targeting of significant U.S. customers was insufficient to establish general *in
personam* jurisdiction over one of the world's largest automakers in *Daimler*, the fact that Bybit
might have some U.S. customers who circumvented Bybit's restrictions cannot establish general
*in personam* jurisdiction over Bybit.

**Bybit's alleged use of a California bank**.  Debtors argue that this Court has *in personam*
jurisdiction over Bybit because it allegedly used a California-based bank to process transactions
that have no relation to Debtors' allegations.  *See* Opp. at 17.  But "[a] business that merely
opens a bank account in a particular [forum] would not have a reasonable expectation of being
haled into court in that forum for claims not arising out of that bank account."  *Hunt v. Glob.
Incentive & Meeting Mgmt.*, 2010 WL 3740808, at *4 (D.N.J. Sep. 20, 2010); *see also Daimler*,

571 U.S. at 139 (existence of in-forum facilities and contacts is insufficient to establish

"continuous and systematic" contacts so extensive to render multinational corporation

"essentially at home" in forum).  Thus, the use of a California bank account is insufficient to

establish *in personam* jurisdiction .  *See In re Astropower Liquidating Tr.*, 2006 WL 2850110, at

\*7 (Bankr. D. Del. Oct. 2, 2006) ("[T]here is nothing in the record to establish that the [] 

Defendants have the continuous and systematic contacts with the United States required for the

Court to exercise general jurisdiction over them."); *BNSF*, 581 U.S. at 414 (conducting business

in forum "does not suffice to permit the assertion of general jurisdiction over claims . . . that are

unrelated to any activity occurring in [forum]").

  ***Business and trade names***.  Debtors argue that this Court has *in personam* jurisdiction

over Bybit because certain Bybit affiliates registered business and trade names in the United

States.  *See* Opp. at 17.  But Debtors do not argue that any of these registered affiliated entities

ever conducted any business in the United States.  And even if they did, the existence of a United

States-based subsidiary or affiliate is insufficient for the Court to exercise *in personam*

jurisdiction over Bybit.  *See In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735

F. Supp. 2d 277, 317–18 (W.D. Pa. 2010) ("The parent-subsidiary relationship itself is not

sufficient to establish *in personam* jurisdiction over the parent entity.").[5]

## II. DEBTORS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY OVER BYBIT

  Because Debtors cannot establish a prima facie showing of *in personam* jurisdiction over

---

[5] Even if this Court were to find that Bybit has sufficient minimum contacts with the United States to exercise *in personam* jurisdiction over Bybit (it should not), exercising *in personam* jurisdiction over Bybit does not comport with fair play or substantial justice.  While Debtors argue otherwise, *see* Opp. at 19–21, they fail to make any arguments specific to Bybit.  Worse yet, many of their arguments (which are also absent from their Complaint) do not even apply to Bybit—*e.g.*, that Defendants have "directors or employees who reside in the United States."  *See*

Bybit, this Court should not permit Debtors to take any jurisdictional discovery over Bybit. *See Sheehan*, 48 F.4th at 526 ("A plaintiff must be able to establish 'a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.'") (citation omitted). Debtors are not "entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction." *Id.* at 527.

Debtors argue in conclusory fashion that they should be entitled to take jurisdictional discovery generally (not specific to Bybit) because courts have permitted jurisdictional discovery where plaintiffs have made a "sufficient start" to a prima facie case of jurisdiction. *See* Opp. at 22–23. But Debtors fail to explain how they have made a "sufficient start," let alone any "start," as to Bybit. Indeed, as detailed in Bybit's Motion, Debtors failed to include *any* allegations in their 131 paragraph complaint about a connection between Bybit and the United States. *See* Mot. at 10. And Debtors' arguments in their Opposition about *in personam* jurisdiction over Bybit—arguments that go beyond the allegations in their Complaint—fare no better. *See Commonwealth of Pa. v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

Each one of Debtors' jurisdictional arguments is insufficient as a matter of law to establish *in personam* jurisdiction over Bybit. *See supra* at 4–10. In fact, many of Debtors' jurisdictional arguments as to Bybit have been rejected by the United States Supreme Court. *See id*. Debtors' jurisdictional discovery cases hinged on viable jurisdictional allegations, and are thus inapposite. *See, e.g., In re Trans World Airlines*, 2003 WL 21087970, at *2 (Bankr. D. Del.

---

Opp. at 19. And Debtors fail to address the reality that the only U.S. plaintiff in this case, FTX US, has no connection to the claims against Bybit. *See* Mot. at 12 n.7.

May 6, 2003) ("[B]ased on the Estate's ascertion [sic] that up to 30% of the daily flights arriving

at Pearson are from United States locations on airlines domiciled in the United States, I agree

with the Estate that it is possible GTAA may have such additional ties to the United States

arising out of those flights that a finding of *in personam* jurisdiction may be warranted."); *Toys*

*"R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("The record before the District

Court contained sufficient non-frivolous allegations (and admissions) to support the request for

jurisdictional discovery.").

Debtors have not advanced a *single* theory that could support the Court's exercise of *in*

*personam* jurisdiction over Bybit.  And while Debtors argue that "the declarations that

Defendants submitted to the Court 'contain a number of discrepancies'" that further support

jurisdictional discovery, *see* Opp. at 23, Bybit did not submit any such declaration.  The Court

cannot subject Bybit to jurisdictional discovery based on a finding that another defendant might

be subject to jurisdictional discovery.[6]  Because Debtors' allegations are "so bare and

unsupported[,] to grant discovery would be to allow a fishing expedition."  *See Sheehan*, 48

F.4th at 527.  Put differently, jurisdictional discovery over Bybit is "not warranted" because

there is "no reasonable basis to conclude that continuous and systemic contacts may exist

between [Bybit] and the United States" to support a finding of *in personam* jurisdiction.  *In re*

*Astropower Liquidating Tr.*, 2006 WL 2850110, at *8.

In any event, the Court should not allow jurisdictional discovery over Bybit where, as

here, the Court need not even reach the jurisdictional issue to dismiss Debtors' claims.  *See, e.g.*,

---

[6] Debtors relatedly argue that a declaration submitted by Mirana is inconsistent with facts about
Mirana's connections with Bybit and other defendants.  *See* Opp. at 23.  Setting aside the fact
that any inconsistencies in this declaration should not be used against Bybit, Debtors'
jurisdictional argument over Bybit based on an alleged relationship with Mirana are legally
insufficient to establish *in personam* jurisdiction over Bybit.  *See supra* at 7–9.

*Hamill v. Twin Cedars Senior Living LLC*, 2022 WL 16840356, at *11 n.5 (M.D. Pa. Aug. 5, 2022) ("Because we conclude that this [claim] fails on its merits with respect to these [defendants], we do not need to reach the personal jurisdiction argument . . . ."). In *Cyril*, for example, the district court held that jurisdictional discovery is rendered "moot" on a motion to dismiss for lack of personal jurisdiction where the court grants a motion to dismiss on other grounds. *See Cyril*, 2022 WL 2806712, at *8. As explained in Bybit's Motion and further below, the Court should grant Bybit's Motion for several reasons that are unrelated to jurisdiction. Accordingly, if the Court determines that it cannot resolve the jurisdictional question without allowing jurisdictional discovery over Bybit, the Court should not permit such discovery because Debtors' claims against Bybit otherwise fail. *See Curtiss-Wright Corp. v. CNA Fin. Corp.*, 2012 WL 1044493, at *7 n.2 (D.N.J. Jan. 26, 2012) ("As the Court finds that plaintiff has not stated a claim against [defendant], the Court does not reach the merits of defendant's alternative argument to dismiss for lack of personal jurisdiction.").

## III.   DEBTORS CANNOT SATISFY ADDITIONAL THRESHOLD ISSUES FOR THEIR CLAIMS OVER ASSETS HELD IN FIVE NON-DEBTOR ACCOUNTS.

As Bybit demonstrated, Debtors cannot satisfy three additional threshold issues for their claims over assets held in the five Non-Debtor Accounts—(i) the Court does not have *in rem* jurisdiction over the property in the five Non-Debtor Accounts because that property does not belong to the Debtors; (ii) Debtors lack standing to bring claims related to the assets in the five Non-Debtor Accounts; and (iii) Debtors fail to join all necessary parties. *See* Mot. at 12–15. Debtors' arguments in response—to the extent there are any—all fail.

***The Court does not have in rem jurisdiction over property in the five Non-Debtor Accounts***. Debtors do not squarely address the *in rem* jurisdiction issue. Instead, they argue in the context of their turnover claim that the Court must accept as true their allegation that the

assets held in the Bybit Accounts are property of the estate.  *See* Opp. at 43–44.  But "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court should not blindly

accept Debtors' legal conclusion that the assets held in the Non-Debtor Accounts are property of

the estate, particularly where Debtors' own allegations demonstrate otherwise.  *See, e.g.*, Compl.

¶ 68 (alleging that the assets in the five Non-Debtor Accounts are "held" by five foreign, non-

debtor entities).  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A]

court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a

motion to dismiss.").

   ***Debtors lack standing to bring claims related to assets in the five Non-Debtor***

***Accounts***.  Debtors make no meaningful attempt to respond to this threshold issue.  Instead,

Debtors simply assert in a two-sentence footnote that Bybit's argument "misses the mark."  *See*

Opp. at 44 n.9.  Debtors again seem to rely on their theory that the Court must accept their legal

conclusion that the assets in the five Non-Debtor Accounts are property of the estate.  *See* Opp.

at 43–44.  For the reasons discussed above, Debtors are wrong.  And Debtors fail to address, for

example, why this case is any different than *In re 1031 Tax Grp., LLC*, 420 B.R. 178 (Bankr.

S.D.N.Y. 2009)—a case in which the court held that a trustee lacked standing to assert claims

where third-parties would likely still have claims for their injuries no matter how the trustee's

suit was resolved.  *See* Mot. at 14.

   ***Debtors fail to join all necessary parties***.  Debtors argue that: (i) Bybit's joinder

argument is not properly before the court because Bybit did not move to dismiss under Federal

Rule of Civil Procedure 12(b)(7); and (ii) Bybit did not show that the five non-debtor entities are

indispensable or that joinder of the entities is not infeasible.  *See* Opp. at 52–53.  Debtors are

wrong on both counts.  First, the fact that Bybit did not cite Rule 12(b)(7) does not change the

fact that Bybit made a joinder argument that is properly before the Court.  *See* Mot. at 14–15.

Indeed, Debtors' response to Bybit's joinder argument demonstrates that there is no ambiguity in

Bybit's argument.  Debtors' case law does not suggest otherwise.  *See Va. College, LLC v.*

*Martin*, 2012 WL 2873888, at *5 (S.D. Miss. Jul. 12, 2012) (finding joinder argument not

properly before the court only where defendants "did not cite any authority, and did not fully

explore their contention").

      Second, Debtors' argument that Bybit failed to show why the non-debtor entities are

indispensable parties simply ignores Bybit's argument that (i) the five non-debtor entities hold

$103 million of $122 million of assets in the Bybit accounts, and (ii) Debtors' claims over the

assets in these accounts necessarily involve a determination of ownership, which could well be

disputed by non-debtor entities with whom Bybit actually contracted.  *See* Mot. at 15.  Allowing

Debtors to sue Bybit on behalf of five non-debtors, none of which are parties to this litigation, is

deeply prejudicial to Bybit; while this Court may conclude Debtors are correct that they are

proper plaintiffs, that provides Bybit with no protection in a different forum if the five foreign

non-debtors pursue claims against Bybit in the future.  Debtors' decision to ignore these

arguments does not support Debtors' argument that Bybit failed to make any necessary showing.

And there is simply no indication that joinder of any of these British Virgin Islands entities is

feasible (or that this Court would have jurisdiction over those entities).  Otherwise, Debtors

would have presumably joined them in this action.

## IV.    EVEN IF THE COURT HAS PERSONAL JURISDICTION, THE COURT SHOULD DISMISS THE TURNOVER CLAIM BECAUSE IT IS SUBJECT TO BINDING ARBITRATION IN SINGAPORE

      Bybit's opening brief showed that the Court should dismiss Debtors' turnover claim

because, if the Non-Debtors Accounts actually belong to Debtors, Debtors are subject to binding

arbitration in Singapore with respect to the Alameda and Non-Debtor Accounts. *See* Mot. at 15–20. Debtors' three responses fail.

First, Debtors argue that statutory bankruptcy claims "cannot be subject to any purported underlying arbitration provision." Opp. at 48–49. Debtors are wrong. There is no bright-line rule that bankruptcy claims cannot be sent to arbitration. And none of Debtors' cases supports their argument. Indeed, two of Debtors' three principal cases—*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989) and *Allegaert v. Perot*, 548 F.2d 432 (2d Cir. 1977)—do not even address turnover claims. Contrary to Debtors' argument, the *Hays* court held that a "trustee is bound to arbitrate *all* of its claims that are derived from the rights of the debtor" subject to an arbitration agreement. *Hays*, 885 F.2d at 1153–54 (emphasis added) ("We hold that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor."). While the *Hays* court held that a fraudulent transfer claim was not subject to arbitration, it did so only because the fraudulent transfer claim did not "derive[] from the rights of the debtor under section 541." *Id.* at 1154; *see also Allegaert*, 548 F.2d at 436 (holding that fraudulent transfer claims were not subject to arbitration because "if a creditor had independently asserted a claim under N.Y. Debt & Cred. Law s 278 to set aside a fraudulent transfer of assets, the creditor would not have been subject to any arbitration agreement"). Here, by contrast, Debtors argue that their turnover claims derive from property under section 541.[7] *See* Opp. at 41. Moreover, the turnover claim is based solely on Alameda and the five non-debtor entities' alleged inability to withdraw funds from their Bybit accounts—i.e., conduct

---

[7] Bybit disputes that the assets subject to the turnover claim are estate property because the assets in five Bybit accounts are held by foreign non-debtor entities. *See infra* at 20–21. If the Court agrees with Bybit, Debtors' turnover claim fails as a matter of law.

squarely subject to Bybit's Terms and Conditions.  *See* Mot. at 17–18.

Although Debtors argue that Bybit is improperly reformulating Debtors' turnover claim as a breach of contract claim, *see* Opp. at 49, Debtors do not dispute that Bybit's Terms and Conditions expressly dictate the process for customer withdrawals.  *See* Mot. at 17.  Critically, Debtors make no effort to distinguish *In re Olympus Healthcare Grp., Inc.*, 352 B.R. 603, 611 (Bankr. D. Del. 2006)—the seminal case from this Court that dealt with claims labeled as "turnover" claims but which arise from a contract and the alleged breach thereof.  *See* Mot. at 19. *See also In re Rotondo Weirich Enters., Inc.*, 583 B.R. 860, 871–72 (E.D. Pa. 2018) (compelling arbitration and rejecting debtor's attempt to "depict its claims as turnover claims" where claims were "not bona fide § 542 turnover claims" and were instead "disputed contract claims"); *In re Heller Ehrman LLP*, 461 B.R. 606, 607–08 (Bankr. N.D. Cal. 2011) ("Whatever the label, this is not an action for turnover of estate property; it is [] essentially an action to recover an account receivable, for breach of contract and quantum meruit.").  Notably, the District Court for the Southern District of New York just addressed a similar issue, rejecting a debtor's attempt to "artful[ly] plead[]" a breach of contract claim as a turnover claim in an adversary proceeding and compelling arbitration of all claims, including those pled as turnover claims.  *See In re Celsius Network*, 2024 WL 1719633, at *9.

Debtors fare no better with their third principal case—*In re APF Co.*, 264 B.R. 344 (Bankr. D. Del. 2001).  There, although the court denied a motion to stay an adversary proceeding involving a trustee's turnover claim in favor of arbitration, the court made clear that it did so in an exercise of its discretion.  *See id*. at 363 ("I will exercise my discretion . . . .").  In other words, the court's opinion contradicts Debtors' argument that a turnover claim cannot be subject to arbitration as a matter of law.  *See* Opp. at 49.  And the court had discretion to deny

arbitration only because, unlike here, the claim was not asserted "by the debtor against others."

*In re APF Co.* at 363.  Instead, a trustee asserted the claim on behalf of creditors who did not

have an arbitration agreement.  *See id*.  Moreover, the *APF* court exercised its discretion largely

because it found that not all relevant contracts had an arbitration clause.  *See id*. at 363–64.

Here, by contrast, the Alameda account and the five Non-Debtor Accounts are all subject to the

same arbitration clause in Bybit's Terms and Conditions.  *See* Mot. at 17–18.

Second, Debtors argue that the Court should exercise its discretion to decline to enforce

the arbitration clause.  *See* Opp. at 49–50.  This argument underscores that Debtors' first

argument—that turnover claims can never be arbitrated—has no merit.  Setting this

inconsistency aside, Debtors' argument conflicts with controlling Third Circuit law that a

bankruptcy court lacks discretion to deny enforcement of an arbitration clause absent a showing

of congressional intent to preclude waiver of jurisdictional remedies.  *See* Mot. at 18; *In re*

*Mintze*, 434 F.3d 222, 231 (3d Cir. 2006).  To that end, Debtors rely on a case from the District

of Massachusetts, *In re E & G Waterworks, LLC*, 571 B.R. 500 (Bankr. D. Mass. 2017), that held

that core claims cannot be arbitrated while non-core claims can be.  Debtors' authority is

inconsistent with Third Circuit law.  *See Mintze*, 434 F.3d at 229 (the "core/non-core distinction

[in bankruptcy claims] does not [] affect whether a bankruptcy court has the discretion to deny

enforcement of an arbitration agreement.").

Third, Debtors argue that they should be entitled to discovery regarding Bybit's Terms

and Conditions because their Complaint does not cite, attach, or reference the Terms and

Conditions, and their turnover claim is not based on the Terms and Conditions.  *See* Opp. at 50.

The Court cannot simply ignore Bybit's Terms and Conditions, because they are foundational to

Debtors' turnover claims.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[W]hat is

critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited.").  And the label on Debtors' claim (turnover vs. breach of contract) does not change the fact that the claim is one for breach of Bybit's Terms and Conditions.  *See supra* at 16–17.  Thus, Debtors' efforts to plead around the arbitration agreement are of no consequence.  *See, e.g.*, *In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 668 (Bankr. D. Del. 2018) (compelling arbitration even though complaint did not refer to or attach agreement containing arbitration clause because complaint invoked provisions and duties created by the agreement); *Doyle v. Ad Astra Recovery Servs., Inc.*, 2018 WL 1169121, at *2 (D.N.J. Mar. 6, 2018) ("[E]ven though Plaintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the Court may consider it because Plaintiff's claims derive from the agreement, which Plaintiff entered into with [defendant].").

Additionally, Debtors do not object to the authenticity of Bybit's publicly available Terms and Conditions or challenge that Bybit's Terms and Conditions cover customer withdrawals.  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (holding that district court properly considered undisputedly authentic document attached to defendant's motion to dismiss).

Failing to consider Bybit's Terms and Conditions would conflict with strong federal policy in favor of arbitration, *see* Mot. at 16–17, and simply promote clever drafting designed to suppress arbitration agreements or other contracts that the parties have undoubtedly relied upon. *See Hunt Irrevocable Tr. v. Air Med. Grp. Holdings, LLC*, 2022 WL 607016, at *3 (D. Del. Feb.

4, 2022) (considering contract that defendant attached to motion to dismiss because authenticity

of agreement was not in dispute; failure to consider contract could allow a plaintiff to avoid

dismissal by submitting only favorable portions of contract).  Debtors' cases in which courts

have granted discovery regarding arbitration agreements have only done so where, unlike here,

the parties disputed the authenticity or enforceability of an arbitration agreement.  *See, e.g.*,

*Horton v. FedChoice Fed. Credit Union*, 688 F. App'x 153, 157 (3d Cir. 2017) (allowing

discovery into arbitration agreement due to dispute about conscionability of agreement).

## V.   DEBTORS FAIL TO PLEAD ANY ACTIONABLE CLAIM AGAINST BYBIT

### A.   The turnover claim must be dismissed.

Bybit showed that Debtors' turnover claim fails as a matter of law because there is a bona

fide dispute over the ownership of assets in the five Non-Debtor Accounts.  *See* Mot. at 20–25.

Debtors' two arguments in response fail.

First, Debtors argue that there is no bona fide dispute over ownership despite their

allegations that the five accounts are held by non-debtor entities because Debtors allege that they

funded, used, and controlled the accounts.  *See* Opp. at 42–43.  As a preliminary matter, Debtors

overstate their allegations.  For example, although Debtors argue that they "funded" the

accounts, the Complaint alleges that the accounts were funded by Debtors *and* certain unnamed

"subsidiaries."  Compl. ¶ 69.  Setting this aside, Debtors are also wrong on the law.  Indeed,

Debtors do not even attempt to engage with Bybit's substantive consolidation cases.  *See* Mot. at

23–24.  Nor do Debtors dispute that they have failed to give the non-debtor entities or their

respective creditors notice and an opportunity to be heard.  *Id.* at 24–25.

Instead of engaging with the applicable law, Debtors rely on three cases that are readily

distinguishable.  *See* Opp. at 42–43.  Each one of Debtors' cases involved a situation where,

unlike here, a debtor attempted to dissipate estate assets through a sham transaction that would

have otherwise been subject to turnover. *See In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (debtor admitted at deposition that money belonged to him despite efforts to transfer it out of estate); *In re Veluchamy*, 879 F.3d 808, 816 (7th Cir. 2018) ("[T]he senior Veluchamys' interest in the $5,500,000 at the time they filed the bankruptcy petition is not subject to legitimate dispute. Both lower courts rejected the Canara canards, and concluded the purported transfer was a sham. And nothing has convinced us otherwise."); *In re Dordevic*, 67 F. 4th 372, 386 (7th Cir. 2023) ("[T]he evidence showed that Jelena placed the property in Jorgovanka's name to avoid collection activities by Jelena's creditors."). That is, in each of these cases, a debtor disclaimed an interest in property to shield it from its creditors but the court found it belonged to the debtor. This case is completely the opposite: Debtors are trying to aggrandize their estate by claiming they own non-debtor property when those non-debtors (who contracted directly with Bybit) are completely absent from this adversary proceeding. Debtors' cases provide no support for this effort.

Second, Debtors argue that Bybit has manufactured a dispute about ownership by resorting to Bybit's Terms and Conditions. *See* Opp. at 43–47. But Bybit's Terms and Conditions have nothing to do with the fact that the five accounts in question are held by non-debtor entities: Debtors' Complaint creates the bona fide dispute about ownership of assets in the five Non-Debtor Accounts. *See* Compl. ¶¶ 68–69 (alleging that approximately $103 million of $122 million of the assets in the Bybit accounts are "held" by non-debtor foreign entities which were formed by FTX employees).

### B.    The automatic stay claim must be dismissed.

As Bybit demonstrated, Debtors' automatic stay claim against Bybit must be dismissed because (i) the disguised turnover action does not give rise to a cognizable stay violation; (ii)

Debtors fail to plead that Bybit took any action related to the BitDAO allegations that violate the automatic stay; and (iii) Debtors fail to allege damages related to their BitDAO allegations. *See* Mot. at 25–30. Debtors' responses all lack merit.

        **1.** **Debtors' disguised turnover action is not a cognizable stay violation.**

Bybit demonstrated that Debtors' automatic stay claim fails as to property in the five Non-Debtor Accounts. *See* Mot. at 25. In response, Debtors argue that Bybit is "split[ting] hairs to try to distinguish between Alameda" and the five non-debtor entities. *See* Opp. at 54. But Debtors' Complaint makes this distinction clear. *See* Compl. ¶ 68. And Debtors do not dispute that the automatic stay applies only to property of the estate. *See* 11 U.S.C. § 362(a)(3).

Bybit also demonstrated that even if Debtors could show that the funds in all Bybit accounts are property of the estate, Bybit's alleged refusal to allow the withdrawal of funds from those accounts is legally inadequate to support a claim for violation of the automatic stay under recent Supreme Court precedent. *See* Mot. at 26–27. In response, Debtors attempt to reframe Bybit's alleged refusal to allow withdrawals as an affirmative action in response to withdrawal requests. *See* Opp. at 55. But that is precisely what the City of Chicago did when it refused to return impounded vehicles in response to debtors' requests, and the Supreme Court held that was not a stay violation. *See City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158 (2021); Mot. at 26. Debtors make no effort to distinguish this case from *Fulton*. Instead, Debtors rely on an unreported district court case predating *Fulton*. *See In re Thgh Liquidating LLC*, 2020 WL 5409002 (D. Del., 2020). *See* Opp. at 55.

Even if the *Thgh* court's decision survives *Fulton* (a dubious proposition), the case is readily distinguishable from the facts here. In *Thgh*, the court reasoned that the government violated the automatic stay by withholding Medicare payments for laboratory tests and other

services rendered by a bankrupt company post-petition. *See id*. at *4. Here, by contrast, there are no post-petition services for which Bybit is withholding payment; to the extent Bybit is doing anything, it is simply preserving the pre-petition *status quo*.

> **2.     Debtors fail to plead that Bybit took any action related to the BitDAO allegations that violate the automatic stay.**

Bybit demonstrated in its opening brief that Debtors' automatic stay claim as to the migration of the BIT to MNT tokens fails because Debtors do not allege that Bybit took actions that interfered with the Debtors' alleged inability to convert their tokens. Debtors argue in response that Bybit's argument is inconsistent with Debtors' allegation that an unnamed Bybit executive supposedly stated in private that Bybit controlled BitDAO. *See* Opp. at 56. But Debtors ignore that their allegation as to Bybit control occurred in October 2021—well before the automatic stay came into effect. Even if Bybit exercised some control over the BitDAO community in 2021, there are no allegations that Bybit retained that control and exercised it in 2023—i.e., the time when the BitDAO community vote occurred and the automatic stay applied. Debtors' inability to allege Bybit control of the 2023 vote at issue dooms their automatic stay claim; a claim that requires an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Debtors' failure to address this fundamental problem in their Opposition confirms that this Court should reject Debtors' attempt to force a claim into United States bankruptcy court that does not belong here.

> **3.     Debtors fail to allege damages related to their BitDAO allegations.**

Bybit showed that Debtors' automatic stay claim against Bybit as to Debtors' BitDAO allegations also fails because Debtors do not plead any cognizable injury. *See* Mot. at 29–30. While Debtors argue in response that they "face imminent harm and loss," Opp. at 56, they cite

nothing except their allegation of "potential losses." *See id*. Debtors fail to distinguish Bybit's case—*In re Alcantara*, 389 B.R. 270 (Bankr. M.D. Fla. 2008)—holding that potential losses are insufficient to state a claim for violation of the automatic stay. *See* Mot. at 29–30. None of Debtors' cases have anything to do with Debtors' theory that "potential losses" constitute sufficient injury to support their automatic stay claim. *See, e.g.*, *In re Prudential Lines Inc.*, 928 F.2d 565, 573–74 (2d Cir. 1991) (holding that automatic stay prevented parent company from taking worthless stock deduction on tax return with respect to bankrupt subsidiary because deduction would have adversely affected subsidiary's ability to carryforward its net operating losses to offset future income; i.e., non-debtor parent company's actions "would have the legal effect of diminishing or eliminating property of the bankrupt estate").

## <u>CONCLUSION</u>

For the reasons stated above and in Bybit's Motion, all claims against Bybit should be dismissed with prejudice.

Dated:  May 8, 2024                              Respectfully Submitted,

                                                */s/ Karen C. Bifferato*

                                                Karen C. Bifferato (DE No. 3279)
                                                CONNOLLY GALLAGHER LLP
                                                1201 North Market Street
                                                20th Floor
                                                Wilmington, Delaware 19801
                                                Tel: (302) 888-6221
                                                Email: kbifferato@connollygallagher.com

                                                Peter Friedman
                                                O'MELVENY & MYERS LLP
                                                pfriedman@omm.com
                                                Caitlyn Holuta
                                                choluta@omm.com
                                                7 Times Square
                                                New York, New York 10036
                                                Telephone: (212) 326-2000
                                                Facsimile: (212) 326-2061

                                                William K. Pao
                                                O'MELVENY & MYERS LLP
                                                wpao@omm.com
                                                Jonathan B. Waxman
                                                jwaxman@omm.com
                                                Katie Farrell
                                                kfarrell@omm.com
                                                400 South Hope Street
                                                18th Floor
                                                Los Angeles, California  90071
                                                Telephone:     +1 213 430 6000
                                                Facsimile:     +1 213 430 6407

                                                *Attorneys for Bybit Fintech Ltd.*