## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC., and ALAMEDA RESEARCH LTD.,<br><br>                                          Plaintiffs,<br><br>            -against-<br><br>MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG,<br>                                          Defendants. | Adv. Pro. No. 23-50759 (JTD) |

### REPLY MEMORANDUM OF LAW OF DEFENDANT MIRANA CORP. IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

Dated: May 8, 2024

NORTON ROSE FULBRIGHT US LLP
Eric Daucher (*pro hac vice*)
Steve Dollar (*pro hac vice*)
Victoria Corder (*pro hac vice*)
1301 Avenue of the Americas
New York, NY  10019-6022
Tel.: (212) 408-5100

*Counsel for Defendant Mirana Corp.*

WOMBLE BOND DICKINSON (US) LLP
Matthew P. Ward (No. 4471)
Morgan L. Patterson (No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Tel.: (302) 252-4320
matthew.ward@wbd-us.com
morgan.patterson@wbd-us.com

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.   A list of Debtors and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.    The Court Should Dismiss All Claims Against Mirana for Lack of Personal
Jurisdiction ................................................................................................................... 2

      A.    Plaintiffs Fail to Show a Prima Facie Basis for General Jurisdiction ................... 2

      B.    Plaintiffs Fail to Show a Prima Facie Basis for Specific Jurisdiction .................. 4

      C.    Plaintiffs Fail to Show an Entitlement to Jurisdictional Discovery ..................... 10

II.    Plaintiffs Fail to Adequately Allege A Property Interest in the Withdrawn Assets ........ 11

      A.    FTX's Terms of Service Show the Withdrawn Assets are Mirana's
Property ................................................................................................................ 12

      B.    Plaintiffs Do Not Have Title Over the Withdrawn Assets as a Matter of
Law Simply Because Mirana Placed Its Digital Assets on the FTX.com
Exchange .............................................................................................................. 14

      C.    FTX's Terms of Service May Be Considered on the Motion to Dismiss as
They Are Integral to the Complaint ..................................................................... 14

III.    Counts One, Two, Three, and Five Must be Dismissed Because U.S. Avoidance
Powers Do Not Apply Extraterritorially ........................................................................ 15

IV.    The Court Must Dismiss Counts One and Two Because Plaintiffs Have Not
Adequately Alleged an Intent to Hinder, Delay or Defraud Creditors ........................... 17

      A.    Plaintiffs Cannot Conclusorily Plead that Mirana, and Withdrawals Made
By It, Were "Part and Parcel" to FTX's Fraudulent Scheme .............................. 18

      B.    Plaintiffs Also Fail to Plead Any Badges of Fraud ............................................. 19

V.    Count Seven Must be Dismissed for Failure to Adequately Allege a Violation of
the Automatic Stay ......................................................................................................... 21

CONCLUSION ..................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023) ................................................................17

*In re AgFeed USA, LLC*,
  546 B.R. 318 (Bankr. D. Del. 2016) .........................................18

*In re Am. Home Mortg. Holdings, Inc.*,
  386 F. App'x 209 (3d Cir. 2010) ..............................................12

*In re Ampal–Am. Israel Corp.*,
  562 B.R. 601 (Bankr. S.D.N.Y. 2017) .....................................17

*In re Astropower Liquidating Trust*,
  2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ....................10

*Begier v. IRS*,
  496 U.S. 53 (1990) ...................................................................17

*BNSF Railway Co. v. Tyrrell*,
  581 U.S. 402 (2017) ...................................................................4

*Calder v. Jones*,
  465 U.S. 783 (1984) ...................................................1, 8, 9, 10

*In re Carbone*,
  615 B.R. 76 (Bankr. E.D. Pa. 2020) .........................................21

*In re CIL Ltd.*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...................................16, 17

*Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*,
  232 F. Supp. 2d 294 (D. Del. 2002) .........................................12

*In re DBSI*,
  447 B.R. 243 (Bankr. D. Del. 2011) .........................................20

*In re DBSI, Inc.*,
  451 B.R. 373 (S.D.N.Y. 2012) ...................................................8

*Drivetrain, LLC v. X. Com., Inc.*,
  2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023) ................18, 19

*In re Enron Corp.*,
  328 B.R. 58 (Bankr. S.D.N.Y. 2005) ........................................18

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
  623 F.3d 147 (3d Cir. 2010)...............................................................................10

*In re FAH Liquidating Corp.*,
  572 B.R. 117 (Bankr. D. Del. 2017) ............................................................15, 16

*In re FBI Wind Down, Inc.*,
  581 B.R. 387 (Bankr. D. Del. 2018) ....................................................................14

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) ....................................................................18

*In re Foxmeyer Corp.*,
  296 B.R. 327 (Bankr. D. Del. 2003) ....................................................................19

*In re Harris*,
  2003 WL 23096966 (Bankr. D. Del. Dec. 30, 2003)............................................20

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  524 B.R. 488 (Bankr. S.D.N.Y. 2015) ...................................................................6

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021) ...........................................................................5, 6

*Ieradi v. Mylan Lab'ys, Inc.*,
  230 F.3d 594 (3d Cir. 2000)................................................................................22

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)...........................................................................8, 9

*In re Live Well Financial Inc.*,
  652 B.R. 699 (Bankr. D. Del. 2023) ....................................................................19

*In re Lone Star Pub Operations, LLC*,
  465 B.R. 212 (Bankr. D. Kan. 2012) ...................................................................12

*M.H. and J.H. v. Omegle.com LLC*,
  2021 WL 1050234 (D.N.J. Mar. 19, 2021)..............................................................9

*Malik v. Cabot Oil & Gas Corp.*,
  710 Fed. App'x 561 (3d Cir. 2017).............................................................3, 7, 10

*Mallinckrodt PLC v. Airgas Therapeutics LLC*,
  2024 WL 1251260 (D. Del. Mar. 22, 2024) .........................................................11

*Marks v. Alfa Grp.*,
  369 Fed. App'x 368 (3d Cir. 2010).......................................................................8

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007)................................................................8, 9, 10

*Martinez v. Union Officine Meccaniche S.P.A.*,
   2023 WL 3336644 (3d Cir. May 10, 2023) ...............................................6

*In re Maxus Energy Corp.*,
   641 B.R. 467 (Bankr. D. Del. 2022) ........................................................16

*In re Merck & Co., Inc. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005)....................................................................22

*In re Millennium Lab Holdings II, LLC*,
   2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) .................................18

*In re MTE Holds. LLC*,
   2022 WL 3691822 (D. Del. Bankr. Aug. 24, 2022) .................................20

*In re Nat'l Serv. Indus., Inc.*,
   2015 WL 3827003 (Bankr. D. Del. June 19, 2015)..................................20

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
   263 F.Supp. 3d 498 (D. Del. 2017)............................................................4

*Novartis AG v. Actavis, Inc.*,
   243 F. Supp. 3d 534 (D. Del. 2017)..........................................................12

*In re Prudential Lines Inc.*,
   928 F.2d 565 (2d Cir. 1991).....................................................................22

*Przewozman v. Charity*,
   2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) ...........................................7

*Remick v. Manfredy*,
   238 F. 3d 248 (3d Cir. 2001).....................................................................9

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
   2022 WL 1978726, *rep. and rec. adopted*, 2022 WL 3576231 (D. Del. Aug.
   19, 2022) ................................................................................................3, 6

*Roe v. Wyndham Worldwide, Inc.*,
   2020 WL 707371 (D. Del. Feb. 12, 2020) ...............................................5, 7

*Round Rock Research LLC v. ASUSTeK Computer Inc.*,
   967 F. Supp. 2d 969 (D. Del. 2013)...........................................................4

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)......................................................................14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 513 B.R. 222 (S.D.N.Y. 2019) ...................................................................16, 17

*In re Sheehan*,
 48 F.4th 513 (7th Cir. 2022) ..............................................................................9

*In re Syntax-Brillian Corp.*,
 2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) ...........................................18

*In re USDigital, Inc.*,
 443 B.R. 22 (Bankr. D. Del. 2011) ...................................................................18

*vMedex, Inc. v. TDS Operating, Inc*.,
 2020 WL 4925512 (D. Del. Aug. 21, 2020) .......................................................5

*Walden v. Fiore*,
 571 U.S. 277 (2014)............................................................................................9

*In re Wilmington Trust Sec. Litig.*,
 2017 WL 2467059 (D. Del. June 7, 2017)..........................................................2

*In re Zetta Jet USA, Inc.*,
 624 B.R. 461 (Bankr. C.D. Cal. 2020)..............................................................17

**Rules and Statutes**

11 U.S.C. § 362(a)(3)....................................................................................21, 22

11 U.S.C. § 544...................................................................................................17

11 U.S.C. § 544(a) ..............................................................................................12

11 U.S.C. § 547...................................................................................................17

11 U.S.C. § 547(b) ..............................................................................................12

11 U.S.C. § 548..............................................................................................16, 17

11 U.S.C. § 548(a)(1)..........................................................................................12

11. U.S.C. § 550...................................................................................................17

Fed. R. Civ. P. 8 .................................................................................................18

Fed. R. Civ. P. 9 .................................................................................................18

Fed. R. Civ. P. 12 .............................................................................................5, 18

Fed. R. Civ. P. 44.1 ............................................................................................12

## PRELIMINARY STATEMENT[2]

Plaintiffs cannot overcome their Complaint's fatal flaws, which require dismissal of all claims against Mirana.

With respect to jurisdiction: this dispute concerns transactions that occurred ***outside the U.S.***, between ***non-U.S. parties***, subject to a contract governed by ***non-U.S. law***.  Mirana is incorporated in the Seychelles, has its principal place of business in Singapore, and has no U.S. office.  It maintained an account on a cryptocurrency exchange offered exclusively to non-U.S. customers owned and operated by FTX.com, a non-U.S. party.  Plaintiffs seek to avoid digital asset transfers that are entirely unconnected to the U.S., plus one *de minimis* fiat currency withdrawal.  Plaintiffs do not contest—and therefore concede—these facts.

Instead, Plaintiffs seek to establish jurisdiction based on alleged "post-petition conduct" outside the U.S. that purportedly impacted the Debtors' estates in the U.S.  First, the alleged ***postpetition*** conduct plainly has nothing to do with the ***prepetition*** challenged transfers, and so cannot create jurisdiction with respect to those claims.  Second, Plaintiffs misapply *Calder v. Jones*, 465 U.S. 783 (1984) and its progeny.  Under *Calder*, non-U.S. conduct is relevant to jurisdiction only where non-U.S. acts are "expressly aimed" at the U.S., among other requirements.  Plaintiffs make no such showing.  Plaintiffs' allegations that Mirana has other random touch points with the U.S. have no connection with Plaintiffs' claims and are irrelevant for jurisdictional purposes.  Plaintiffs' claims thus fail because they fail to plead minimum contacts with the U.S. that are specific to their asserted causes of action.  Plaintiffs have failed to demonstrate that their request for unspecified jurisdictional discovery would be anything other than a fishing expedition.  That request should be denied.

---

[2] Capitalized terms not defined herein are as defined in Mirana's opening brief ("<u>Mot.</u>").

Plaintiffs' substantive arguments fare no better.  Plaintiffs cannot succeed on any avoidance claim because U.S. avoidance powers do not extend to extraterritorial transfers, like those at issue here.  Those avoidance claims also fail because Plaintiffs had no interest in the property they seek to recover.  FTX's Terms of Service (the "Terms"), which Plaintiffs ask the Court to ignore despite being the very contract that forms the basis of Plaintiffs' claims, make clear that Mirana retained title to the assets in its FTX.com account.  Plaintiffs' fraudulent transfer claims also fail because Plaintiffs have not pled facts that demonstrate Plaintiffs' intent to hinder, delay, or defraud creditors in making transfers to Mirana.  The Complaint, in fact, demonstrates the opposite.  Like so many other innocent FTX customers, Mirana—which Plaintiffs do not claim had *any role* in FTX's siphoning of billions of customer funds or falsifying financial records—sought to exit FTX.com once Debtors' fraud and financial instability were revealed.  Finally, Plaintiffs' asserted stay violation claim fails because they have not pled any conduct by Mirana in connection with that dispute, that Mirana exercised control over the Debtors' tokens, or that Plaintiffs were harmed.

In sum, the Opposition ("Opp.") does not salvage Plaintiffs' deficient pleadings and the Court should dismiss all claims against Mirana with prejudice.

## **ARGUMENT**

### I.   **The Court Should Dismiss All Claims Against Mirana for Lack of Personal Jurisdiction**

#### A.   **Plaintiffs Fail to Show a Prima Facie Basis for General Jurisdiction**

Plaintiffs do not respond to Mirana's arguments that they failed to establish general jurisdiction.  *See* Mot. 15-16.  Indeed, Plaintiffs do not even mention general jurisdiction.  *E.g.*, Opp. 1 (invoking "specific jurisdiction").  Thus, Plaintiffs have waived any contention this Court may exercise general jurisdiction.  *See In re Wilmington Trust Sec. Litig.*, 2017 WL 2467059, at *2 (D. Del. June 7, 2017) ("When a responding party fails to defend against an issue which is the

subject of a motion, courts consistently construe the failure to respond as an abandonment of the Issue…").  In any event, Mirana is not subject to general jurisdiction in the U.S.

It is uncontroverted Mirana is incorporated and has its principal place of business outside the U.S.  Compl. ¶ 25; Chen Dec. ¶¶ 3-5.  Those facts are dispositive, as "it is 'incredibly difficult to establish general jurisdiction over a corporation in a forum *other* than the place of incorporation or principal place of business.'"  *Malik v. Cabot Oil & Gas Corp.*, 710 Fed. App'x 561, 564 (3d Cir. 2017) (italics in original; cleaned up).

While Plaintiffs assert one Mirana director (Yaxi Zhu) "lists her location on X (formerly Twitter) as New York City," they do not argue this supports general jurisdiction.  Opp. 15.  It does not.  This Court should not consider a hearsay statement from an unauthenticated, undated, partial screenshot of a third-party social media page.  *See Rockwell Automation, Inc. v. EU Automation, Inc.*, 2022 WL 1978726, at *10 & n.117 (D. Del. June 6, 2022) (purported "'evidentiary' support" from "LinkedIn profiles" was "insufficient to support … jurisdiction"), *rep. and rec. adopted*, 2022 WL 3576231, at *1 n.1 (D. Del. Aug. 19, 2022).  Nor could the "location" appearing in a social media profile purportedly created in "August 2014" be probative of Ms. Zhu's domicile at any relevant time.  McGuire Ex. 2.[3]  Ms. Zhu explains in her accompanying declaration that she is a citizen of China whose primary residence and business address have been in Singapore at all relevant times.  Zhu Dec. ¶¶ 3-5, 7-8.  That she visits New York City an average of several weeks a year and owns an investment property there is not to the contrary.  *Id.* ¶ 7.

Regardless, Mirana's primary office in Singapore is where "high level officers direct, control, and coordinate the corporation's activities," and hence its principal place of business.

---

[3] Citations to "McGuire Ex." refer to exhibits to the Declaration of Matthew B. Maguire, filed by Plaintiffs [D.I. 63]; citations to "Zhu Dec." refer to the accompanying Declaration of Yaxi Zhu, dated May 8, 2024; citations to "2nd Chen Dec." refer to the accompanying Second Declaration of Weisheng Chen, dated May 8, 2024.

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F.Supp. 3d 498, 503 (D. Del. 2017) (quotation marks omitted); *see also* Chen Dec. ¶¶ 3, 5.  One director spending a fraction of the year visiting the U.S. is not the "exceptional case" that could make Mirana "at home" here.  *See BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citations omitted) (general jurisdiction where "war had forced the defendant … to temporarily relocate the enterprise" to forum).  Likewise, that a handful of independent contractors worked for Mirana remotely from the U.S. over the years, or that Mirana "invested" in two purportedly "U.S.-based companies" (Opp. 15; *see also* 2nd Chen. Dec. ¶¶ 4-5), does not establish general jurisdiction.  *See*, *e.g.*, *BNSF Railway Co.*, 581 U.S. at 402, 414 (no general jurisdiction where defendant "has over 2,000 miles of railroad track and more than 2,000 employees" in forum, but is "[n]either incorporated nor headquartered there"); Mot. 16.[4]

### B.   Plaintiffs Fail to Show a Prima Facie Basis for Specific Jurisdiction

Plaintiffs do not dispute the rule that specific jurisdiction "is evaluated on a claim-by-claim basis."  *Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 974 (D. Del. 2013); Mot. 17.  Plaintiffs thus concede they bear the burden to establish specific jurisdiction over each individual claim.  Plaintiffs have not met their burden as to any claim pled against Mirana.

### 1.   Claims to Avoid Alleged "Digital Asset" Withdrawals

Plaintiffs' principal claims against Mirana seek to avoid as preferential or fraudulent transfers 1,039 virtual withdrawals of cryptocurrency tokens (*i.e.*, the Digital Asset Withdrawals).  Compl. ¶¶ 58, 78-98, 111-113 & Exhibits A-1 and C-1.  Those "digital assets [allegedly are] currently valued at approximately *$838 million*."  Compl. ¶ 9 (emphasis in original).  Yet those transfers go almost unmentioned in Plaintiffs' personal jurisdiction argument.  Opp. 1-2, 11-15.

Plaintiffs do not dispute: (i) the alleged transferor (FTX.com) and transferee (Mirana) were

---

[4] Those "investments" were not "funded in part by the … withdrawals" (Opp. 15, 23), nor do Plaintiffs present competent evidence of such assertion.  *See* 2nd Chen Dec. ¶¶ 3-5; Part II, *infra*.

both foreign (Chen Dec. ¶¶ 1-6; Compl. ¶¶ 21, 25; Mot. 5-8); (ii) such transfers were made pursuant to "withdrawals ... from [Mirana's] FTX.com exchange account" (Compl. ¶ 58) by Mirana's Asset Management Team in Singapore (Chen Dec. ¶ 10); (iii) FTX.com purported to be owned and operated by a foreign company (FTX) and to offer services only to "non-US customers" like Mirana (Compl. ¶ 21; Mot. 6-7); and (iv) the Terms mandated that disputes concerning such withdrawals be governed by English law and adjudicated by arbitration in Singapore, where Mirana has its principal place of business (Ex. 5 §§ 38.11, 38.12).  Thus, Plaintiffs waive any challenge to the facts establishing that the Digital Asset Withdrawals were wholly foreign.  *See*, *e.g.*, *vMedex, Inc. v. TDS Operating, Inc*., 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020).[5]

Plaintiffs have not identified **any** Mirana contacts with the U.S. related to **any** of these 1,039 alleged transfers.  Accordingly, Plaintiffs fail to make a prima facie showing of either mandatory prong of the specific jurisdiction test: (i) "purposeful availment," *i.e.*, "minimum contacts with the forum ... that show the defendant took a deliberate act reaching out to do business in that [forum]"; and (ii) that defendant's contacts create "a strong relationship among the defendant, the forum, and the litigation." *Hepp v. Facebook*, 14 F.4th 204, 207-08 (3d Cir. 2021) (citations omitted).  These claims therefore should be dismissed.

Unable to allege any forum contacts concerning the Digital Asset Withdrawals, Plaintiffs assert that, several months after the November 11, 2022 Petition Date, Mirana made "investments" in two "U.S.-based companies" in February and March 2023, that were "likely funded in part by the ... withdrawals." Opp. 15, 23; *see also* McGuire Ex. 3-7.  There are several reasons this assertion does not establish specific jurisdiction over Mirana.

---

[5] Plaintiffs do not dispute that "a Rule 12(b)(2) motion" permits consideration of "factual issues outside the pleadings." *See Roe v. Wyndham Worldwide, Inc.*, 2020 WL 707371, at *2 (D. Del. Feb. 12, 2020) (citations omitted); Mot. 14. Nor do Plaintiffs question the authenticity of the Terms, which they filed in these chapter 11 cases. Daucher Dec. ¶ 6; Ex. 5.

*First*, Plaintiffs rely on speculation and hearsay statements derived from unauthenticated screenshots of third-party websites, which should be disregarded. *See Rockwell Automation, Inc.*, 2022 WL 1978726, at *10 & n.117. *Second*, none of those screenshots in any way suggests such "investments" were "funded … by the [allegedly] improper withdrawals." Opp. 23. *Third*, no such "investments" were so "funded." *Id.* Mirana's Group Financial Controller attests in an accompanying declaration that neither Mirana's $300,000 investment in Kaito Inc., nor Mirana's $999,992.66 investment in Eigen Labs, Inc., was funded by digital assets withdrawn from Mirana's FTX.com Account. 2nd Chen Dec. ¶¶ 2-5. *Fourth*, even if Plaintiffs' assertions about these "investments" were supported by competent evidence and factually accurate (they are neither), they lack a "strong relationship"—or, indeed, any relationship—with Plaintiffs' claims to avoid Digital Asset Withdrawals that allegedly occurred months earlier. *See Hepp*, 14 F.4th at 208; *Martinez v. Union Officine Meccaniche S.P.A.*, 2023 WL 3336644, at *2 (3d Cir. May 10, 2023) (no specific jurisdiction despite defendant manufacturer's post-sale "travel[] to New Jersey" for "weeks at a time" to "train [buyer] and maintain the machine," because "core" of products liability claim instead related to prior "design and manufacture of the machine" outside the forum). Plaintiffs seek to impose *transferee* liability on Mirana based solely on transfers allegedly made *to* Mirana, not *by* Mirana. Unfounded allegations that, months later, Mirana invested withdrawn digital assets in "U.S.-based companies" (Opp. 15) are irrelevant to jurisdiction.

Even if withdrawn digital assets had been used in that manner (they were not), Plaintiffs cite no authority finding specific jurisdiction over a foreign transferee because they subsequently transferred the proceeds to a third party located in the forum. Indeed, at least one bankruptcy court specifically rejected such allegations as irrelevant. *See In re Hellas Telecomms. (Luxembourg) II SCA*, 524 B.R. 488, 512 (Bankr. S.D.N.Y. 2015) ("Any subsequent transfer of redemption

proceeds made by the Non–U.S. Defendants to recipients in the U.S. is irrelevant to their liability as transferees and therefore cannot constitute sufficient minimum contacts for purposes of establishing specific jurisdiction.").  The same conclusion is warranted here.

### 2.    Claims to Avoid Alleged "Fiat Currency" Withdrawals

Plaintiffs do not respond to Mirana's arguments that they failed to show specific jurisdiction over the two alleged Fiat Currency Withdrawals from FTX to Mirana, which go unmentioned in the Opposition.  *See* Mot. 18-20.  Thus, Plaintiffs concede those arguments. Among other things, Plaintiffs make no attempt to rebut Mirana's showing that FTX never made the alleged $500,000 transfer.   Chen Dec. ¶¶ 12-14;  Ex. 8 (withdrawal history excerpt). Accordingly, the Court should disregard Plaintiffs' "mere … allegations" of a $500,000 transfer. *See*, *e.g.*, *Roe v. Wyndham*, 2020 WL 707371, at *2 (citations omitted); *see also* Mot. 14.

As for the sole remaining alleged $100 transfer, Plaintiffs do not dispute: (i) that it was between a foreign transferor (FTX) and foreign transferee (Mirana) pursuant to a withdrawal request via FTX.com by Mirana personnel in Singapore (Chen Dec. ¶ 10; Compl. ¶ 27); (ii) FTX.com purported to be foreign owned and operated and to offer services only to non-U.S. customers (Compl. ¶ 21; Mot. 6-7); and (iii) the Terms mandated that disputes concerning such withdrawal be governed by English law and adjudicated by Singapore arbitration (Ex. 5 §§ 38.11, 38.12).  Plaintiffs proffer no alleged Mirana contacts with the U.S. related to such transfer.  Nor do Plaintiffs dispute that a bare allegation the transfer was paid in U.S. dollars is insufficient.  *See Przewozman v. Charity*, 2023 WL 2562537, at *12 (E.D.N.Y. Mar. 17, 2023) (rejecting assertion of personal "jurisdiction over any financial transaction conducted in U.S. dollars").

In any event, exercising specific jurisdiction over claims to avoid a single $100 transfer would not "otherwise 'comport[] with fair play and substantial justice.'"  *Malik*, 710 Fed. App'x at 564-65 (citations omitted); *see also* Mot. 19-20.  The decisions cited by Plaintiffs (Opp. 19-21)

are distinguishable.  None addressed burdening a foreign defendant with litigating a $100 claim in a forum on the opposite side of the globe from its principal place of business.  Chen Dec. ¶¶ 3, 5.[6]

### 3.   Claim for Alleged "Violation of Automatic Stay"

Count Seven alleges Mirana violated the "automatic stay" when "a Mirana subsidiary" submitted the "fifth largest 'vote' in favor of restricting Debtors' BIT tokens" in a virtual "community vote" of BIT "token holders."  Compl. ¶¶ 76-77 & n.20.  Plaintiffs do not dispute (and thus concede) that these allegations fail to plead any contact by Mirana with the U.S.  *See* Mot. 20-21.  Instead, Plaintiffs assert Mirana is subject to specific jurisdiction under *Calder*, 465 U.S. at 783, "notwithstanding that these actions purportedly took place abroad," because they allegedly caused "harm in the United States."  Opp. 12.  Plaintiffs are wrong and misapply *Calder*, which requires more than conclusory allegations of harm in the forum.

Under "the *Calder* 'effects test,'" the Court "may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998).  This Circuit has "consistently emphasized that *Calder* should be applied narrowly."  *Marks v. Alfa Grp.*, 369 Fed. App'x 368, 370 (3d Cir. 2010).  Plaintiffs must show that (1) "defendant committed an intentional tort"; (2) "plaintiff felt the brunt of the harm in the forum"; and (3) "defendant expressly aimed his tortious conduct at the forum."  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).  The "effects test" is "cut from the same cloth" as the "traditional specific jurisdiction analysis," insofar as the "effects test prevents a defendant from being haled into a jurisdiction … if [he] did not expressly aim his conduct at that state."  *Id*.  In other words, "the effects test offers no escape from the essential prerequisite of

---

[6] *See, e.g.*, *In re DBSI, Inc.*, 451 B.R. 373, 377 (S.D.N.Y. 2012) (jurisdiction in Delaware over Idaho insider defendant who received over $6 million in challenged transfers) (cited at Opp. 20).

personal jurisdiction, *i.e.*, whether the defendant purposefully targeted the forum." *M.H. and J.H. v. Omegle.com LLC*, 2021 WL 1050234, at *5 (D.N.J. Mar. 19, 2021).

Plaintiffs fail to satisfy the "'expressly aimed' element." *Marten*, 499 F.3d at 297. Participating in a virtual "community vote" of all BIT token holders via an internet voting site (Compl. ¶ 77 & nn.18, 20) is not conduct expressly aimed at the U.S. *See Remick v. Manfredy*, 238 F. 3d 248, 259 & n.3 (3d Cir. 2001) (finding "posting of information … on an Internet website" insufficient to show "defendants expressly aimed . . . at Pennsylvania"); *Marten*, 499 F.3d at 293 (finding expulsion of Pennsylvania resident "from an internet-based educational program" not conduct "expressly aimed ... at Pennsylvania"). That Plaintiffs filed bankruptcy petitions in the U.S. and now claim to be managed here does not change that conclusion. *See Walden v. Fiore*, 571 U.S. 277, 289 (2014) ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."); *IMO Indus., Inc.*, 155 F.3d at 265 ("[T]hat the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."). Indeed, at least one Circuit Court of Appeals has, on similar grounds, rejected a debtor's argument that *Calder* permits the exercise of personal jurisdiction over a foreign defendant whose conduct outside the U.S. allegedly violated the automatic stay. *See In re Sheehan*, 48 F.4th 513, 525-26 (7th Cir. 2022) (foreign creditor's acts in Ireland not "expressly aimed" at Illinois despite having "effect upon [debtor] in Illinois").[7]

Only if the "expressly aimed" element is met should the Court consider the effects test's other elements. *See Marten*, 499 F.3d at 297. But Plaintiffs have not satisfied those elements

---

[7] *Calder* involved "ample" contacts with the forum (California) absent here: "defendants relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State." *Walden*, 571 U.S. at 287.

either.  ***First***, Plaintiffs cite no authority holding that an alleged "automatic stay" violation by reducing the value of estate property is an intentional tort.  *See In re Astropower Liquidating Trust*, 2006 WL 2850110, at *5 (Bankr. D. Del. Oct. 2, 2006) (*Calder* "not applicable" to constructive fraudulent transfer claim "which is not a tort").  ***Second***, Plaintiffs neither plead any facts nor cite any authority demonstrating that "the brunt" of any potential losses in value of BIT tokens would be "felt" in the U.S. merely because the foreign Plaintiffs filed bankruptcy petitions here.  *See Marten*, 499 F.3d at 299 n.4 (finding it "difficult to determine the earthbound location" of "harm" caused by "expulsion" of plaintiff from "web-based … educational program").  Thus, Plaintiffs have not established any of the elements necessary to invoke *Calder*'s "effects test."[8]

Because Plaintiffs cannot establish personal jurisdiction over Mirana, the Complaint should be dismissed as to Mirana without reaching the sufficiency of the claims.

### C.    Plaintiffs Fail to Show an Entitlement to Jurisdictional Discovery

Plaintiffs assert they "should be able to take jurisdictional discovery" in response to this motion.  Opp. 24.  But "[j]urisdictional discovery is not available merely because the plaintiff requests it."  *Malik*, 710 Fed. App'x at 565.  Rather, Plaintiffs may "conduct jurisdictional discovery" only if they "present[] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [Mirana] and the forum state.'"  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).  Plaintiffs have not done so and are not entitled to discovery from Mirana.

This is not a case "where the record is ambiguous as to whether [Mirana] has purposefully availed itself of the forum," or there are relevant "factual disputes" discovery would resolve.  Opp. 21-22.  The record is clear: Plaintiffs failed to show ***any*** contact by Mirana with the U.S.

---

[8] Plaintiffs' assertion Mirana "control[led]" BitDAO (Opp. 14) misconstrues the Complaint.  *See* Part V, *infra*. Regardless, Plaintiffs do not allege BitDAO expressly aimed conduct at the U.S.

concerning the alleged Withdrawals or the BitDAO community vote, let alone contacts sufficient to show Mirana purposefully availed itself of the U.S. and created a strong relationship between Mirana, the U.S., and each claim.  *See* Part I.B, *supra*; Mot. 16-21.  Plaintiffs have not shown any "discrepancies" concerning Mirana director Yaxi Zhu (Opp. 23), or that her domicile is relevant to specific jurisdiction.  Indeed, she is not even mentioned in the Complaint.

Similarly, Plaintiffs have not shown a basis for unspecified discovery concerning the purported "interconnected nature" of Mirana, Bybit, and Time Research.  Opp. 23.  This is not a case where Plaintiffs seek to impute the contacts of a (hypothetical) U.S. subsidiary to Mirana as its foreign parent.  It is uncontroverted that no subsidiary of Mirana is incorporated or maintains an office in the U.S., and that neither Bybit nor Time Research is a Mirana subsidiary (or its parent).  Chen Dec. ¶¶ 6, 15.  In any event, Plaintiffs do not allege that Bybit or Time Research is subject to general jurisdiction in the U.S., or that either company purposefully directed any contacts toward the U.S. related to claims asserted against Mirana.

This Court should reject Plaintiffs' request for jurisdictional discovery for the additional reason that Plaintiffs' "vague assertions about the information they hope to find in jurisdictional discovery" lack "reasonable particularity."  *Mallinckrodt PLC v. Airgas Therapeutics LLC*, 2024 WL 1251260, at *5 (D. Del. Mar. 22, 2024) (denying request for discovery concerning "ALSA's control over the Airgas defendants" and "contacts with the U.S.") (citations omitted).  Plaintiffs' assertion that they seek "to confirm the relationship, organizational structure, transactions, and personnel associated with each Defendant" is vague and lacks particularity as to what information Plaintiffs seek and how it would establish specific jurisdiction over Mirana.  Opp. 24.

## II.    Plaintiffs Fail to Adequately Allege A Property Interest in the Withdrawn Assets

Even if Plaintiffs could establish personal jurisdiction over Mirana, there are additional reasons to dismiss each claim against Mirana.  First, Plaintiffs cannot pursue avoidance actions

absent an enforceable interest in the property they seek to recover.  *See* 11 U.S.C. §548(a)(1); 11

U.S.C. § 544(a); 11 U.S.C. § 547(b); *In re Lone Star Pub Operations, LLC*, 465 B.R. 212, 216

(Bankr. D. Kan. 2012).  Plaintiffs argue that they have an "enforceable interest" in Mirana's assets

simply because, at one point in time, Mirana placed those assets on the FTX.com exchange.  Opp.

24-30.  This argument is refuted by the Terms, which govern the relationship between Mirana and

Plaintiffs and may properly be considered to resolve the instant motion.

### A.    FTX's Terms of Service Show the Withdrawn Assets are Mirana's Property

Plaintiffs assert that the Terms do not bar their allegation that Plaintiffs had a property

interest in Mirana's withdrawn assets.  Opp. 26-30.  Plaintiffs are incorrect.  The Terms expressly

provide that "[a]ll Digital Assets are held in [Mirana's] Account on the…basis…[that t]itle…shall

at all times remain with [Mirana] and shall not transfer to FTX."  Ex. 5 § 8.2.6.  Accordingly,

"[n]one of the Digital Assets in [Mirana's] Account are the property of, or shall or may be loaned

to, FTX," and FTX "does not represent or treat Digital Assets in [Mirana]'s Accounts as belonging

to FTX."  *Id.*

Plaintiffs argue that the Terms "and their construction" nevertheless create issues of fact.

Opp. 27.  Not so.  The Terms are governed by English law.  Ex. 5 § 38.11; *see also* Ex. A

(Declaration of Foreign Law) ¶ 24.[9]  "Under English law, the words of a contract are interpreted

in accordance with their plain and ordinary meaning."  *In re Am. Home Mortg. Holdings, Inc.*, 386

F. App'x 209, 212 (3d Cir. 2010) (quoting *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech.*

*Inc.*, 232 F. Supp. 2d 294, 298 (D. Del. 2002)).  The Terms could not be clearer or less ambiguous

that "Mirana is expressly to remain the owner of the assets."  Ex. A ¶ 32; *see also id.* ¶¶ 39, 41.

---

[9] Mirana submits the attached Declaration of Foreign Law pursuant to Fed. R. Civ. P. 44.1. S*ee also Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 538, 540 n.3 (D. Del. 2017) (considering a foreign law expert declaration, pursuant to Rule 44.1, on a motion to dismiss).

The Terms thus dictate that assets in Mirana's FTX.com account "were held by FTX on trust for Mirana." *Id.* ¶ 60.  Plaintiffs' arguments fail to create issues of fact where they do not exist.

**First**, Plaintiffs argue that Mirana does not have title to the fiat currency in its FTX.com account.  In doing so, they first concede that the Terms do in fact provide Mirana title to the digital assets.  Opp. 27-28.  Plaintiffs ignore that the Terms also explicitly allow for Mirana to withdraw its fiat currency "at any time."  Ex. 5 §8.3.7.  Thus, Mirana was both the beneficial owner of the assets and entitled to withdraw those assets from FTX.com at any time.  In any event, alleged fiat currency withdrawals are *de minimis* here.

**Second**, Plaintiffs claim that because the Terms are dated "May 13, 2022" they may not apply to Mirana's account, which was opened in 2021.  Opp. 28.  That argument is refuted by the Terms, which state that they may be revised "at any time" and become "effective…the first time you use the Services after the initial posting of the revised Terms ***and shall apply on a going-forward basis with respect to transactions initiated after the posting date***."  Ex. 5 §22.1 (emphasis added).  All transfers at issue postdate the effectiveness of the Terms.  Compl. Exs. A-1, C-1.

**Third**, Plaintiffs claim that Mirana's interpretation of the Terms is in dispute, but have not alleged an alternative interpretation under English law.  Opp. 28-29.  Instead, they assert, *ipse dixit*, that Mirana has no basis to claim that it retained ownership of the withdrawn assets because "FTX Group-controlled wallets were commingled with other assets and misused."  Opp. 29-30.  Plaintiffs' argument fails as a matter of law.  Even if the assets were held on a "commingled basis, without any identifiable allocation or segregation in relation to the claims of individual users," under English law, a "valid trust" for Mirana was established by the Terms, making Mirana the owner of the assets in its account.  Ex. A ¶ 44-52.  Plaintiffs cite no contrary authority.

- 13 -

**B.    Plaintiffs Do Not Have Title Over the Withdrawn Assets as a Matter of Law Simply Because Mirana Placed Its Digital Assets on the FTX.com Exchange**

Plaintiffs claim that it is "well-settled case law" that deposits in "accounts under the legal title of the debtor…are presumptively considered property of the debtor's estate." Opp. 24 (quoting *In re FBI Wind Down, Inc.*, 581 B.R. 387, 400 (Bankr. D. Del. 2018) (citation omitted)). However, Plaintiffs' citation to *In re FBI Wind Down* omits a critical caveat: "It is well-settled case law that any bank accounts under the legal title of the debtor, ***as well as any deposits in such accounts credited to the debtor***, are presumptively considered property of the debtor's estate." *Id.* (emphasis added to omitted language). The assets in Mirana's FTX.com account were not "credited to" the Plaintiffs, but—at all times—remained property of Mirana. Ex. 5 § 8.2.6. Plaintiffs' argument thus fails even under the authority they cite. Plaintiffs do not have an interest in Mirana's withdrawn assets and so cannot avoid transfers of those assets.

**C.    FTX's Terms of Service May Be Considered on the Motion to Dismiss as They Are Integral to the Complaint**

Attempting to salvage their claims against the dispute-ending Terms, Plaintiffs argue the Court may not consider the Terms because they are not explicitly referenced in the Complaint. Opp. 26. Plaintiffs are wrong. The Terms are "integral" to the Complaint—and therefore may be considered on this motion—so long as any claim in the Complaint is "'based on' [that] extrinsic document," notwithstanding Plaintiffs' strategic decision to avoid expressly citing such document. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The Terms define the entire relationship between Mirana and Plaintiffs, which is premised on the account Mirana opened on the FTX.com exchange. Compl. ¶46; *see also* Mot. 27-28. Indeed, the Terms define the "obligation [of FTX] to deliver to each Defendant the cryptocurrency or cash balances in Defendants' FTX.com accounts," on which Plaintiffs' base their "antecedent debt" allegation and preference claim. Compl. ¶ 92. For example, it is the Terms that provide that

- 14 -

"you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party." Ex. 5 § 8.2.6. Because Plaintiffs claims stand or fall based on the Terms, the Terms are integral to the Complaint despite Plaintiffs carefully avoiding referring to them. The Court should consider the Terms when deciding the Motion.

In sum, the Terms are *fatal* to Plaintiffs' causes of action, as they establish that they have no interest in the withdrawn assets. Counts One, Two, Three, and Five must be dismissed.

III.    **Counts One, Two, Three, and Five Must be Dismissed Because U.S. Avoidance Powers Do Not Apply Extraterritorially**

Counts One, Two, Three and Five must also be dismissed because U.S. avoidance powers do not apply extraterritorially. Plaintiffs do not dispute that most courts agree that avoidance actions are non-extraterritorial and only apply to conduct that is primarily U.S.-based. *See* Mot. 22-23 (collecting cases). Plaintiffs do not argue that their asserted avoidance actions are primarily U.S.-based, and thus concede that they are not.

Instead, Plaintiffs assert that "Defendants fail to note that every case in this Circuit and the only Circuit Court to have considered the issue have" found that U.S. avoidance law applies extraterritorially. Opp. 31. There are two problems with Plaintiffs' assertion. *First*, Plaintiffs' assertion that Defendants have not addressed those decisions is false, as Mirana directly addressed all the cases in question. *See* Mot. 23-24.

*Second*, Plaintiffs mischaracterize the cases from this District, which do *not* uniformly hold that avoidance actions apply extraterritorially. The first of the two such decisions, *In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017) does, as Defendants acknowledged, hold that avoidance actions may apply extraterritorially. The majority of courts to address the issue have rejected the *FAH* court's analysis. *See* Mot. 23-24. *FAH* also involved a U.S. debtor-transferor, which is not the case here. *See FAH*, 572 B.R. at 124. Moreover, "the only subsequent

reported decision in Delaware to address the issue did not follow *FAH*."  Mot. 24 (citing *In re Maxus Energy Corp.*, 641 B.R. 467 (Bankr. D. Del. 2022)).

Plaintiffs have misrepresented *Maxus* as supporting unconstrained extraterritorial application of U.S. avoidance powers.  To the contrary, *Maxus* stands for the unremarkable proposition that ***where the relevant conduct is domestic in nature***, U.S. avoidance powers may be used to recover property subsequently transferred outside the U.S.:

> the *Picard* court held that a "***domestic debtor's*** allegedly fraudulent, hindersome, or delay-causing transfer of property from the United States ***is domestic activity for the purposes of §§ 548(a)(1)(A) and 550(a)***.  The presumption against extraterritoriality therefore does not prohibit the debtor's trustee from recovering such property using § 550(a), regardless of where any initial or subsequent transferee is located."
>
> Thus, Repsol cannot assert that the Trust cannot pursue the YPFI Transfers because no relevant conduct occurred in the United States – ***here, Maxus, a domestic initial transferor, transferred the challenged assets*** to YPFI, which made the subsequent transfer to Repsol. The Trustee can seek recovery under § 548 extraterritorially to claw back the 2001-2002 YPFI Transfers.

*Maxus Energy Corp.*, 641 B.R. at 561-62 (citations and footnote omitted) (emphasis added).  Plaintiffs quote only the final sentence, leaving the impression that *Maxus* supports application of U.S. avoidance powers absent a domestic transfer.  It does not.

Plaintiffs' argument that Sections 547, 548, and 550 apply extraterritorially by virtue of cross reference to Section 541's definition of "property of the estate" is also misplaced.  Courts have repeatedly rejected this argument, holding that, "[t]hough clever, the theory is neither logical nor persuasive."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 229 (S.D.N.Y. 2019).  Instead, "whether 'property of the estate' includes property 'wherever located' is irrelevant to the instant inquiry: fraudulently transferred property becomes property of the estate only after it has been recovered by the Trustee, so ***[S]ection 541 cannot supply any extraterritorial authority that the avoidance and recovery provisions lack on their own.***"  *In re CIL Ltd.*, 582

- 16 -

B.R. 46, 88 (Bankr. S.D.N.Y. 2018) (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. at 229) (emphasis added).

**Finally**, Plaintiffs' reliance on *Begier v. IRS*, 496 U.S. 53, 58-59 (1990) is mistaken. "*Begier* did not deal with the issue of extraterritoriality." *In re Ampal–Am. Israel Corp.*, 562 B.R. 601, 608 (Bankr. S.D.N.Y. 2017); *see also In re CIL Ltd.*, 582 B.R. at 90 ("*Begier* did not address issues relating to the extraterritorial application of the avoidance provisions."). To the extent *Begier* is relevant at all, it is because there "[t]he Supreme Court read section 541(a) as a limitation on the trustee's avoiding powers, not as an expansion of those powers." *In re Ampal-Am. Israel Corp.*, 562 B.R. at 612.

Instead, as Plaintiffs concede, a statute only applies extraterritorially if Congress "has affirmatively and unmistakably instructed" that it should. Opp. 30 (quoting *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417-18 (2023)). Congress said nothing of the sort with respect to Bankruptcy Code Sections 547, 548, or 550. *See, e.g., In re CIL Ltd.*, 582 B.R. at 84 ("Nothing in the language of sections 544, 548 and 550 of the Bankruptcy Code suggests that Congress intended those provision to apply to foreign transfers."); *In re Zetta Jet USA, Inc.*, 624 B.R. 461, 504 (Bankr. C.D. Cal. 2020) (same as to §§ 547, 548, or 550). Counts One, Two, Three, and Five must be dismissed.

## IV.    The Court Must Dismiss Counts One and Two Because Plaintiffs Have Not Adequately Alleged an Intent to Hinder, Delay or Defraud Creditors

Counts One and Two must be dismissed because allegations that FTX Insiders and Debtors misappropriated customer funds for their own benefit do not plead fraud **as to Mirana's Withdrawals**, and Plaintiffs otherwise fail to plead actual fraudulent intent or badges of fraud.

**A.    Plaintiffs Cannot Conclusorily Plead that Mirana, and Withdrawals Made By It, Were "Part and Parcel" to FTX's Fraudulent Scheme**

Plaintiffs claim to have sufficiently pled Debtors' fraudulent intent by describing a "larger fraudulent scheme" alleged in the Complaint, of which the transfers to Mirana were "part and parcel." Opp. 35.  In doing so, Plaintiffs contend that Rule 9(b) does not apply to an independent debtor-in-possession.   Opp. 34.   To the contrary, Plaintiffs remain subject to the "pleading requirements under Rules 8, 9, and 12(b)(6)." *In re AgFeed USA, LLC*, 546 B.R. 318, 328 (Bankr. D. Del. 2016).  Furthermore, Plaintiffs must plead Debtors' fraudulent intent specific ***to Mirana's Withdrawals***.  *See, e.g.*, *In re USDigital, Inc.*, 443 B.R. 22, 34 (Bankr. D. Del. 2011) ("relaxed Rule 9(b) requirements require the trustee to do more than merely identify the allegedly fraudulent transfers").[10]

Plaintiffs fail to connect FTX Insiders' fraud with Mirana's withdrawals.  On one hand, the FTX Insiders indiscriminately siphoned billions from FTX.com for personal use while falsifying financial records to project a false image of stability and profitability.  Opp. 35-36 (citing Compl. ¶¶ 41, 44-45).  On the other, Mirana sought to withdraw its own assets "after news of the FTX Group's financial condition triggered a full-blown liquidity crisis," which FTX.com allegedly prioritized processing due to Mirana's purported "VIP" status.  Opp. 36 (citing Compl. ¶ 51).

The contrast with the facts in *Drivetrain, LLC v. X. Com., Inc.*, 2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023), upon which Plaintiffs chiefly rely, could not be more stark.[11]  In *Drivetrain*,

---

[10] Debtors in cases Plaintiffs rely upon themselves failed to sufficiently plead fraudulent transfer claims even under a "relaxed" Rule 9(b) pleading standard.  *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 544-46 (Bankr. D. Del. 2009) (dismissing fraudulent transfer claims in "the absence of facts indicating anything other than an arm's length relationship").

[11] The same is true for Plaintiffs' other inapposite case law, where debtors sufficiently pled direct evidence of intent to hinder, delay, or defraud creditors.  *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *6 (Bankr. D. Del. Feb. 28, 2019) (seeking to recover bank fees paid in order facilitate allegedly fraudulent dividend recapitalization paid to corporate insiders); *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *5 (Bankr. D. Del. Feb. 8, 2016) (allegations of fraudulent credit memos and invoice underling transfers to bank); *In re Enron Corp.*, 328 B.R.

the debtor entered into a series of contracts with a third-party transferee expressly with the goal to trick investors into believing that the company was successful and generating significant revenue. *Id.* at *3. The contracts served no purpose other than to allow the insider to perpetuate fraud, while the transferee received commission payments despite never even requesting payment. *Id.* at *2. None of those facts are present here. Plaintiffs do not allege that Mirana's contract with the Debtors was fraudulent, that Mirana had non-public information concerning FTX's fraud or financial distress, or that FTX prompted Mirana to withdraw its assets.

Ultimately, Plaintiffs' unsupported theory that FTX prioritized payment to Mirana in exchange for Mirana's silence is contradicted by the facts Plaintiffs have pled. Not only have Plaintiffs failed to plead that Mirana knew anything the public did not, Plaintiffs ***admit*** that it was only "[a]fter it became clear that the FTX Group was in financial distress" and FTX's fraudulent balance sheet became public that Mirana joined the "onslaught" of customer withdrawals that had already triggered the "full-blown liquidity crisis" that preceded FTX's collapse. Compl. ¶¶ 49-51. As such, it is not reasonable to infer that Mirana's withdrawals were made "to continue the fraudulent [] scheme" or that "the scheme would have unraveled" had Mirana's withdrawals not been processed. *See In re Live Well Financial Inc.*, 652 B.R. 699, 707 (Bankr. D. Del. 2023). The Debtors' scheme had already unraveled, leaving Mirana, like other innocent customers, scrambling to protect its assets. FTX's alleged prioritization of Mirana during this scramble—even if true— simply is not fraud. *See, e.g.*, *In re Foxmeyer Corp.*, 296 B.R. 327, 337 (Bankr. D. Del. 2003).

### B.    Plaintiffs Also Fail to Plead Any Badges of Fraud

Plaintiffs claim it was unnecessary to plead badges of fraud where they have pled "direct evidence" of Debtors' "actual intent." Opp. 34, 41. Not so. Plaintiffs failed to "adequately

---

58, 73–74 (Bankr. S.D.N.Y. 2005) (alleging transferee bank had non-public knowledge of Enron's precarious financial position, bank attempted to evaded contractual terms, and Enron wrongfully transferred assets to bank).

allege[] facts that would support *a direct inference that a transfer* was made with the actual intent"

to defraud.  *In re MTE Holds. LLC*, 2022 WL 3691822, at *3 (D. Del. Bankr. Aug. 24, 2022)

(emphasis added); *see also supra* Part IV.A.  Nevertheless, Plaintiffs claim they adequately pled

three badges of fraud.  *See* Opp. 38-41.  None are persuasive.

    *First*, Plaintiffs claim a "close relationship" between Mirana and Plaintiffs because Mirana

was accorded "VIP" status on the FTX.com exchange and a "private Telegram group" with FTX

Group employees.  Opp. 39 (citing Compl. ¶¶ 47, 50-52).  This is far from the type of "family,

friendship or close associate relationship" that courts have found may constitute a badge of fraud.

*See, e.g.*, *In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *5 (Bankr. D. Del. June 19, 2015)

(officers and board members sufficient for close relationship); *In re Harris*, 2003 WL 23096966,

at *2 (Bankr. D. Del. Dec. 30, 2003) (close family members sufficient for close relationship).

    *Second*, Plaintiffs claim to have pled FTX's insolvency as (1) Alameda owed FTX billions

of dollars, (2) by September 2022, Alameda could not repay what it owed, and (3) the FTX Insiders

"sought to cover up the growing liquidity crisis."  Compl. ¶ 43; Opp. 40.  Plaintiffs claim that these

allegations evidence improper accounting (Opp. 40), but that standing alone does not show

insolvency.  *See In re DBSI*, 447 B.R. 243, 247 (Bankr. D. Del. 2011) (insolvency pled where

entities failed to properly account for their assets and liabilities, *as well as* never generated a profit,

had liabilities exceeding their assets, and all depended on monetary distributions).[12]

---

[12] Further undercutting Plaintiffs' arguments with respect to insolvency, shortly before Mirana's submission of this Reply, Debtors filed an amended chapter 11 plan and disclosure statement in which they project customary recoveries ranging from 127%-142% and providing for payment of postpetition interest.  *See Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates*, filed May 7, 2024 [D.I. 14300]; *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-In-Possession*, filed May 7, 2024 [D.I. 14301].  That projection also demonstrates that the challenged transfers did not allow Mirana to recover more than it would have in a hypothetical Chapter 7 liquidation of the Debtors.

**Third**, Plaintiffs recite in conclusory fashion that Mirana made withdrawals "shortly before or shortly after a substantial debt was incurred." Compl. ¶ 56. Plaintiffs assert that the "substantial debt" incurred were funds withdrawn from the FTX.com exchange by other customers "following the revelation of Alameda's insolvency." Opp. 40-41. Plaintiffs improperly conflate the *incurrence* of a substantial debt (which the customer withdrawals were not) with a preexisting obligation to return property. Moreover, a transfer close in time to the incurrence of a "substantial debt" implies fraud only to the extent that the transferor seeks to protect its assets in anticipation of a judgment or looming insolvency. *See, e.g.*, *In re Carbone,* 615 B.R. 76, 83 (Bankr. E.D. Pa. 2020) (analyzing 'substantial debt' badge in terms of timing of transfer in "anticipation of" evading a judgment). Plaintiffs' Complaint is bereft of such allegations. FTX did not transfer assets to Mirana to evade a judgement or stash assets with an insider. Rather, **Mirana, not FTX** withdrew its own assets following public revelations FTX was in financial distress. Compl. ¶¶ 49-51.

## V.    Count Seven Must be Dismissed for Failure to Adequately Allege a Violation of the Automatic Stay

Count Seven must be dismissed because Plaintiffs fail to allege any conduct **by Mirana** constituting an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Plaintiffs admit the conduct which impacted Plaintiffs' ability to migrate $BIT to $MNT was a "community vote" by more than 7,000 BitDAO tokenholders, and that BitDAO itself is a "third entity" separate from both Mirana and ByBit. Opp. 56; Compl. ¶¶ 75- 76. Even if control of BitDAO was sufficient to make a controlling party liable for BitDAO's activities (which was not pled), Plaintiffs' **only** factual allegation that BitDAO was controlled by anything other than its "community members" is that an unidentified Bybit executive claimed that BitDAO was, by unidentified means, controlled by **Bybit** (not Mirana). Opp. 56; Compl. ¶ 75. Plaintiffs merely repeat their allegations that the unidentified

Bybit executive used a Mirana e-mail address, and that Mirana provides certain services to BitDAO.  Opp. 56.  Plaintiffs have neither pled that Mirana exercised control over BitDAO nor any facts to show such control.[13]  Thus, if the stay was violated, Plaintiffs have failed to plead Mirana's responsibility for that violation.

Count Seven must also be dismissed because BitDAO's alleged halt of $BIT migration to $MNT was not "an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Plaintiffs do not dispute that they retain ownership and control over the $BIT tokens in question.  Mot. 35.  Instead, Plaintiffs assert, without supporting allegations in the Complaint, that "the BitDAO 'community' vote" will have "a significant adverse effect on the estate's BIT tokens," constituting an act to exercise control over the estate under section 362(a)(3).  Opp. 56.  However, Plaintiffs have not pled any facts showing "***adverse*** impact" or "***imminent harm and loss***" as a result of the alleged halt of migration from $BIT to $MNT, and Plaintiffs' consequent retention of their BIT tokens. *Id*.  Plaintiffs, in fact, cannot plead actual losses because $BIT has appreciated substantially in value from approximately $0.4006 at the time of the community vote, to approximately $0.4417 at the time of the Complaint, and to approximately $1.4497 at the time of the Opposition.  In fact, $BIT currently trades at a premium to MNT.[14]  At most, Plaintiffs conclude without factual support that the community vote "***potentially*** could result in tens of millions in losses."  *Id.*; Compl ¶ 77. The out-of-circuit decisions relied on by the Plaintiffs, which concern the "diminishing or eliminating" of property of the bankruptcy estate thus do not assist them.  *See* Opp. 57 (citing *In re Prudential Lines Inc.*, 928 F.2d 565, 573-74 (2d Cir. 1991)).  Given Plaintiffs' failure to plead

---

[13] *See supra* note 11.

[14] *See* https://coinmarketcap.com/currencies/bitdao/.  Courts regularly take judicial notice of publicly available securities prices (*See, e.g., In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 264 n.3 (3d Cir. 2005); *Ieradi v. Mylan Lab'ys, Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000).

actual attempts to control estate property, losses suffered by the Plaintiffs, or action by Mirana with respect to those (non) losses, Count Seven should be dismissed as against Mirana.

**<u>CONCLUSION</u>**

Mirana respectfully requests the Court grant its motion and the relief requested therein.

Dated: May 8, 2024

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By  */s/ Morgan L. Patterson*
    Matthew P. Ward (No. 4471)
    Morgan Patterson (No. 5388)
    1313 North Market Street, Suite 1200
    Wilmington, Delaware 19801
    Tel.: (302) 252-4320
    matthew.ward@wbd-us.com
    morgan.patterson@wbd-us.com

    - and -

NORTON ROSE FULBRIGHT US LLP
    Eric Daucher (*pro hac vice*)
    Steve Dollar (*pro hac vice*)
    Victoria Corder (*pro hac vice*)
    1301 Avenue of the Americas
    New York, NY 10019
    Tel.: (212) 408-5100
    eric.daucher@nortonrosefulbright.com
    steve.dollar@nortonrosefulbright.com
    victoria.corder@nortonrosefulbright.com

    *Counsel for Defendant Mirana Corp.*